**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKKI POOSHS,

        Plaintiff,

        v.

PHILLIP MORRIS USA, INC., et al.,

        Defendants.

_____/

No. C 04-1221 PJH

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants' motion to dismiss the above-entitled action for failure to state a claim came on for hearing before this court on March 12, 2008. Plaintiff appeared by her counsel James P. Nevin and David Fermino, and defendants appeared by their counsel Peter Larson, Jennifer Brown, and Randall D. Haimovici. Having read the parties' papers and carefully considered their arguments, and good cause appearing, the court GRANTS defendants' motion.

**INTRODUCTION**

Plaintiff Nikki Pooshs smoked tobacco cigarettes from 1953 until 1991. She was diagnosed with chronic obstructive pulmonary disease ("COPD") in 1989 and again in 1999; with periodontal disease in 1990; and with lung cancer in January 2003. She filed the present action following the lung cancer diagnosis.

Plaintiff alleges that when she began smoking, she was unaware of the true facts concerning the negative health effects of smoking. She asserts that defendants concealed

United States District Court

For the Northern District of California

the addictive nature of smoking cigarettes and the associated health hazards, and that as a result of defendants' conduct, she was unable to quit smoking for almost 40 years.

Defendants are cigarette manufacturers Philip Morris USA, Inc., R.J. Reynolds Tobacco Co., Lorillard Tobacco Company, and Brown & Williamson Holdings, Inc.; and Hill and Knowlton, Inc., alleged to have assisted the tobacco companies in misleading the public about the dangers of smoking. Defendants now seek summary judgment, arguing that plaintiff's claims are time-barred.

## BACKGROUND

The factual background is set forth in the August 20, 2004, order granting defendants' previous motion to dismiss. In that order, the court found that under the Ninth Circuit's decision in Soliman v. Philip Morris, Inc., 311 F.3d 966 (9th Cir. 2002), and the relevant California statutes of limitations,[1] plaintiffs' claims were time-barred.

California law provides that a limitations period begins to run when the claim "accrues," or when the cause of action is "complete with all of its elements[,]" – or wrongdoing, causation, and harm. Norgart v. Upjohn Co., 21 Cal. 4th 383, 397-98 (1999). However, the "discovery rule" can postpone accrual of a cause of action until the plaintiff either discovers the injury or has reason to discover it. Id. A plaintiff has "reason to discover" a cause of action whenever he/she has reason to suspect a factual basis for its elements. Id.

"[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period," unless the plaintiff establishes that "a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 803-07 (2005). In that case, "the statute of limitations for that cause of action will be tolled until such time as a reasonable investigation would have

---

[1] An "action for . . . injury to . . . an individual caused by the wrongful act or neglect of another" must be commenced within a two-year period. Cal. Civ. P. Code § 335.1. An "action for relief on the ground of fraud or mistake" must be commenced within three years. Cal. Civ. P. Code § 338(d).

1   revealed its factual basis." Id.

2       In Soliman, the plaintiff smoked for thirty-two years.  He claimed that in late 1999, he

3   discovered for the first time that smoking was addictive, and that shortly thereafter, he was

4   diagnosed with respiratory disorders.  He sued the tobacco companies in March 2000.

5   Defendants moved for dismissal, arguing that the claim was time-barred.  The district court

6   granted the motion, and the Ninth Circuit affirmed.

7       The Ninth Circuit found that the inherent risks of smoking are commonly known in

8   California, and that, in particular, "the dangers of nicotine addiction have been in the public

9   spotlight for many years."  Soliman, 311 F.3d at 973.  The court ruled that the plaintiff could

10  be charged with constructive knowledge of the risk long before, as "addiction is a

11  predictable consequence of using an addictive product."  Id. at 975 (citation omitted).  The

12  court held that, even with regard to the injuries with which plaintiff had been diagnosed only

13  a few months before he filed suit, the relevant date was not when he knew about those

14  injuries, "but when he should have known of any significant injury from defendants'

15  wrongful conduct."  Id. at 972.

16      The court concluded that under California law, "if the statute of limitations bars an

17  action based on harm immediately caused by defendant's wrongdoing, a separate cause of

18  action based on a subsequent harm arising from that wrongdoing" is also barred.  Id.  The

19  court found that because the plaintiff asserted that defendants had injured him by addicting

20  him to smoking and by causing other health problems, the date of his actual or constructive

21  knowledge of addiction determined when his other causes of action accrued, even if his

22  knowledge long predated specific knowledge of his respiratory illness.  Id. at 972-73.  "The

23  injury he should have known about first is the one that starts the statute of limitations."  Id.

24  at 972.

25      In the present case, defendants argued that based on Soliman, the court should find

26  that the risks of nicotine addiction have long been commonly known, and that plaintiff

27  actually or constructively knew of her alleged addiction by at least 1991, more than twelve

28  years before she filed suit.  They asserted that because plaintiff was presumed to have

3

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  long known of addiction risks, all causes of action for subsequent smoking-related injuries

2  were therefore time-barred.

3      The plaintiff in Soliman had alleged addiction as a specific injury.  This court looked

4  at other district court cases that had relied on Soliman, noting that (with one exception)

5  those courts had found either that addiction was alleged as an injury, or that, as in Soliman,

6  the "thread running through [the plaintiff's] complaint" was that cigarettes cause addiction

7  and other health problems, and that defendants must pay for inflicting those ailments on

8  the plaintiff.  See Soliman, 311 F.3d at 970.

9      The court compared the allegations in the present complaint with those in the

10  Soliman complaint.  The court found that in both cases, the plaintiffs claimed that smoking

11  cigarettes caused them to develop various physical illnesses; and also alleged that nicotine

12  is addictive, that the defendants concealed from plaintiffs and the public that nicotine is

13  addictive, and that they (the plaintiffs in each case) had become addicted to nicotine from

14  an early age.  The court found that, while Ms. Pooshs had perhaps not claimed addiction as

15  an injury in as specific a way as the plaintiff in Soliman, the allegation that Ms. Pooshs was

16  injured by that addiction ran as a thread throughout the complaint.

17      Plaintiff appealed.  While the appeal was pending, the Ninth Circuit filed an order

18  certifying questions of state law to the California Supreme Court, in connection with another

19  tobacco products liability case, Grisham v. Philip Morris, which had originated in the Central

20  District of California.  See Grisham v. Philip Morris U.S.A., Inc., 403 F.3d 631 (9th Cir.

21  2005).[2]

22      The plaintiff in Grisham alleged that smoking cigarettes had caused three types of

23  injury – addiction, respiratory disorders (including COPD), and periodontal disease.  Among

24  other claims, she asserted a cause of action for unfair competition, claiming that her

25  addiction was caused by the defendants' marketing of their products to young people.  She

26  _____

27      [2]  In Grisham, the Ninth Circuit consolidated two cases, the Grisham v. Philip Morris
    U.S.A., Inc., CV-02-7930 SVW (C.D. Cal.) and another case from the Central District of
28  California, Cannata v. Philip Morris U.S.A., Inc., CV-02-8026 ABC (C.D. Cal.).  The two cases
    involved the same defendants and similar factual allegations and claims.

United States District Court

For the Northern District of California

1    also claimed that the defendants had fraudulently concealed the danger and addictive

2    nature of cigarettes.

3    The defendants moved to dismiss, arguing that the plaintiff's claims were time-

4    barred. The plaintiff asserted that her addiction was not an appreciable injury until the April

5    2001 diagnoses of COPD and periodontal disease; that the claims based on the COPD and

6    periodontal disease should proceed even if the claim based on addiction was time-barred;

7    that addiction, COPD, and periodontal disease were not commonly known health risks of

8    smoking; and that she had justifiably relied on the defendants' misinformation, which was

9    designed to keep smokers unaware of those risks.

10   On March 29, 2005, the Ninth Circuit issued an order certifying the following

11   questions to the California Supreme Court:

12       (1) Under California law, can a plaintiff overcome the presumed awareness
         that he or she knows that smoking causes addiction and other health
13       problems, and so show justifiable reliance? (2) Under California law, if a
         plaintiff seeks damages resulting from an addiction to tobacco, does an action
14       for personal injury accrue when the plaintiff recognizes that he or she is
         addicted to tobacco, if the plaintiff has not yet been diagnosed with an injury
15       stemming from tobacco use?

16   Grisham, 403 F.3d at 633.

17   The court added that the lawsuits would be able to proceed only if the presumption

18   described in the first question was rebuttable.

19       [I]f the presumption is rebuttable, then Cannata and Grisham, who alleged
         lack of knowledge of harm of smoking, should be permitted to continue their
20       suits to a stage, such as summary judgment proceedings or trial, where
         evidence will be considered, unless defendants provide the district court with
21       some other legal basis for concluding the litigation.

22   Id. n.2. In addition, the court suggested, in the event the California Supreme Court found

23   the presumption rebuttable, it might also address what factual showing is necessary to

24   rebut the presumption. Id. n.3. The court also noted the conflict between its previous

25   decision in Soliman and the California Court of Appeal's decision in Whitely v. Phillip Morris

26   Inc., 117 Cal. App. 4th 635 (2004), a case with similar facts that had been tried to a jury,

27   with a verdict for the plaintiff.

28   The California Supreme Court issued its decision on February 15, 2007. See

United States District Court
For the Northern District of California

1    Grisham v. Philip Morris, Inc., 40 Cal. 4th 623 (2007).  The court distinguished between

2    claims based on "the novel theory of economic injury from addiction," and "primarily

3    physical" injury claims, which it found were based on different "primary rights."  Id. at 634,

4    639, 641.

5          In response to the Ninth Circuit's first question, the California Supreme Court

6    addressed the issue of economic injury from addiction, reframing the question to read,

7          (1) For the purpose of the statute of limitations period applicable under
      California law to a personal injury action alleging injury arising from smoking
8          tobacco, are persons presumed to have been aware by 1988 that smoking
      causes addiction and other health problems?  If California law recognizes
9          such a presumption, under what circumstances is it rebuttable?

10   Id. at 628.

11         The court found that there was neither a conclusive presumption based on statute,

12   nor a rebuttable presumption shifting the burden of evidence.  The court noted that

13   California's statute of limitations law has not recognized special presumptions, conclusive

14   or otherwise, based on some presumed state of special knowledge.  Id. at 637.  The court

15   observed that while knowledge of smoking addiction had been widespread, the tobacco

16   companies' misrepresentations concerning the danger and addictiveness of smoking were

17   also widespread.  Id.

18         Thus, the court rejected Soliman "to the extent that it holds that there is a special

19   presumption under California law based on common knowledge that a plaintiff is aware that

20   smoking is addictive or harmful."  Id. at 638.  On the other hand, the court acknowledged,

21   "California law recognizes a general, rebuttable presumption, that plaintiffs have

22   "knowledge of the wrongful cause of an injury."  Id. (quoting Fox, 35 Cal. 4th at 808).

23         The court stated that in order to rebut that presumption, a plaintiff must plead

24   specific facts that show the time and manner of discovery, and the inability to have made

25   earlier discovery despite reasonable diligence.  Id.  "Thus, if a plaintiff's cause of action

26   depends upon delayed discovery of his or her addiction to tobacco in order to be timely, he

27   or she must plead facts showing an inability to have discovered that addiction, such as

28   reasonable reliance on tobacco company misrepresentations."  Id.

6

United States District Court

For the Northern District of California

1    The court asserted that Grisham had not done so with respect to her unfair

2    competition and related causes of action, and concluded from the face of the complaint that

3    Grisham knew or should have known of her tobacco addiction and the economic injury it

4    was causing her by 1993 or 1994, the time she joined Nicotine Anonymous and also

5    obtained a prescription for Nicorette gum.  Id.  Thus, the unfair competition claim – and any

6    claim alleging economic injury based on addiction – were time-barred.

7    As for the timeliness of the physical injury claims – the Ninth Circuit's second

8    question – the court concluded that Grisham's discovery of her alleged unfair competition

9    cause of action and related causes of action for economic injury, based on addiction to

10   tobacco, did not start the statute of limitations running on her tort causes of action based on

11   the later-discovered appreciable physical injury.  Rather, the court found, those causes of

12   action did not begin to accrue until the physical ailments themselves were, or reasonably

13   should have been, discovered.  Id. at 645-46.

14   The court characterized the defendants' argument that all the plaintiff's causes of

15   action were time-barred as "based on the rule against splitting a cause of action," and so

16   included a discussion of the "single-injury" rule.  Id. at 641.  The court noted that it is a long-

17   standing rule in California that "a single tort can be the foundation for but one claim for

18   damages."  This rule "is a corollary of the primary right theory found in California law."  Id.

19   (quotation and citation omitted).

20   The court explained that under the primary right theory, a cause of action is

21   comprised of a "primary right" of the plaintiff, a "primary duty" of the defendant, and a

22   wrongful act of the defendant constituting a breach of that duty.  Id.  "The most salient

23   characteristic of a primary right is that it is indivisible: the violation of a single primary right

24   gives rise to but a single cause of action," and "[a] pleading that states the violation of one

25   primary right in two causes of action contravenes the rule against 'splitting' a cause of

26   action."  Id. (citation and quotation omitted).

27   The court added that the rule against splitting a cause of action is distinct from the

28   rule that the infliction of appreciable and actual harm will commence the running of the

7

United States District Court

For the Northern District of California

1  statute of limitations, and that it is neither an aspect, nor a restatement, of the statute of

2  limitations.  Id. at 642.  The court noted, however, that the two rules may intersect when a

3  single wrongdoing gives rise to two or more different injuries, manifesting at different times,

4  and raising the question whether the two injuries are invasions of two different primary

5  rights.  Id.

6      The court also noted that some courts have held that the earlier injury, even if less

7  serious than the later injury, sets the statute running as to both injuries, and the expiration

8  of the statute on the earlier injury bars a suit on the later one; while other courts have

9  found, under various theories, that a suit on a later-manifesting injury is not time-barred

10  even when a suit on the earlier injury would be.  Id.

11      Nevertheless, the court found it unnecessary to decide whether two different

12  physical injuries arising out of the same wrongdoing can give rise to two separate lawsuits,

13  or whether the two injuries in the case before it (emphysema and periodontal disease)

14  could be conceived as invading two different primary rights, because what the plaintiff had

15  alleged was two different types of injury – an economic injury, and serious physical injury or

16  injuries – giving rise to two different types of action.  "The economic action was a more or

17  less immediate result of Grisham's addiction to cigarettes, whereas her physical injuries

18  occurred after many years of smoking.  The addictiveness of a product is distinct from its

19  capacity to cause serious physical injury."  Id. at 643.  Thus, while Grisham's economic-

20  injury-from-addiction claims were time-barred, her physical-injury claims had to be

21  evaluated separately.

22      The Ninth Circuit subsequently vacated this court's August 20, 2004, order, and

23  remanded the case for further proceedings consistent with the California Supreme Court's

24  decision in Grisham.

**DISCUSSION**

25

26  A.    Legal Standard

27      Summary judgment is appropriate when there is no genuine issue as to material

28  facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

United States District Court

For the Northern District of California

1    Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

2    Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

3    is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

4         A party seeking summary judgment bears the initial burden of informing the court of

5    the basis for its motion, and of identifying those portions of the pleadings and discovery

6    responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

7    v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

8    at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

9    than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

10   888 (9th Cir. 2003).

11        On an issue where the nonmoving party will bear the burden of proof at trial, the

12   moving party can prevail merely by pointing out to the district court that there is an absence

13   of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

14   moving party meets its initial burden, the opposing party must then set forth specific facts

15   showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

16   R. Civ. P. 56(e); Anderson, 477 U.S. at 250.  If the nonmoving party fails to show that there

17   is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law."

18   Celotex, 477 U.S. at 323.

19        "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least

20   some significant probative evidence tending to support the complaint."  Smolen v. Deloitte,

21   Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court must

22   not weigh the evidence or determine the truth of the matter, but only determine whether

23   there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir.

24   1999).  Regardless of whether plaintiff or defendant is the moving party, each party must

25   "establish the existence of the elements essential to [its] case, and on which [it] will bear

26   the burden of proof at trial."  Celotex, 477 U.S. at 322.

27   B.   Defendants' Motion

28        Defendants argue that all plaintiff's claims are time-barred.  Defendants assert that

United States District Court
For the Northern District of California

1   plaintiff's economic-injury claims relating to addiction are barred because plaintiff did not

2   challenge this court's finding to that effect on her previous appeal, and because those

3   claims necessarily accrued before 1991, when she quit smoking.

4          Defendants also contend that plaintiff's personal injury claims are time-barred.

5   Defendants note that the only physical injury plaintiff claims to have suffered as a result of

6   smoking cigarettes is lung cancer, which was diagnosed in January 2003.  However,

7   defendants contend, plaintiff's medical records and her own testimony show that at the time

8   she was diagnosed with COPD in 1989 and in 1999, and with periodontal disease in 1990,

9   she knew that each of those physical injuries was related to her smoking.

10          Defendants point to evidence showing that even before plaintiff was diagnosed with

11  COPD, she believed that smoking could cause illness generally, and COPD specifically.

12  Plaintiff testified that her father, a life-long smoker, developed COPD several years before

13  his death in 1988 from an unrelated condition.  She also testified that when she was

14  diagnosed with periodontal disease in 1990, her periodontist told her it was directly caused

15  by smoking.  She admitted that before she stopped smoking in 1991, she knew she had

16  smoking-related periodontal disease.

17          In sum, defendants argue that all plaintiff's personal-injury claims accrued in 1989,

18  when she was first diagnosed with COPD.  They assert that under California's "first injury"

19  rule, each of plaintiff's smoking-related diagnoses would have independently started the

20  statute running as to all her personal injury claims.  In support, they cite Davies v. Krasna,

21  14 Cal. 3d 502 (1975); and Miller v. Lakeside Village Condo. Ass'n, 1 Cal. App. 4th 1611

22  (1991).

23          In Davies, a writer submitted a written story in 1951 to a producer of movies and

24  plays, with the understanding that it was being submitted in confidence.  The producer

25  incorporated the story idea, central theme, and dramatic core into a play first produced in

26  1958.  The producer had disclosed the story to various persons in the entertainment

27  industry starting in 1954, and the writer learned of those disclosures sometime before

28  November 1955.  The writer's estate sued the producer for breach of confidence.

United States District Court

For the Northern District of California

1    The court found that the statute of limitations began to run in November 1955, when

2 the writer first learned of the disclosures, and not in 1958, when the producer first profited

3 from the production of the play.  Davies, 14 Cal. 3d at 514-15.  The court held that

> although a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period. . . . [N]either uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations.

7 Id. at 514 (footnote and citations omitted).  The court concluded that because the writer had

8 already incurred "actual and appreciable damage" by the time he learned of the

9 unauthorized disclosures, the limitations period started running at that time.  Id.

10    In Miller, a former resident of a condominium brought an action against the

11 condominium association for negligence in failing to repair and maintain the plumbing

12 system.  The plaintiff claimed that the lack of maintenance caused the premises to become

13 infested with mold, and caused her to suffer from "immune dysregulation."

14    The trial court held that the plaintiff's cause of action accrued when she suffered

15 actual and appreciable harm in the form of extreme allergic reactions and severe asthma,

16 diagnosed in 1983, and not subsequently, when her medical condition was diagnosed in

17 1986 as "immune dysregulation."  The court ruled that the delayed-discovery rule did not

18 toll the running of the statute of limitations, because the plaintiff had actual knowledge of

19 the negligent cause of her injuries.

20    The Court of Appeal affirmed, citing Davies for the proposition that "'the infliction of

21 appreciable and actual harm, however uncertain in amount, will commence the statutory

22 period.'"  Miller, 1 Cal. App. 4th at 1622 (quoting Davies, 14 Cal. 3d at 514).  In other

23 words, the statute of limitation for all the plaintiff's personal injury claims ran from the date

24 she was diagnosed with her first injury.  Id. at 1619.

25    The court concluded that the plaintiff had suffered actual and appreciable harm,

26 which she believed was the result of the defendant's negligent conduct, when she was

27 originally diagnosed with allergies and asthma.  Id. at 1623-25.  The court noted that "[t]he

28 delayed-discovery rule applies only when a plaintiff has not discovered all of the facts

11

United States District Court

For the Northern District of California

1    essential to the cause of action." Id. at 1629. Because the plaintiff had taken no action in

2    1984, when she had actual knowledge of the negligent cause of her 1983 and 1984

3    injuries, her later discovery that she suffered from "immune dysregulation" did not give rise

4    to a separate cause of action, with a separate limitations period. Id.

5         Here, defendants argue that the rules articulated in Davies and Miller govern

6    plaintiff's claims, and assert that because plaintiff knew in 1989 that she suffered from

7    COPD, and that it was caused by smoking, the statute began to run at that point on any

8    claims for any personal injury caused by smoking. Defendants assert that the discovery

9    rule has no application where a plaintiff knows of her injury and its cause.

10        In opposition, plaintiff argues that because Grisham ruled that the physical injury

11   claims in that case did not begin to accrue at the point at which the plaintiff was aware only

12   of her economic injury from addiction, but only at the point at which the plaintiff discovered

13   her smoking-related ailments, the claim for personal injury based on the lung cancer

14   diagnosis in the present case did not begin to accrue before she was diagnosed, because

15   she could not have known that she had lung cancer.

16        Plaintiff contends that unlike the plaintiff in Soliman, she is not seeking damages for

17   addiction – much less alleging that her addiction is "severe" or "incapacitating." She

18   asserts, however, that an allegation that a plaintiff's addiction contributed to her injuries by

19   lengthening the time of exposure to tobacco products is distinct from an allegation that the

20   addiction itself is an injury. Plaintiff claims that allegations of addiction are "generally

21   necessary in tobacco personal injury cases, because they establish the mode of causation

22   of plaintiff's injuries." She argues that an individual's inability to quit smoking – or decision

23   not to quit smoking – is relevant insofar as it may support an argument that he shares

24   comparative fault for his injuries.

25        As for her claims of physical injuries, plaintiff asserts that her COPD and periodontal

26   disease diagnoses did not give rise to a claim for lung cancer. She contends that she had

27   no way of knowing, detecting, or even predicting the latent diseases that generally develop

28   years after a person starts smoking. Plaintiff argues that under California law, when a

person is injured by a toxic substance and at first suffers only relatively mild symptoms, a new limitations period begins to run at the point at which he/she is later diagnosed with a serious, separate, and distinct latent injury arising from the same exposure.  She contends that COPD is a separate illness, which does not pre-dispose or lead to lung cancer and that it has nothing medically, biologically, or pathologically to do with lung cancer.

Plaintiff asserts that the "primary right" to be free from lung cancer is an entirely separate and distinct primary right (distinguished from the primary right to be free from COPD or pulmonary disease).  Thus, plaintiff argues, based on the California Supreme Court's ruling in Grisham, it is clear that her cause of action for lung cancer did not accrue at the onset of the earlier disease.

Plaintiff claims that the "two-injury rule" has been adopted by the majority of state and federal courts that have considered the issue, and argues that this rule was recognized by the California Supreme Court fifty years ago in Coots v. Southern Pacific Co., 49 Cal. 2d 805 (1958), as well as in subsequent decisions in Martinez-Ferrer v. Richardson-Merrell, Inc., 105 Cal. App. 3d 316 (1980); Chevron U.S.A., Inc. v. Workers' Compensation Appeals Board, 219 Cal. App. 3d 1265 (1990); Hamilton v. Asbestos Corp., Ltd., 22 Cal. 4th 1127 (2000); and Wagner v. Apex Marine Ship Management Corp., 83 Cal. App. 4th 1444 (2000).

In Coots, the plaintiff began working in silver cyanide solution in defendant Southern Pacific Company's plating department in late 1947 or early 1948.  Sometime in 1949, he first noticed small blisters on his hands which caused itching.  In July 1949 he went to the Southern Pacific Hospital, where he was diagnosed with "moderately severe" dermatitis, but was not advised to stop working.  Plaintiff's condition became worse, and by June 1955 he was no longer able to work.  Coots, 49 Cal. 2d at 805-06.

Plaintiff filed suit under the Federal Employers' Liability Act, which had a three-year statute of limitations.  Plaintiff asserted that his cause of action did not accrue until he became disabled and unable to work in 1955.  The defendant argued that the cause of action accrued when plaintiff first became aware of his employment-connected injury.  The

13

United States District Court

For the Northern District of California

1  trial court held that the action was time-barred, but the Supreme Court reversed, holding

2  that the plaintiff was unaware that the "moderately severe" dermatitis he suffered in 1949

3  would lead to disability, and that the statute could not be said to have run at any time earlier

4  than 1953, when the condition became "real worse."  Id. at 806-07, 810.

5      In Martinez-Ferrer, the plaintiff filed suit against a drug manufacturer in 1976,

6  alleging that he had suffered personal injuries from ingesting an anti-cholesterol drug,

7  MER/29, manufactured by the defendant and provided to the plaintiff (a doctor) by the

8  defendant's salesman sixteen years before.  Approximately six months after he began

9  taking the MER/29 in 1960, the plaintiff began having eye problems, and an examination

10 revealed macula edema – a swelling of a portion of the retina.  His opthamalogist

11 diagnosed the condition as an "acute allergic reaction" of the backs of the eyes.  He and his

12 doctors "assumed" that the cause of the condition was the MER/29, and he stopped taking

13 it.

14     A few weeks after he first developed the eye problems, the plaintiff developed a

15 severe case of dermatitis that covered his entire body.  His eye problems and the dermatitis

16 cleared up within a few weeks, and intermittent examinations between 1961 and 1975

17 revealed no sign of cataracts.  In 1976, however, cataracts, were discovered in the

18 capsules of his eyes.  The cataracts were a permanent condition that created tunnel vision

19 and interfered with his ability to perform surgery.

20     In opposition to the defendants' motion for summary judgment, the plaintiff argued

21 that he had suffered no permanent damage or injury as a result of the 1960 eye problems,

22 and consequently, there was no point in bringing a lawsuit at that time.  The defendants

23 asserted that the statute had started to run when the plaintiff knew or should have known

24 that he had suffered injury as the probable result of taking the MER/29, whether or not his

25 actual or constructive knowledge was correct.  The court granted the defendants' motion,

26 finding that the statute of limitations had run by the time the plaintiff filed his complaint.

27     The Court of Appeal reversed, concluding that the record did not support a finding

28 that the 1960 symptoms were caused by the MER/29.  Martinez-Ferrer, 105 Cal. App. 3d at

United States District Court

For the Northern District of California

1    321.  Rather than stopping there, however, the court went on to speculate whether, if the

2    evidence at trial were to show that the MER/29 did cause some of the 1960 symptoms, the

3    plaintiff would still be able to proceed against the defendants on the theory that his

4    cataracts were caused by the MER/29, even though his action was filed years after he

5    knew or should have known that he had suffered some bodily injuries from the drug.  Id. at

6    322.

7         While acknowledging that "the general rule . . . that where an injury, although slight,

8    is sustained in consequence of the wrongful act of another, and the law affords a remedy

9    therefor, the statute of limitations attaches at once," the court added that it believed that the

10   general rule would be unjust if applied to the facts of the case, as the plaintiff "would have

11   been laughed out of court had he sued for his dermatitis and macula edema [at that time] . .

12   . and had he then attempted to be compensated for the speculative possibility that his 1960

13   ingestion of MER/29 might cause cataracts before that chance became a fact in 1976[,]"

14   while on the other hand, he would have been unable to keep his action alive for 15 years.

15   Id. at 323-24.

16        The court looked at the California Supreme Court's decision in Sindell v. Abbot Labs,

17   26 Cal. 3d 588 (1980), which found that a drug manufacturer could be held liable for the

18   long-delayed effects of its product.  In that case, the plaintiff had alleged that the defendant

19   manufacturer's drug caused cancer in the daughters of women who had taken it more than

20   10 years before, while they were pregnant.  The Martinez-Ferrer court attempted to apply

21   the principle in Sindell to the facts of the case before it, though it conceded that there was

22   no question in Sindell of any minor side effects occurring prior to the manifestation of the

23   cancer, as there had been with Martinez-Ferrer's condition.  Id. at 324.

24        The Martinez-Ferrer court acknowledged the rule against splitting a cause of action,

25   but asserted nevertheless that it "perceive[d] a trend away from an unthinking enforcement

26   of the rules[,]" citing rules that had developed in connection with the statute of limitations in

27   nuisance cases, and in cases involving progressive occupational diseases such as silicosis

28   or dermatitis (e.g., Coots), and also citing a tentative draft of the Restatement Second of

United States District Court

For the Northern District of California

1    Judgments.  See id. at 325-27.  The court added, "If we are right in our ultimate conclusion

2    that the present suit for damages for the cataracts does not involve an impermissible

3    splitting of a cause of action, it is immaterial whether or not [plaintiff] recovered an earlier

4    judgment for the sequelae other than the cataracts."  Id. at 324 n.7.  The court concluded

5    that "under the peculiar circumstances of this case it would be a miscarriage of justice not

6    to permit plaintiff to go to trial."  Id. at 327.

7        The Martinez-Ferrer analysis has been adopted by at least one California court.  In

8    Zambrano v. Dorough, 179 Cal. App. 3d 169 (1986), the plaintiff was misdiagnosed as

9    having miscarried, and her doctor performed a D&C.  A month later, she was diagnosed by

10   a second doctor as having a ruptured tubal pregnancy, for which she was treated.  She

11   subsequently became pregnant and had a child.  Approximately two and a half years after

12   the original misdiagnosis, she was advised by yet a third doctor that she needed to have a

13   hysterectomy, and that there was a possible connection between the treatment by the

14   original doctor and the condition requiring the hysterectomy.  Id. at 171-72.

15       Three months later, the plaintiff filed suit for malpractice against the original doctor.

16   The court considered whether the plaintiff could proceed against the original doctor on the

17   theory that his negligent misdiagnosis caused the plaintiff's hysterectomy, even though the

18   plaintiff filed the action more than one year after she knew she had suffered some relatively

19   minor injuries from that negligence.  Id. at 324-25.  The court found that those earlier

20   injuries were substantial enough to accrue a cause of action, but nevertheless concluded

21   that the action was not barred by the one-year statute of limitations because plaintiff's loss

22   of reproductive capacity was a different type of injury than the one suffered earlier, and it

23   constituted a different primary right and therefore a separate cause of action.  Id. at 174

24   (citing Martinez-Ferrer, 105 Cal. App. 3d at 324-27.

25       Other courts have not followed Martinez-Ferrer.  For example, in DeRose v.

26   Carswell, 196 Cal. App. 3d 1011 (1987), superceded by statute as stated in Sellery v.

27   Cressey, 48 Cal. App. 4th 538, 544-45 (1996), a victim of sexual abuse filed suit 13 years

28   after the alleged assault.  The plaintiff argued that her cause of action had not accrued until

United States District Court

For the Northern District of California

she experienced later emotional harm and recognized its connection with the earlier assaults.  The trial court dismissed the action as time-barred.

The Court of Appeal affirmed, noting that while there are times when awareness of a wrongful act does not carry with it an awareness of harm, an assault causes harm as a matter of law.  DeRose, 196 Cal. App. 3d at 1018.  In rejecting the plaintiff's argument (relying on Zambrano) that even if an action based on the harm immediately caused by the assaults was time-barred, she should still be permitted to proceed on a separate cause of action based on the subsequent emotional harm, the court found that the plaintiff had immediately suffered substantial harm as a result of the assaults, and that Zambrano was not consistent with controlling precedent.  Id. at 1021.

With regard to the first point, the court agreed that a tort may initially cause injuries so insubstantial that it is not reasonable for the victim to file a lawsuit, even though she would be entitled to at least nominal damages, and that under the traditional rule, such a plaintiff might be barred from filing suit when later, more substantial injuries were manifested.  However, the court noted, the more recent trend, as explained by the California Supreme Court in Davies, is that the limitations period cannot run before the plaintiff possesses a true cause of action – one which entitles the plaintiff to a legal remedy and not just a symbolic judgment such as an award of nominal damages.  Id. at 1021-22.  Because the plaintiff would have been entitled to substantial damages if she had sued at the time of the alleged assaults (or within the limitations period), she would have been entitled to more than a symbolic judgment of nominal damages, and the limitations period had thus expired by the time plaintiff filed suit.  Id. at 1022.

The court asserted that it appeared that the court in Martinez-Ferrer had "paved the way for Zambrano by reading Davies too restrictively."  Id. at 1024.  The court characterized the Martinez-Ferrer court as "[f]aced with a sympathetic case but believing that Davies did not apply" and as "simply disregard[ing] the rule against spliting a cause of action," adding that Zambrano had simply cited Martinez-Ferrer as evidence that "there is a trend away from inflexible enforcement of this rule."  Id. (quoting Zambrano, 179 Cal. App.

United States District Court

For the Northern District of California

3d at 173).

In addition, the court noted that instead of articulating a justifying rule, the Martinez-Ferrer court had simply stated that the "wind [was] blowing . . . away from a blind adherence to rigid concepts of what constitutes a cause of action and toward a set of rules which will enable plaintiffs to recover for just claims where that is possible without prejudice to defendants or insult to established rules of law," adding that "[w]e make no attempt to even summarize where all this may lead." DeRose, 196 Cal. App. 3d at 1024-25 (quoting Martinez-Ferrer, 105 Cal. App. 3d at 327).

The court concluded that the Martinez-Ferrer court's assault on the rule against splitting a cause of action was completely unnecessary. The rule in Davies would have permitted the Martinez-Ferrer plaintiff to sue for cataracts 12 years after experiencing a short-lived rash, as there was no proof that the defendants' drug caused the macula edema. Id. at 1025. Thus, the court found, the result in Martinez-Ferrer was consistent with Davies, while the result in Zambrano was not. Id.

Another case that criticized Martinez-Ferrer is Miller v. Lakeside Village, which was cited by defendants and is discussed above. The Miller court pointed out that everything that follows the Martinez-Ferrer court's ruling that there was no evidence showing that the plaintiff's 1960 problems had been caused by the MER/29 should be regarded as dicta, "as it is premised on a set of hypothetical facts which the court speculated would be found in the future." See Miller, 1 Cal. App. 4th at 1625-26

The third, fourth, and fifth cases on which plaintiff primarily relies are asbestos cases. In Chevron, an employee of Chevron U.S.A. was exposed to asbestos from 1951 to 1975, and was diagnosed with asbestosis in 1976. He filed for and received worker's compensation benefits. In 1987, he was diagnosed with mesothelioma, also resulting from exposure to asbestos. Three months later, he died of the mesothelioma, and his survivors filed a claim for death benefits.

Chevron argued that because the mesothelioma resulted from the same exposure as the asbestosis, the date of injury, for purposes of calculating the statutory death benefit,

United States District Court

For the Northern District of California

1   should be September 1976, the date the employee was diagnosed with asbestosis.  The

2   Court of Appeal held, however, that the mesothelioma was a separate and distinct

3   occupational disease from the asbestosis, thus entitling the survivors to a different date of

4   injury, for purposes of calculating the applicable benefit.

5        The court analyzed the applicable provisions of the Workers' Compensation Act,

6   noting that the Act defines "injury" as including both injuries and diseases that arise out of

7   employment; that §§ 5411 and 5412 of the Act also define "date of injury" for both injuries

8   and occupational diseases as the time of disability, rather than as the time of exposure; and

9   that the "date of injury" also sets the date for measurement of compensation – "[u]ntil the

10  disability, there is no compensable injury."  Chevron, 219 Cal. App. 3d at 1269-70 (quoting

11  Arnonaut Mining Co. v. Ind. Acc. Com., 104 Cal. App. 2d 27, 31 (1951)).

12       The court looked at other cases involving a determination of the date of injury under

13  the Workers Compensation Act, and concluded that under those cases, there could be

14  more than one date of injury.  As applied to the facts before the court, there was one date

15  for the injury of asbestosis, and another date for the injury of mesothelioma.  Id. at 1270-72.

16  The court emphasized that the plaintiff's mesothelioma was not a "progressive occupational

17  disease," as it had not developed from an earlier disease.  Rather , the medical testimony

18  had established that it "was an entirely separate and distinct disease process resulting in

19  an entirely separate and distinct injury and disability."  Id. at 1273.  The court concluded,

20  "By statutory mandate, the mesothelioma necessarily involves a different date of injury."  Id.

21  (emphasis added).

22       In Hamilton, a worker who had been exposed to asbestos brought two successive

23  tort actions against multiple defendants.  The first was based on his diagnosis of

24  asbestosis, and the second, filed more than two years later, on his diagnosis of

25  mesothelioma.  The two actions were consolidated for trial.

26       The question was the applicability of the statute of limitations in Code of Civil

27  Procedure 340.2 (civil actions for injury or illness based on exposure to asbestos).  The

28  statute provided that the time for commencement of the action was the later of one year

19

United States District Court

For the Northern District of California

1    after the plaintiff suffered "disability," or one year after the plaintiff knew or should have

2    known that such disability was caused by the exposure.  Cal. Civ. P. Code § 340.2.

3         The California Supreme Court concluded that because a plaintiff cannot discover

4    that his disability is caused by asbestos exposure until he has developed an asbestos-

5    related disability, the statute of limitations cannot be said to have run before that point.

6    Hamilton, 22 Cal. 4th at 1137-38.  The court analyzed the cases that had discussed the

7    meaning of "disability" in § 340.2, and discussed their relevance to the case before it.  See

8    id. at 1138-47.  The court did not, however, address the applicability of the "discovery rule"

9    that is at issue in the present case.

10        Finally, in Wagner, a merchant marine brought a personal injury action under the

11   Jones Act against several defendants in 1998.  The plaintiff had been exposed to asbestos

12   for most of his 40-year career, and had been diagnosed with asbestosis earlier in 1998.  He

13   had also been diagnosed with asbestos-related pleural disease in 1993, from which he

14   suffered no symptoms.  He alleged that the asbestosis was a separate disease.  The trial

15   court dismissed the case as time-barred.  The Court of Appeal reversed, holding that the

16   first sign of an asbestos-related disease does not trigger the running of the statute of

17   limitations on all separate and distinct asbestos-related diseases caused by the same

18   exposure.

19        The court first noted that the "discovery rule" for determining when a cause of action

20   accrues in latent disease cases has been applied in Jones Act cases.  Wagner, 83 Cal.

21   App. 4th at 1448 (citing Albertson v. T.J. Stevenson & Co., Inc., 749 F.2d 223 (5th Cir.

22   1984)).  The court then addressed the question – which it stated few Jones Act cases had

23   addressed – "whether the first sign of an asbestos-related disease triggers the running of

24   the statute of limitations on all separate and distinct asbestos-related diseases caused by

25   the same asbestos exposure."  Id. at 1449.  The court cited a Jones Act case from the Fifth

26   Circuit, Hagerty v. L&L Marine Servs., Inc., 788 F.2d 315 (5th Cir. 1986); a Jones Act case

27   from the Sixth Circuit, Hicks v. Hines, 826 F.2d 1543 (6th Cir. 1987); and a Jones Act case

28   from the Eastern District of Pennsylvania, Souders v. Atlantic Richfield Co., 746 F.Supp.

United States District Court

For the Northern District of California

1   570 (E.D. Pa. 1990).

2          In Hagerty, the Fifth Circuit determined that a cause of action had accrued when the

3   plaintiff was first soaked with toxic chemicals, even though he suffered only minimal

4   physical injuries at the time of exposure.  Hagerty, 788 F.2d at 316-18.  The Wagner court

5   also noted that the Haggerty court had expressed, in dicta, its dissatisfaction with the "one

6   injury" rule, and its belief that a prior and distinct disease should not affect the cause of

7   action and subsequent damages for the subsequent disease.  Wagner, 83 Cal. App. 4th at

8   1449 (citing Hagerty, 788 F.2d at 317, 320).

9          In Hicks, the Sixth Circuit agreed with the district court that the action was time-

10  barred because the plaintiff's previous blindness – a result of toxic chemical exposure –

11  had commenced the running of the statute of limitations on the plaintiff's subsequent claim

12  for bladder cancer – a result of the same toxic chemical exposure.  Hicks, 826 F.2d at

13  1450.

14         In Souders, the district court held that the plaintiff's Jones Act action for asbestos-

15  related injuries was time-barred, as the plaintiff's doctor had told him in 1981 that he was

16  injured because of asbestos.  Instead, the plaintiff chose to do nothing except wait until his

17  condition became worse.  By the time he filed suit, the three years allowed under the

18  Federal Employees' Liability Act had expired.  Souders, 746 F.Supp. at 573-74.

19         The Wagner court then indicated that it found the reasoning of several Jones Act

20  cases, as well as the dicta in Haggerty, to be more useful than Hicks or Souders in

21  attempting to resolve the dilemma faced by plaintiffs in "latent disease" cases.  The court

22  stated that it agreed with the D.C. Circuit, when it stated that the "time to commence

23  litigation does not begin to run on a separate and distinct disease until that disease

24  becomes manifest."  Wagner, 83 Cal. App. 4th at 1452 (citing Wilson v. Johns-Manville

25  Sales Corp., 684 F.2d 111, 112 (D.C. Cir. 1982) – also an asbestos case).

26         The Wagner court added, however, that it agreed with the Wilson court that a model

27  or rule for a more common personal injury case might not be appropriate in latent disease

28  cases such as asbestos cases.  Id. at 1453.  The court noted that many other jurisdictions

1    have adopted this approach, finding that each new disease resulting from asbestos

2    exposure triggers anew the running of the statute of limitations.  Id. (citing cases).

3        Here, plaintiff argues that like the plaintiff in the drug and asbestos cases, she had

4    no way of knowing, detecting, or even predicting the latent diseases that may have

5    developed years – even decades – after her exposure to defendants' tobacco products.

6    Plaintiff claims there is no rational basis for the court to apply a different rule of decision

7    than in Coots, Martinez-Ferrer, Hamilton, and Wagner, each of which concluded that it

8    would be unfair – and not legally required – to bar a plaintiff who develops a serious illness

9    from suing for those injuries simply because that plaintiff had previously suffered some

10   minor harm from the same products but deemed those injuries unworthy of litigation.

11       Plaintiff asserts that all those considerations militate in favor of a finding that the

12   accrual of a smoker's separate cause of action, if any, for nicotine addiction, does not

13   trigger the running of the statute of limitations for later-diagnosed, separate and distinct

14   diseases caused by the consumption of tobacco products.

15       The court finds that the motion must be GRANTED.  First, with regard to any claims

16   of injury or damage caused by addiction, the complaint is time-barred, as stated under

17   Grisham.  While the complaint does not specifically claim addiction as an injury, and

18   plaintiff now contends that it was never her intention to seek compensation for addiction,

19   plaintiff did allege throughout the complaint that defendants created and sold a product that

20   caused addiction and was harmful to health, as noted in the August 20, 2004, order.

21       Similarly, plaintiff cannot proceed with the claims of fraud, conspiracy, and failure to

22   warn.  In the complaint, plaintiff alleges that defendants publicly represented that cigarettes

23   and other tobacco products were safe, and that those representations were untrue because

24   cigarettes and tobacco products are addictive and cause various illnesses.  She asserts

25   that defendants carried out a scheme to deceive her and the public as to the health

26   hazards and the addictive nature of smoking; that defendants engaged in a conspiracy to

27   impede the flow of information from the medical and scientific community to the general

28   public on the health risks and addictive nature of cigarettes; and that defendants' fraudulent

United States District Court

For the Northern District of California

1    acts resulted in plaintiff being unaware that smoking caused health hazards.

2         Since plaintiff cannot claim any damages or injury resulting from the "addiction"

3    claim, and since she was plainly aware that smoking caused health hazards at least by the

4    time she was diagnosed with COPD in 1989 (and certainly by 1991, when she quit

5    smoking), her claims of fraud and conspiracy are time-barred.

6         Second, the physical-injury claims are barred under the "first-injury" rule.  In

7    Grisham, the California Supreme Court made the point that economic-loss claims and

8    personal-injury claims involve two different primary rights.  However, nothing in Grisham

9    suggests that different personal injuries involve different primary rights, and plaintiff is not

10   correct when she suggests that there is a "right" to be free of lung cancer that is distinct and

11   separate from the "right" to be free of other types of physical injury.  The primary rights

12   cited by the Grisham court were the right to be free from economic damages and the right

13   to be free from personal injury.

14        The court in Grisham clearly indicated that it was taking no position on the central

15   question raised in the present motion – whether, when a plaintiff suffers two distinct

16   physical injuries attributable to cigarette smoking, the statute of limitations starts to run as

17   of the date the plaintiff first discovers that the cigarette smoking had caused physical injury.

18   However, under the rule articulated in Davies and Miller, plaintiff's awareness by the early

19   1990s that she suffered from serious smoking-related illnesses started the statute of

20   limitations running as to her personal injury claim.

21        Plaintiff improperly relies on asbestos cases, which have a separate statute-of-

22   limitations accrual rule, and also improperly relies on Federal Employers' Liability Act and

23   Jones Act cases, as well as cases from other jurisdictions that are inapplicable here.  In

24   addition, the cases cited by plaintiff are distinguishable.

25        Coots involved the federal statute of limitations for FELA cases, and held that the

26   statute of limitations did not begin to run until the plaintiff was unable to work.  Moreover,

27   the court found that the plaintiff's earlier injuries were de minimis – in contrast to plaintiff's

28   injuries in the present case.  Chevron is inapposite, as it involved the determination of the

United States District Court

For the Northern District of California

1  proper date of injury in order to calculate benefits under Labor Code § 5412.  <u>Wagner</u>

2  involved a claim for damages for asbestos-related injuries under federal maritime law, not

3  under California law, and the case drew exclusively from jurisdictions other than California

4  when analyzing the statute of limitations.  <u>Martinez-Ferrer</u> has been discredited and

5  questioned by most of the courts that have considered it.

6  The court does not agree with plaintiff's suggestion that <u>Grisham</u> adopted a

7  "separate and distinct injury" rule, and that California is now a "two injury" rule state.  The

8  California Supreme Court did not reject the "first injury" rule, and it remains the law unless

9  the Legislature amends it by statute.

10  **CONCLUSION**

11  In accordance with the foregoing, the court finds that the motion for summary

12  judgment must be GRANTED.

13

14  **IT IS SO ORDERED.**

15  Dated:  May 27, 2008

16  _____
PHYLLIS J. HAMILTON
United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28