UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKKI POOSHS,

    Plaintiff,

    v.

PHILLIP MORRIS USA, INC., et al.,

    Defendants.

No. C 04-1221 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the court is defendants' motion for partial summary judgment. Having read the parties' papers, including the supplemental briefing, and having carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

## BACKGROUND

The complaint in this tobacco liability action, which was filed in the San Francisco Superior Court on January 13, 2004, originally alleged 13 causes of action against more than 20 defendants. By the time defendants filed their motion for summary judgment on June 18, 2012, ten causes of action remained at issue, asserted against three defendants – Phillip Morris USA Inc. ("Phillip Morris"), R.J. Reynolds Tobacco Company ("RJR"), and Hill & Knowlton, Inc. (now Hill + Knowlton Strategies LLC – "H&K").

The ten causes of action were listed in the complaint as (1) negligence (alleging that "cigarettes" were "negligently manipulated, manufactured, marketed, advertised, distributed and sold" by defendants); (2) products liability; (3) misrepresentation; (4) fraud and deceit/intentional misrepresentation; (5) fraud and deceit/concealment; (6) fraud and

deceit/false promise; (7) fraud and deceit/negligent misrepresentation; (8) concert of action; (9) pre-1969 failure to warn; and (10) off-label failure to warn. The second (products liability), and ninth and tenth (failure to warn) causes of action were alleged against Phillip Morris and RJR only, and the remaining causes of action were alleged against all three defendants.

On June 18, 2012, defendants moved for summary judgment as to "all claims" in the complaint.[1] Among other things, defendants argued that summary judgment should be granted as to any design defect claims, including the "negligent manipulation" or "negligent manufacture" portion of the first cause of action, which defendants interpreted as a "negligent design" claim. At the hearing on August 8, 2012, however, plaintiff's counsel stated that plaintiff is "not proceeding on a negligent design theory," adding that "[o]ur theories are negligence, simple run-of-the-mill standard of care CACI 400 negligence," and asserted that "[w]e put that forward in our complaint." Aug. 8, 2012, Transcript ("Tr.") at 13.

On October 22, 2012, the court issued a written order granting the motion in part and denying it in part. The court granted the motion as to the second cause of action for defective design (and to the first cause of action to the extent it alleged negligent design or negligent failure to warn of defective design); the third, fourth, sixth, and seventh causes of action for fraud and deceit; and the eighth cause of action for concert of action. The motion was denied as to the fifth cause of action for concealment of health risks of smoking; the first cause of action for negligence to the extent it alleged failure to warn of health risks of smoking; and the tenth cause of action for off-label failure to warn of health risks of smoking.

On November 1, 2012, as part of the court-ordered pretrial filings, plaintiff filed a trial brief. In the section labeled "Negligence," plaintiff asserted, among other things, that defendants "had a duty to speak honestly, withholding no material facts, when talking publicly about their use of their products." She argued that she was

---

[1] Defendants did not, however, move for summary judgment as to the claim of pre-1969 failure to warn.

2

> entitled to the jury's determination as to whether or not the duty of ordinary or reasonable care, such care that persons of ordinary prudence would use to avoid injury to others who were using a product they made, sold, or promoted for sale, was breached by the conduct of the defendants in this case

and that

> [t]he jury should be asked to assess under California law, if such ordinary and reasonable care towards [plaintiff] was not exercised by the defendants, . . . when they knowingly made, sold, or promoted a product for sale which caused serious health problems, including cancer and heart disease, not only without fully disclosing this to [plaintiff] or their other consumers, but instead telling them that they believed "the products [we] make are not injurious to health."

Plaintiff contended that "[s]uch conduct falls so far below the standard of care that a person of ordinary prudence would follow to avoid injury to others, that the defendants . . . are liable to [p]laintiff because their conduct fell below this standard." Pltf's Trial Brief at 14.

Also in the trial brief, plaintiff argued, with regard to her post-1969 failure-to-warn claim, that for the reasons set forth in <u>Altria Group, Inc. v. Good</u>, 555 U.S. 70 (2008), and <u>Cipollone v. Liggett Group, Inc.</u>, 505 U.S. 504 (1992), her claims were not preempted by the Labeling Act because they were based on "defendants' duty not to deceive and to warn customers, including the [p]laintiff, of the harm that might occur if defendants' products were used as intended, particularly where, as here, defendants breached an owed duty to [plaintiff] through intentional acts of deception, concealment, suppression of facts and failure to warn." Pltf's Trial Brief at 23.

Plaintiff asserted further that defendants' "bad acts" imposed legal "duties" on them to warn cigarette users (outside and off the cigarette label) of the health risks of smoking; to disclose to consumers the results of "scientific research known to them" indicating that the use of cigarettes was harmful; and to disclose the ingredients of cigarettes and the presence of additives and alterations to the nicotine levels in cigarette tobacco. Plaintiff argued that defendants had breached each of these duties, none of which was preempted by the Labeling Act. <u>Id.</u>

On November 29, 2012, at what was supposed to be the final pretrial conference, the court raised the issue of Labeling Act preemption, and the duty to disclose facts other

than through promotion and advertising, as set forth in Cipollone, 505 U.S. at 521-28. The court requested that plaintiff's counsel identify the source of the state-law duty to disclose through channels of communication other than advertisement and promotion, which plaintiff had asserted applied in this case. Counsel's response was that the duty was found in California Civil Code § 1714 "for starters." Nov. 29, 2012, Tr. at 90-92.

Following a brief discussion, counsel made reference to a claim of "general garden-variety 1714 negligence" that was assertedly pled in the complaint. However, it was clear that defendants as well as the court had interpreted the first cause of action (the claim that defendants "negligently manipulated, manufactured, marketed, advertised, distributed, and sold" cigarettes) as largely duplicative of other causes of action in the complaint – in particular the claims of affirmative misrepresentation and defective design – and had concluded that all that remained of the first cause of action after the October 22, 2012 order was a claim of negligent failure to warn of the health risks of smoking.

The court stated that it was unaware of any remaining negligence claim other than negligent failure to warn, but plaintiff's counsel reiterated that plaintiff had asserted a "garden-variety" § 1714 negligence claim on which the court had not ruled, and argued that the first cause of action for negligence (referring to ¶¶ 26-30 of the complaint) "incorporate[d] the prior paragraphs" (referring to ¶¶ 1-25 of the complaint). Nov. 29, 2012, Tr. at 94-96; see also id. at 99-100, 103-105.

When asked to define the duty that this "garden-variety" claim entailed, plaintiff's counsel referred only to the "duty of ordinary care." Id. at 96-98. The court then asked what defendants had done to breach that duty. Counsel responded,

> They didn't do anything to – but breach that duty. They marketed the – the product. They didn't instruct people on how to use the product. They didn't educate them about the consequences of using the product. They didn't communicate anything about addiction, nicotine, detrimental health effects from the normal intended use of the product. There's a whole panoply of things that a product manufacturer should do given the circumstances of their product to discharge a duty of ordinary care.

Id. at 98. Plaintiff's counsel subsequently indicated that "[w]e understood" the October 22, 2012 order to "leave in negligence except to the extent it involved a negligent design claim."

4

Id. at 104.

Counsel asserted that plaintiff's position regarding the claim of "general negligence" in the first cause of action was "described in detail" in her July 9, 2012 opposition to defendants' motion for summary judgment.

> It has to do with the whole host of things that the defendants did in their marketing, manipulation of their product, . . . the foreseeable injury and addictions that occur in the normal intended use of their product, their representations made about their product to the consuming public, what they did in their interaction with consumers comprehensively . . . to encourage the use of the product.

Id. at 100, 103. Counsel did not specify where in plaintiff's opposition this discussion was to be found; however, it appears that counsel was likely referring to the statement of facts, and to the argument that defendants had breached their duty of care by

> (1) Failing to establish a reasonably safe dose for foreseeable users, of their cigarettes, if any such safe dose exists; (2) Failing to design, manufacture, sell and promote the sale [sic] cigarettes that when used as intended were reasonably safe for foreseeable users; (3) Failing to make such feasible improvements in design, composition or manufacture of their cigarettes such as to materially decrease the foreseeable risk to users; (4)Targeting minors, including Plaintiff, to begin smoking at an early age, thus creating a constant population of cigarette users, and thereby replacing older smokers who die from the use of their products with newly addicted minors; (5) Concealing material information regarding the health effects of smoking, while simultaneously affirmatively misrepresenting to Plaintiff and other members of the public, through continuing advertising campaigns, and public relations campaigns in the print, radio, cinema and television media until 1969, and prior to and after 1969 in "informational" communications, sponsorship of sports activities, concerts, and other events, testimony and public statements by Defendants' officers, agents and employees that the cigarettes manufactured, sold, or distributed by [Phillip Morris and RJR] were safe in their ordinary and foreseeable use, which induced Plaintiff to unknowingly expose herself to the hazards of cigarettes; (6) Failing to test their products relative to disease potential; [and] (7) Failing to disclose the ingredients of cigarettes or disclose there were additives and alterations to the nicotine levels of the tobacco contained therein.

Pltf's July 9, 2012, Opp. at 7 n.17.

Because the entirety of this claim that plaintiff appeared to be asserting had not been tested on summary judgment, and because the court found that it would be premature to submit it to a jury before the court had had an opportunity to determine whether there were triable issues of fact – and also because the court quite frankly did not understand a number of plaintiff's arguments – the court indicated that it would require plaintiff to provide

5

a statement of her position with regard to any remaining claim of negligence, other than the claim of negligent failure to warn of the health risks of smoking.

Accordingly, on December 5, 2012, the court issued its Preliminary Final Pretrial Order, in which it directed, first, that plaintiff file a statement clarifying the exact nature of the negligence claim that she believed remained in the case, setting forth the legal basis for the duty allegedly owed by the defendants, as well as the facts that supported the alleged breach of that duty; and second, that defendants either file a motion for summary judgment on this issue, or a statement to the effect that moving for summary judgment would be futile because of the existence of disputed material facts.

Plaintiff filed the statement on December 12, 2012, asserting that the first cause of action is a claim for general or "garden-variety" negligence. She cited numerous California cases applying Civil Code § 1714 in a variety of situations, and argued that "[d]efendants' conduct as manufacturers, sellers, and purveyors of information to the public fell far below the standard of care that a person of ordinary prudence would follow to avoid injury to others." Dec. 12, 2012, Statement at 3.

As for the facts that supported the alleged breach of duty, plaintiff first argued that the negligence claim "relates to the totality of [d]efendants' conduct." Id. at 2. Plaintiff followed this with a list that included the seven items set forth in the July 9, 2012 opposition (reproduced above) along with items such as "failing to study their products relative to disease potential;" "failing to disclose the ingredients of cigarettes;" "failing to warn of the severity of health risks of using cigarettes;" "failing to investigate the accuracy of public statements before dissemination;" "failing to disclose that there were additives in their products;" "failing to take precautions to ensure that no harmful effects or by-products were created by the actual use of the product;" "failing to disclose . . . combustion or pyrolytic changes to their products which lead to the creation or enhancement of carcinogens and cancer promotions in cigarette smoke;" and "failing to learn and disclose that nicotine changes the brain thereby making it more difficult if not impossible to quit the use of their products." Id. at 4-5.

6

Defendants filed the present motion for partial summary judgment on January 9, 2013, seeking an order confirming that plaintiff has no remaining viable negligence claims apart from negligent failure to warn (against Phillip Morris and RJR), or in the alternative, granting partial summary judgment on any remaining negligence claims apart from negligent failure to warn. Defendants argue that because the court granted summary judgment as to all claims regarding defective design, affirmative misrepresentation, and concert of action, and left in only the claims of concealment and failure to warn of health risks of smoking, there is nothing alleged in the first cause of action that does not fall under the categories of negligent design or negligent misrepresentation or negligent failure to warn. In addition, defendants seek an order limiting all plaintiff's remaining claims to the period prior to July 1, 1969; and dismissing all remaining claims asserted against H&K.

On January 23, 2013, plaintiff filed an opposition to the motion, arguing that the complaint has "always" alleged negligence, that her negligence claim is supported by law (citing Civil Code § 1714); that there are no public policy considerations that warrant a departure from the general rule of Civil Code § 1714; that all defendants owe plaintiff a duty of ordinary care; and that plaintiff's negligence claim is "factual," and is established by the list of acts alleged to have breached the duty of care (as set forth in the December 12, 2012 Statement). As for defendants' remaining arguments, plaintiff assert that she does not dispute that her failure-to-warn claims are limited to pre-1969, and that H&K's arguments go beyond the scope of the court's order regarding the further briefing, and should be discounted on that basis.

On February 13, 2013, the court heard various pretrial motions, including defendants' motion for partial summary judgment. At the hearing, after listening to plaintiff's counsel's attempts to explain the "many different items or acts that [defendants] did that amount to negligence," Feb. 13, 2013, Tr. at 58, in relation to what (if anything) remained of the negligence cause of action, the court stated,

> What I'm struggling with is . . . that it seems to me that you're using negligence as a way to bring everything into the case that I've already dismissed. You're saying negligence is everything. Negligence is

7

misrepresenting, failing to do this, concealing, everything. And you have not described anything that sounds like negligence to me. It sounds like intentional conduct that you're describing.

Id.

The court added, "I think what you've always argued is that there's this garden-variety duty to use ordinary care," to which plaintiff's counsel responded, "That's correct." Id. at 59. The court then stated, "I don't know what that means, unless it's connected with conduct or an omission. Duty to use ordinary care in not putting advertising before the public that is untruthful or incomplete. Why isn't that misrepresentation or concealment?" Id. Following a further attempt at explanation by counsel, the court stated, "This isn't helpful to me. What I'd like you to do is submit to me in the next week just a two-page letter brief setting forth cases you think illustrate the kind of negligence that you're asserting here. . . And why those cases show ordinary care not attached to any particular kind of conduct." Id. at 59-60.

Plaintiff filed the supplemental response on February 27, 2013, and defendants filed a further response on March 13, 2013.

**DISCUSSION**

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

B.  Defendants' Motions

As explained above, defendants seek an order confirming that plaintiff has no remaining viable negligence claims apart from negligent failure to warn, or, in the alternative, an order granting partial summary judgment on any remaining negligence claims apart from negligent failure to warn. Defendants also seek an order limiting all plaintiff's remaining claims to the period prior to July 1, 1969, and dismissing all remaining claims against H&K.

8

1.     First cause of action for negligence

The first cause of action alleges that "cigarettes," which were allegedly "recklessly and negligently manipulated, manufactured, marketed, advertised, distributed, and sold" by the "cigarette defendants" including Phillip Morris and RJR, and by H&K, were "a substantial contributing factor in causing injury, damage, loss, or harm to the plaintiff." Cplt ¶ 27. Plaintiff argues that this cause of action asserts a claim of, variously, "ordinary" or "general" or "garden variety" or "simple" negligence, under California Civil Code § 1714.

The elements of a cause of action for negligence are a duty to exercise due care, breach of that duty, causation, and damages. See Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." Bily v. Arthur Young & Co., 3 Cal. 4th 370, 397 (1992); see also Waseloh Family Ltd. Partnership v. K.L. Wessel Const. Co., 125 Cal. App. 4th 152, 163 (2004). Whether this element has been established in a particular case is a question of law to be resolved by the court. Bily, 3 Cal. 4th at 397.

In Rowland v. Christian, 69 Cal. 2d 108 (1967), the California Supreme Court emphasized that "the basic policy of this state" is that

> everyone is responsible not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Id., at 119 (citing Cal. Civ. Code § 1714). This legal duty is owed to the class of persons who it is reasonably foreseeable may be injured as a result of the actor's conduct. Lugtu v. California Highway Patrol, 26 Cal. 4th 703, 716 (2001). An exception to the general duty rule may occasionally be warranted in the absence of a statutory provision establishing one, when "clearly supported by public policy." Rowland, 69 Cal. 2d at 112; see also Cabral v. Ralphs Grocery Co., 51 Cal. 4th 764, 771-742 (2011).

Here, plaintiff argues that defendants as "a product manufacturer" owed her a duty of care as "a consumer." She asserts that on the issue of duty, the court should look at "the

9

entire category of negligent conduct, not to particular parties in a narrowly defined set of circumstances[,]" and that there is no requirement for a plaintiff to "plead or prove myopically particularized features of negligent tortious conduct." Feb. 27, 2013 Supp. Brief at 2. This argument echoes the position taken by plaintiff's counsel at the February 13, 2013 hearing – that the negligence claim incorporates "the totality" of defendants' conduct. See Feb. 13, 2013 Tr. at 52, 56-58.

However, as the court noted at the February 13, 2013 hearing, the issue is not so much whether defendants owed plaintiff a duty of due care, but rather whether plaintiff has alleged any breach of a duty of care that is not duplicative of the other (dismissed) claims in the complaint, or whether she has alleged any form of negligence that is actionable against H&K. See, e.g., Feb. 13, 2013 Tr. at 57 ("You can say over and over again, there's a duty of ordinary care, and it doesn't get you anywhere until you connect it with a verb. . . . If you cannot connect [a negligence claim] with specific conduct, I don't know how that survives."). Even if one accepts for the sake of argument that defendants owed plaintiff some undefined "duty of ordinary care," plaintiff has not established the breach of any such duty by a specific action taken by defendants that differs in any way from the alleged defective design, misrepresentation, concealment, or failure to warn.

To the extent that the claims of manipulation, manufacture, marketing, advertising, distribution, and sales can be considered "negligent," any claim of negligent manipulation is the same as a claim of negligent design, which is no longer in the case; any claim of negligent manufacture is unsupported by any facts in the complaint and unsupported by any evidence; and the claims of negligent marketing, advertising, distribution, and selling are subsumed by the misrepresentation and failure-to-warn claims.

Indeed, the purported "breaches" of the "duty of due care" listed in plaintiff's opposition to the present motion largely serve only to restate the claims of negligent design, negligent misrepresentation, and negligent failure to warn – all of which have previously been addressed.

For example, the claims that defendants failed to "take precautions to ensure that no

harmful effects or by-products were created by the actual use of the product," failed to "establish a reasonable safe dose for foreseeable users," failed to "design" and "manufacture" cigarettes that were reasonably safe when used a intended," and failed to "make feasible improvements in design, composition, or manufacture of their cigarettes such as to materially decrease the foreseeable risk to users" are all simply restatements of the claim that cigarettes were defectively designed.

The claims that defendants "fail[ed] to warn of the severity of health risks of using cigarettes," "fail[ed] to disclose . . . combustion or pyrolytic changes to their products which lead to the creation or enhancement of carcinogens and cancer promotions in cigarette smoke," and "fail[ed] to disclose that nicotine changes the brain thereby making it more difficult if not impossible to quit the use of their products" are all simply restatements of the failure-to-warn claims.

Similarly, the claims that defendants "affirmatively misrepresent[ed] . . . that cigarettes manufactured, sold, or distributed by [Phillip Morris and RJR] were safe in their ordinary and foreseeable use" simply restate the misrepresentation claims. All misrepresentation claims have been dismissed from the case – this includes the first cause of action to the extent it alleges negligent misrepresentation, the third cause of action for misrepresentation, the fourth cause of action for intentional misrepresentation, the sixth cause of action for false promise, and the seventh cause of action for negligent misrepresentation.

The only fraud and deceit claim that has not been dismissed is the fifth cause of action for concealment. Allegations that defendants "[c]onceal[ed] material information regarding the health effects of smoking," and "fail[ed] to disclose the ingredients of cigarettes" are simply restatements of the concealment claim, but concealment may not be asserted as part of a negligence claim.

Fraud is an intentional tort, the elements of which are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting harm or damage.

11

Nelson v. Gaunt, 125 Cal. App. 3d 623, 635 (1981). Fraud and deceit are defined in California Civil Code §§ 1709 and 1710. "Fraud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact." Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 37 (1975).

Because an action for fraud based on concealment requires that a person intentionally conceal a fact with the intent to defraud another, see Kaldenbach v. Mutual of Omaha Life Ins. Co., 178 Cal. App. 4th 830, 850 (2009), plaintiff cannot pursue a claim of "negligent" concealment. In general, the tort of negligent misrepresentation extends only to affirmative statements or positive assertions. Randi W. v. Muroc Joint Unified Sch. Dist., 14 Cal. 4th 1066, 1083 (1997); see Diediker v. Peelle Fin. Corp., 60 Cal. App. 4th 288, 297-98 (1997). Absent a statutory authorization, or a special relationship between the parties creating a duty to disclose, there is no liability for implied representations, or for negligent nondisclosure or concealment. See Wilson v. Century 21 Great Western Realty, 15 Cal. App. 4th 298, 306 (1993); Byrum v. Brand, 219 Cal. App. 3d 926, 941-42 (1990); see also 5 Witkin, Summary of Cal. Law 10th, Torts (2005) §§ 818, 825. Thus, to the extent that plaintiff is attempting to assert a claim of negligent concealment, any such claim appears to be non-existent. In any event, no such tort claim is pled in the complaint.

  2.  Claims remaining against H&K

Defendants argue that summary judgment should be granted as to the remaining causes of action asserted against H&K – the first cause of action for negligence and the fifth cause of action for fraud and deceit/concealment. As an initial matter, while plaintiff is technically correct that the court's December 5, 2012 order directed further briefing on the first cause of action for negligence only, and did not authorize further briefing on the concealment claim, plaintiff had an opportunity to oppose the motion, and then to file a further supplemental opposition, and thus can claim to have suffered no prejudice. Indeed, the court noted in the Second Final Pretrial Order that it had granted approval for H&K's further motion, and had directed plaintiff to file a response to the issues raised by H&K.

The evidence shows that H&K is public relations firm that provided services to the Tobacco Industry Research Committee ("TIRC") from 1954 to 1963, and to the Tobacco Institute ("TI") from 1958 to 1968. There is no evidence that H&K manufactured, distributed, or sold cigarettes, or that it was involved in cigarette advertising or marketing, or that it made any statements – either to plaintiff or to the general public – about smoking and health. Moreover, there is no evidence that there were ever any dealings between plaintiff and H&K, and indeed, plaintiff testified that she never heard, saw, read, or relied on statements made by H&K's clients, TIRC and TI.

In light of these facts, defendants argue that it is difficult to ascertain exactly what plaintiff's negligence claim against H&K might be. The court agrees. For the reasons set forth above, it cannot be a "garden-variety" negligence claim. Nor can it be a claim of negligent failure to warn; as plaintiff has conceded, she has no failure-to-warn claims against H&K, because H&K did not design, make, or sell cigarettes. See O'Neil v. Crane Co., 53 Cal. 4th 335, 343-44 (2012).

Further, to the extent that plaintiff is arguing that H&K was negligent in failing to disclose that smoking cigarettes could cause cancer, that is nothing more than a failure-to-warn claim. To the extent that plaintiff is asserting that H&K was negligent in making statements in the 1950s to the effect that there was a scientific controversy at that time regarding the connection between smoking and lung cancer, that is nothing more than another version of the misrepresentation claims which have been dismissed from the case.

With regard to the claim of concealment, the elements of this claim are (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. See Kaldenbach, 178 Cal. App. 4th at 850. Plaintiff cannot meet these elements because she cannot show that H&K failed to disclose a material fact that it was under a duty to

13

plaintiff to disclose.

In particular, plaintiff provides no evidence of any transaction or relationship between herself and H&K that gives rise to a duty to disclose. In LiMandri v. Judkins, 52 Cal. App. 4th 326 (1997), the court identified four circumstances in which nondisclosure or concealment may constitute actionable fraud. One of those is where the defendant is in a fiduciary relationship with the plaintiff. Id. at 336. Plaintiff concedes that she and H&K were not in any sort of fiduciary relationship.

The remaining three (nonfiduciary) circumstances all "presuppose[ ] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise. . . . [S]uch a relationship can only come into being as a result of some sort of transaction between the parties." Id. at 337; see also OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp., 157 Cal. App. 4th 835, 859 (2007). "Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." LiMandri, 52 Cal. App. 4th at 337. Plaintiff alleges no transaction between herself (as part of "the public") and H&K (as a public relations agency) that would suffice to establish a relationship giving rise to a duty to disclose.

Plaintiff argues in her February 27, 2013 supplemental brief that because H&K is a public relations expert, which "communicates with the public," a "relationship" was formed between H&K and the public, which includes plaintiff. She cites Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th 603 (1992), for the proposition that while one may be under no obligation to speak on a matter, where he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to speak truthfully but also not to conceal or suppress facts within his knowledge which materially qualify those stated. See id. at 613. However, plaintiff does not explain why she believes this case supports her claim that a "special relationship" existed between herself and H&K, such that H&K had a duty to disclose the health risks of smoking to her, and the court finds no basis for finding any such special relationship.

14

3. Post-1969 claims

In her opposition to defendants' original motion for summary judgment, plaintiff argued that not all post-1969 failure-to-warn claims are preempted, and suggested that state law might impose a duty to "employ non-promotional communications, such as public-service announcements," and that a misrepresentation might give rise to a further duty to disclose. July 9, 2012 Opp. at 23-27. But plaintiff cited no California law creating such a duty and alleged no facts showing such a duty would be relevant here.

In the October 22, 2012 summary judgment order, the court held, relying on Cipollone, that claims for fraudulent concealment or failure to warn after July 1969 are preempted unless they rely "on a state-law duty to disclose facts through channels of communication other than advertisement or promotion[;]" and that to the extent these claims pre-date 1969, or (if post-1969) are "based on a duty to disclose facts other than through advertising and promotion," then "such claims are not preempted and may proceed." Oct. 22, 2012, Order at 23 (citing Cipollone, 505 U.S. at 521-23).

Defendants now argue that plaintiffs cannot establish a duty to warn or to disclose facts outside advertising and promotion after July 1, 1969, as she has identified no source for any such duty to warn. As described above, the court asked plaintiff's counsel at the November 29, 2012 hearing to identify the source of the state-law duty to disclose through channels of communication other than advertisements and promotion. The only specific source mentioned by counsel was Civil Code § 1714, the general negligence statute, although counsel also made reference to the common law precluding fraudulent concealment. See Nov. 29, 2012 Transcript at 90-94.

In her opposition, plaintiff agrees that the failure-to-warn claims are limited to the pre-1969 period, but she asserts that Labeling Act preemption does not apply to the off-label failure-to-warn claims – the claims not based on advertising and promotion – which she contends includes the failure to warn of the negative health effects of smoking. However, she has failed to provide the source of any state-law duty to disclose facts other than through advertising and promotion, which would suffice to remove the off-label failure-

to-warn claims from the preemptive effect of the Labeling Act.  A generic citation of the "duty of ordinary care" and/or § 1714 is not enough to avoid summary judgment on the question whether Labeling Act preemption applies to post-1969 off-label failure-to-warn claims.  In addition, to the extent that plaintiff is relying on a state-law duty to disclose based on the statutory prohibition against fraud and deceit/concealment, such a claim would be duplicative of the fifth cause of action for fraud and deceit/concealment, which remains in the case.

Plaintiff also argues that Labeling Act preemption does not apply to the first cause of action for negligence, because it is not a failure-to-warn claim, but rather one based on an alleged breach of a state law duty to exercise reasonable care, as set forth in Civil Code § 1714.  Thus, she argues, her negligence claim cannot be limited to defendants' pre-1969 actions.  Nevertheless, for the reasons set forth above in the discussion of the first cause of action, the court has determined that the only negligence claim remaining in the case is the claim of negligent failure to warn.  Thus, Labeling Act preemption does apply to any portion of the claim based on post-1969 actions, based on plaintiff's failure to cite a source of a state-law duty to disclose facts other than through advertising and promotion.

As for whether state law imposes a duty to "employ non-promotional communications, such as public service announcements," or whether a misrepresentation might give rise to a further duty to disclose, plaintiff has cited no California law giving rise to such a duty, and has alleged no facts showing such a duty would be relevant here, particularly given that the court has already ruled that plaintiff did not rely on any misrepresentations.

## CONCLUSION

In accordance with the foregoing, defendants' motion is GRANTED.  The court finds that plaintiff has no remaining viable negligence claims apart from negligent failure to warn; that plaintiff's failure-to-warn claims are limited to the period prior to July 1, 1969; and that all claims against H&K are dismissed.  Thus, the claims remaining in the case, asserted against Philip Morris and RJR only, are the first cause of action for negligent failure to warn

prior to July 1, 1969; the fifth cause of action for fraud and deceit/concealment; and the ninth cause of action for pre-1969 failure to warn.

**IT IS SO ORDERED.**

Dated: May 22, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge