UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKKI POOSHS,

    Plaintiff,

    v.

PHILIP MORRIS USA INC., et al.,

    Defendants.

_____/

No. C 04-1221 PJH

**THIRD FINAL PRETRIAL ORDER**

Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, this third final pretrial order is hereby entered and shall control the course of the trial, along with the December 5, 2012 preliminary final pretrial order and the February 15, 2013 second final pretrial order, unless modified by a subsequent order.

I.    DEPOSITION DESIGNATIONS

As presented, plaintiff's deposition designations are unusable and unworkable, and must be revised. With regard to defendants' objections to categorical designations, the court rules as follows:

    a.    The objection to designations relating to defendants' post-1987 knowledge, statements, and public positions is SUSTAINED. See, e.g., May 17, 2012 Deposition Transcript ("Dep. Tr.") of Peter J. Lipowicz at 1158-1159 (questioning whether Philip Morris admits that its president was not being truthful when he testified in 1994 that there was not sufficient evidence that cigarettes caused cancer); Oct. 4, 2011 Dep. Tr. of Jeanne Bonhomme at 401, 403, 409-411 (discussing Philip Morris' use of advertising and promotions in post-1987 period); Oct. 5, 2011 Dep. Tr. of Jeanne Bonhomme at 744 (discussing Philip Morris' sponsorship of women's tennis tours in 1990s); Aug. 4, 2011

Dep. Tr. of John B. O'Brien (discussing expenditures on advertising and promotions in 1991).

    b.    The objection to designations relating to evidence of harm purportedly caused by cigarette smoking on entire populations ("aggregate harm") is SUSTAINED. See, e.g., Oct. 5, 2011 Dep. Tr. of Richard Jupe at 275 (stating that over 400,000 people in the United States are predicted to die from cigarette-related diseases each year); May 17, 2012 Dep. Tr. of Peter J. Lipowicz at 1150 (questioning whether Philip Morris admits that smoking causes 400,000 deaths a year in the United States); July 16, 1997 Dep. Tr. of Walter Merryman (inquiring about positions of "tobacco industry" as a whole and reasons behind them).

    In the Preliminary Final Pretrial Order, the court ruled on defendant Philip Morris USA's Motion in Limine No. 1 to exclude evidence of the aggregate harm allegedly caused by smoking. The court found that it was unclear exactly what evidence defendant was seeking to preclude, but indicated that it would "not allow the introduction of evidence against the entirety of the cigarette industry, or against cigarette manufacturers other than the defendants that remain in the case." That remains the position of the court.

    The court added that "[t]o the extent that plaintiff seeks to introduce evidence of harm caused by smoking to support her theory of causation, the motion is DENIED." The court now clarifies that this was intended as a reference to plaintiff's Motion in Limine No. 7 to exclude expert testimony as to causation of plaintiff's lung cancer that does not conform with the requirements of Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953 (1997), which the court denied. It was not intended as a denial of defendant's motion to exclude evidence of aggregate harm.

    c.    The objection to designations regarding cigarette design is SUSTAINED, as the design claims are no longer in the case. See, e.g., May 17, 2012 Dep. Tr. of Peter J. Lipowicz at 1180-1181 (asking whether Philip Morris takes the position that design changes have reduced the harm of cigarettes, and whether experts independent of the tobacco industry agree that the design changes have reduced the risk of death or disease); Sept.

20, 2011 Dep. Tr. of Jeff S. Gentry at 57 (asking whether cigarettes have been designed to allow consumers to extract as much nicotine as they need); Oct. 5, 2011 Dep. Tr. of Richard Jupe at 131-135 (discussing why Philip Morris has failed to develop a "nonadictive cigarette," and the marketplace failure of a product without nicotine).

  d. The objection to designations regarding affirmative statements and advertisements is OVERRULED. While the court did grant summary judgment as to any claim of affirmative <u>misrepresentation</u>, that does not preclude the admissibility of affirmative statements or advertisements that predate the immunity period, assuming some relevance to the concealment claim.

  As for defendants' argument that the evidence should be precluded because plaintiff cannot prove she relied on these statements or advertisements, that is a matter for plaintiff to prove at trial as part of her concealment claim. See <u>Robinson Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal.4th 979, 990 (2004) (under California law, the elements of fraud are "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, <u>i.e.</u>, to induce reliance; (4) justifiable reliance; and (5) resulting damage."). Fraudulent concealment is one type of fraud. <u>See</u>, <u>e.g.</u>, <u>Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC</u>, 162 Cal. App. 4th 858, 868 (2008). These elements (including the element of reliance) were recited in the court's October 22, 2012 and May 22, 2013 orders, and are also set forth in CACI 1901 (including the version of CACI 1901 proffered by plaintiff and the version proffered by defendants). The court is flummoxed by plaintiff's counsel's insistence at the hearing that reliance is not an element of the concealment claim.

  e. The objection to designations relating to post-July 1, 1969 evidence (including designations relating to what defendants knew after July 1, 1969, and testimony by witnesses whose personal knowledge of defendants is limited to the period of time after July 1, 1969) is SUSTAINED in part and OVERRULED in part. The court previously ruled that failure-to-warn claims are preempted as to the post-1969 period, but that the concealment claim is not.

3

Thus, evidence/testimony regarding defendants' knowledge of important facts after July 1, 1969 (and prior to 1988) will be admissible to the extent that plaintiff can show that defendants deliberately failed to disclose such facts with the intent to deceive the public (including plaintiff) by concealing such facts, and that plaintiff reasonably relied on defedants' deception.

However, to the extent that plaintiff seeks to use such post-1969 evidence/testimony as part of her failure-to-warn claim, such evidence will not be admissible. See, e.g., Oct. 13, 2011 Dep. Tr. of Peter J. Lipowicz at 387-388 (discussing internal documents after 1969 on subject of nicotine studies); Apr. 24, 2009 Dep. Tr. of Christopher J. Cook at 58-62 (discussion of new product development efforts after 1969, and impact of physiological satisfaction).

  f. The objections to designations of testimony from witnesses outside the present case are SUSTAINED. This includes the entirety of the designations of the testimony of Victor J. DeNoble, William Dunn, Jr., Robert K Heimann, F. Ross Johnson, Thomas S. Osdene, and Claude E. Teague, Jr. The testimony is hearsay, and plaintiff has not shown that it qualifies under any exception to the hearsay rule.

In particular, because none of these six deponents was employed by defendants at the time they gave their deposition testimony, and none was designated as a Federal Rule of Civil Procedure 30(b)(6) witness, the testimony cannot be considered admissions of a party-opponent, as it was not made by a person the defendants "authorized to make a statement" and was not testimony by defendants' agent on a matter within the scope of employment "while it existed." Fed. R. Evid. 801(d)(2).

Defendants further object to the designations of the testimony of Thomas S. Osdene on the basis that he refused to answer questions and repeatedly invoked his privilege against self-incrimination under the Fifth Amendment to the United States Constitution, and that it would not be proper for the court to allow any adverse inferences to be drawn from that testimony. Because Mr. Osdene's testimony is inadmissible hearsay, the court finds that it is unnecessary to reach the remaining issues.

4

II. JURY INSTRUCTIONS

    a. Agreed instructions

The agreed instructions submitted by the parties appear primarily to consist of the standard instructions the court previously advised that it always issues. Of these, however, the court will not give CACI 116 (electronic communications prohibited), but will instead give Ninth Circuit 3.1A or the Model Instruction prepared by the Judicial Conference Committee on Court Administration and Case Management, a copy of which will be provided to counsel. The court will not give Ninth Circuit Model Instruction 1.15 (permitting jurors to ask questions of witnesses). Nor will the court give CACI 50.11 (permitting the court reporter to go into the jury room to read portions of the transcript to the jurors), although the court will give Ninth Circuit Model Instruction 3.2A, if necessary.

    b. Separate instructions

The court will give CACI 200, 201, 202, 203, 205, 3928; and Ninth Circuit Model Instruction 1.7.

No later than 90 days from the date of this order, the parties shall provide additional briefing as to the instructions regarding causation (CACI 430, 431, and 435; BAJI 3.77; and defendants' special instruction on medical causation), and as to the instruction regarding calculating the amount of the punitive damages (CACI 3949), as directed at the pretrial conference.

The parties shall meet and confer, and prepare joint instructions regarding express preemption, the immunity period, and damages on multiple legal theories (CACI 3934).

The court will resolve the disputes regarding the instructions for failure to warn (CACI 1205, 1222), and concealment (CACI 1901, 1904, 1905, 1906, 1907, 1908), and entitlement to punitive damages (CACI 3924, 3943, 3946). The court will not give the instruction regarding negligence - basic standard of care (CACI 1221), or the instructions proposed by defendants based solely on language from case law.

III. VERDICT FORMS

As directed at the pretrial conference, the parties shall meet and confer, and prepare

a joint verdict form.

## IV.   EXHIBITS

Plaintiff's exhibit list includes several thousand exhibits, far more than can be introduced at trial. Thus, the court has attempted to arrive at a process for compiling a usable exhibit list. As an initial matter, the court reiterates that every exhibit must be introduced by a witness.

As agreed by the parties at the pretrial conference, no later than 45 days from the date of this order, the parties shall exchange a "will use" list of exhibits. Thirty days after this exchange, they shall meet and confer for the purpose of stipulating to admissibility (provided the exhibit can be introduced through an appropriate witness). They shall submit any objections to the court 14 days thereafter. The exhibits to which parties have objections shall be categorized, with examples provided as to each category.

With regard to the "may use" list of exhibits, the parties shall, based on the court's ruling as to the "will use" exhibits, attempt to arrive at a procedure pre-trial that puts the matter before the court in a way designed to enable the court to make a determination. Short of that, these exhibits will be examined and ruled on during the trial, with the time to do so being counted against plaintiff's allocated trial hours.

## V.   VOIR DIRE AND JURY QUESTIONNAIRE

The court will conduct the voir dire in its entirety. The court has revised the jury questionnaire, to eliminate argumentative questions. Defendants' request for the addition of "or opinions" after "feelings" in Question Nos. 26 and 28, and request to remove the references to Hill & Knowlton in Question Nos. 15, 16, 23, and 31 are GRANTED. In addition, defendants' objections to Question No. 25 and to the additional questions requested by plaintiff are SUSTAINED.

Within 30 days of the date of this order, plaintiff shall either file a new proposed instruction setting forth her claims, or advise whether the language appearing in the questionnaire appended as Exhibit G to the Joint Status Statement is acceptable. Defendants shall prepare and submit the revised questionnaire 14 days thereafter.

## VI. TIME LIMITS

The total time for trial will be 60 hours, exclusive of closing statements and instructions, but inclusive of opening statements, with 30 hours allocated to each side.

## VII. DEFERRED RULINGS ON EVIDENCE

The court previously directed the parties to meet and confer about the specific items of evidence for which the court deferred certain rulings on the parties' motions in limine, including Philip Morris' Motion in Limine No. 8, to exclude evidence regarding the film "This Week – the Marlboro Story – Death in the West;" RJR's Motion in Limine No. 7, to exclude references to "Smoking and Tobacco Control Monograph" to the extent that plaintiff intends to offer the document for some purpose unrelated to cigarette design; and plaintiff's Motion in Limine No. 2, to exclude plaintiff's home videos. The court further directed the parties to advise whether they have entered into a stipulation that COPD and periodontal diseases are separate and distinct from lung cancer, in accordance with the argument regarding RJR's Motion in Limine No. 2 to exclude evidence of plaintiff's injuries other than lung cancer.

    a.    "Death in the West" (Philip Morris' Motion in Limine No. 8)

With regard to "Death in the West," the parties did meet and confer regarding admissibility of various clips from the film. Plaintiff sent defendants a list of proposed clips, and defendants responded with a letter containing their objections and counter-designations. Notwithstanding this effort, the parties have been unable to come to an agreement.

Defendants contend that the film should be excluded in its entirety for the reasons previously argued in the motion in limine. They argue that the film is irrelevant because plaintiff never saw the film, and admission of plaintiff's designations would prejudice defendants. They claim that because the film was not produced until 1970, it is irrelevant for the further reason that plaintiff's claims are limited to the pre-1969 period.

Defendants also assert that the film portrayed Philip Morris "unfairly," that Philip Morris was "fraudulently induced" into cooperating with the film's producers, and that this

7

false portrayal led a British court to prohibit the copying and distribution of the film. In addition, defendants claim that plaintiff's designations from the film constitute an incomplete and edited collection of portions of questions and answers, as well as hearsay.

In the event that the court does not exclude the film in its entirety, defendants have prepared specific objections to particular portions of plaintiff's designations. Defendants have also appended an exhibit that consists of unedited transcripts of the interviews from which plaintiff's edited clips were spliced, with defendants' counterdesignations highlighted in yellow. Defendants request that if any portion of plaintiff's designations are admitted, they be admitted as transcripts, not as film clips, because to do otherwise would, in defendants' view, unfairly prejudice them and confuse the jury.

Plaintiff's position is that she has reduced her designations by about half, and that her total designations are now only about 10 minutes in length. She seeks to introduce statements voluntarily made by two of Philip Morris' chief executives – James Bowling and Helmut Wakeham – which statements plaintiff argues demonstrate Phillip Morris' "intention to deceive" (an essential element of the concealment claim).

The motion to exclude the "Death in the West" film clips is GRANTED. As an initial matter, the court notes that the film is irrelevant to RJR, as the executives shown being interviewed worked for Philip Morris. In addition, a comparison of the film transcript and the original interview transcript shows that the film was spliced and edited from the original transcript. For this reason, the film does not accurately portray the questions posed to the Philip Morris executives, and their corresponding responses, which are also largely taken out of context. The court finds that the prejudicial effect substantially outweighs any probative value of the film.

    b.    "Smoking and Tobacco Control Monograph 13" (RJR's Motion in Limine No. 7)

The parties engaged in meet-and-confer efforts, but were unable to come up with an agreement regarding the admissibility of the document entitled "Risks Associated with Smoking Cigarettes with Low Machine-Measured Yields of Tar and Nicotine" (referred to

8

herein as "Smoking and Tobacco Control Monograph 13" or "Monograph 13"). This document is dated November 2001, and was issued under the auspices of the National Cancer Institute, part of the U.S. Department of Health and Human Services, as part of a continuing series of Smoking and Tobacco Control Monographs. The document attached to RJR's Motion in Limine No. 7 does not appear to include the entire Monograph (more than 150 pages), but rather only the Preface, Table of Contents, one page from Chapter 4, several pages of a chart labeled "Epidemiological Studies of Low-Yield Cigarettes and Lung Cancer," and one page listing "Conclusions."

Defendants' position is that Monograph 13 is a design document which is not relevant because there are no design claims remaining in the case. They assert that plaintiff has conceded that at least portions of it are design-related, and that plaintiff has been unable to identify portions of the document that she believes are relevant to the claims remaining in the case.

Defendants also argue that Monograph 13 cannot be relevant to the failure-to-warn or concealment claims because it does not relate to defendants' knowledge or conduct during the time plaintiff was a cigarette smoker. Monograph 13 was published in 2001, and plaintiff had stopped smoking more than ten years before. Defendants contend that they will be highly prejudiced if the jury is allowed to consider defendants' conduct in 2001 in determining whether defendants are liable for failure to warn or conceal during an earlier period.

Plaintiff's position is that Monograph 13 is a "learned treatise of an unquestionably reliable origin," as it was released under the auspices of the United States Department of Health and Human Services through the National Cancer Institute. Plaintiff claims that Monograph 13 has been admitted in other tobacco cases, and that it provides information relevant to the failure-to-warn and concealment claims. As an example, plaintiff asserts, it addresses the "risks of smoking" and the "public's understanding of the health risks of smoking" at various historical points in time. Plaintiff also contends that defendants' own expert and corporate representatives have cited to it and relied on it in recent depositions.

9

Plaintiff intends to use Monograph 13 on cross-examination of defendants' witnesses, and during the direct examination of her own experts, who she claims will rely on it during their trial testimony.

The motion to exclude Monograph 13 is GRANTED. This document was issued more than 10 years after plaintiff stopped smoking. Plaintiff has not indicated which portions of the brief excerpts of Monograph 13 that are contained within the proposed exhibit she considers relevant to her claims; however, given the date the Monograph was issued, the relevance appears remote at best. In addition, the focus of the Monograph is on cigarette design (low-tar cigarettes), an issue that is no longer in the case.

      c.      Plaintiff's home videos (Plaintiff's Motion in Limine No. 2)

The parties have met and conferred with regard to the admissibility of plaintiff's home videos, and have agreed as to all but two clips. Plaintiff's position is that the videos were made at the family dinner table – not for public consumption or for use in litigation – and that any showing of the videos would be an invasion of her constitutionally protected right to privacy. She also claims the videos are irrelevant and are outside the scope of discovery and that their probative value is substantially less than the dangers of unfair prejudice if they are shown to the jury.

Plaintiff particularly objects to having the jury hear the comment she made to the effect that "cancer is embedded in our family" (while discussing a relative who had leukemia); and to having the jury hear her account of being in a restaurant when she was a teenager and asking for "red pencils" (apparently local slang for marijuana) but not being able to persuade the waitress to provide any.

Defendants' position is that these video clips contain statements from plaintiff that are party admissions, and which are relevant to the claims and defenses in the case. They argue that the first clip is relevant because it shows plaintiff's awareness of her genetic predisposition to cancer; and that the second clip is relevant because it contains plaintiff's statements about her awareness of nicotine addiction, which is relevant to defendants' defenses regarding the failure-to-warn and concealment claims. It also, according to

10

defendants, provides information about why plaintiff started smoking.

The motion to exclude the two video clips as to which the parties have been unable to agree is DENIED. The video clips are relevant to show plaintiff's motivation for smoking, and to show that she continued to smoke despite being aware of her family history of cancer.

        d.      Evidence of injuries other than cancer (RJR's Motion in Limine No. 2)

In the Preliminary Final Pretrial Order, the court declined to rule on RJR's motion to exclude evidence of injuries other than lung cancer, subject to the parties' representation that they would enter into a stipulation that COPD and periodontal disease are separate and distinct from lung cancer. Defendants are willing to stipulate that lung cancer is separate and distinct from other tobacco-related diseases, and that they will not argue that plaintiff's claim for lung cancer is in any way barred by the statute of limitations. However, defendants assert, plaintiff has refused to sign their proposed stipulation unless RJR withdraws its pending Motion in Limine to exclude evidence of plaintiff's injuries other than lung cancer.

Plaintiff has conceded that the only injury at issue in this case is lung cancer, and that she is seeking damages only for lung cancer. Thus, defendants seek an order excluding evidence of diseases other than lung cancer, arguing that evidence of other injuries would be irrelevant and would be unfairly prejudicial as it would serve no purpose other than to elicit sympathy from the jury and confuse the jury as to the proper basis of liability and damages.

Plaintiff's position is that she is not seeking damages for her tobacco-related injuries other than lung cancer. She claims, however, that "[t]he concurrent diagnosis of separate clinical disease responses, such as COPD and periodontal disease, or not, in a smoker, according to some defense experts, is pertinent to implicating smoking causally in lung cancer[;]" and that "the absence of COPD and periodontal disease could suggest the negation of smoking as a causal contributor to plaintiff's lung cancer."

She also argues that the true purpose of this motion in limine is the exclusion from

11

the case of evidence of plaintiff's addiction to cigarettes. She notes that addiction is pertinent to the question why it took her so long to quit smoking, and that it is therefore directly relevant to the question whether she might have made different decisions at different times had she been aware of certain health risks, or whether she might have smoked a "safer" cigarette had defendants made one. She asserts that she should be allowed to present evidence of her medical history to respond to defendants' "medical defense."

The court hereby amends its prior ruling on RJR's motion to exclude evidence of plaintiff's injuries other than lung cancer, and finds that the motion must be GRANTED. Plaintiff has taken the position that lung cancer is separate and distinct from COPD and periodontal disease – which she must do in order to avoid another motion for summary judgment – and the court finds, for the reasons argued by defendants, that the evidence of other diseases would be more prejudicial than probative.

## VIII. REVISED PRETRIAL STATEMENTS AND TRIAL BRIEFS

No revised pretrial statements shall be filed. The parties may – but are not required to – file revised trial briefs. Any revised trial brief shall be limited to the three remaining causes of action, including the elements, any evidentiary issues, and any potential conflicts between negligent failure to warn and strict products liability failure to warn. Any revised trial brief shall be filed no later than 90 days from the date of this order.

## IX. CLAIMS REMAINING IN THE CASE

The three causes of action remaining in the case are concealment and the two pre-1969 failure-to-warn claims. Under the Supreme Court's decision in Cippolone, plaintiff's claims regarding post-July 1, 1969 conduct are preempted by the Labeling Act to the extent they rely on a state-law "requirement or prohibition . . . with respect to . . . advertising or promotion." See Cippolone v. Liggett Group, Inc., 505 U.S. 504, 521-23 (1992).

The Federal Cigarette Labeling and Advertising Act ("Labeling Act"), which Congress enacted in 1965, prohibits manufacturing, packaging, or importing for sale or distribution any cigarettes whose package fails to bear specified warnings by the Surgeon General. 15

U.S.C. § 1333. The preemption provision of the 1965 federal act prohibited states from requiring tobacco companies to add to cigarette labels or advertising any statements relating to smoking and health that were not required by federal law. See Act of July 27, 1965, Pub.L. No. 89-92, § 5, 79 Stat. 283.

In 1969, Congress amended the Labeling Act to require stronger warnings of the dangers of smoking, to allow the Federal Trade Commission to require warnings in cigarette advertising, and to prohibit cigarette advertising in "any medium of electronic communication subject to the jurisdiction of the Federal Communications Commission." 15 U.S.C. § 1335; see Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 544 (2001). At the same time, Congress expanded the scope of federal preemption by amending the federal act to provide that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b).

The issue in Cippolone was whether the Labeling Act's ban on state regulation of advertising in 15 U.S.C. § 1334 preempted state common law actions accusing tobacco companies of failing to warn of the dangers of smoking, of fraudulent advertising, of breaching warranties that asserted that the use of cigarettes had no significant health consequences, and of conspiring to deprive the public of scientific and medical data showing the dangers of tobacco use.

The Supreme Court held in a plurality opinion that the Labeling Act preempted the plaintiff's failure-to-warn and fraudulent misrepresentation claims to the extent they sought to impose restrictions, based on concerns about smoking and health, on the content of cigarette advertising. Cippolone, 505 U.S. at 524-30; see also Altria Group, Inc. v. Good, 555 U.S. 70, 80-83 (2008). However, to the extent that the state law at issue does not impose a prohibition "based on smoking and health," it is not preempted. Cippolone, 505 U.S. at 523-24 ("we ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking or health . . .

1 imposed under State law with respect to . . . advertising or promotion,' giving that clause a
2 fair but narrow reading").

3       Here, while it appears that part of plaintiff's concealment claim is the claim that
4 defendants "concealed the health effects of smoking," the state law at issue (Civil Code
5 § 1710) does not impose a prohibition "based on smoking or health." Thus, the
6 concealment claim is not subject to preemption by the Labeling Act. Plaintiff could have
7 pursued a claim of post-1969 failure-to-warn, to the extent that it was <u>not</u> based on the
8 defendant tobacco companies' packaging, advertising, or promotional material, but as held
9 in the May 22, 2013 order, she failed to cite a source of a state-law duty to disclose facts
10 other than through advertising and promotion.

11       Thus, for the period from July 1, 1969 to January 1, 1988, the only evidence that will
12 be admissible will be evidence relevant to support the plaintiff's claim of fraudulent
13 concealment. No evidence referring to post-1988 (immunity period) conduct will be
14 admissible. In addition, however, any claim that defendants' post-1969 advertising or
15 promotions should have included additional, or more clearly stated, warnings regarding
16 safety or health is preempted. <u>Id.</u> at 524.

17 X.    SCHEDULING

18       The parties shall exchange revised proposed witness lists and deposition
19 designations no later than 45 days from the date of this order. Thirty days thereafter, the
20 parties shall exchange any objections or counter-designations. Fourteen days thereafter,
21 the parties shall submit the final versions to the court.

23 **IT IS SO ORDERED.**

24 Dated: July 19, 2013

25 _____
    PHYLLIS J. HAMILTON
    United States District Judge

14