United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKKI POOSHS,

            Plaintiff,

    v.

PHILLIP MORRIS USA, INC., et al.,

            Defendant.

_____/

No. C 04-1221 PJH

**ORDER RE PLAINTIFF'S OFFER OF
PROOF RE CONCEALMENT CLAIM**

    On May 27, 2014, pursuant to court order, plaintiff Nikki Pooshs filed an Offer of

Proof as to the evidence supporting the post-1969 concealment claim.

**PROCEDURAL BACKGROUND**

    This case has been pending for well over 10 years.  Plaintiff filed the original

complaint in the Superior Court of California, County of San Francisco, on January 13,

2004, alleging claims of negligence, fraud/misrepresentation, failure to warn, and unfair

business practices and deceptive advertising against 22 defendants, including a number of

cigarette manufacturers.

    The case was removed to this court on March 26, 2004, based on diversity

jurisdiction.  Starting on April 2, 2004, various defendants or groups of defendants filed a

total of seven motions to dismiss, some of which were later withdrawn after plaintiff

United States District Court

For the Northern District of California

stipulated to dismiss certain defendants.  On April 21, 2004, plaintiff filed a motion to remand, which the court denied in an order issued June 8, 2004.  On August 11, 2004, the court granted defendants' motion to dismiss, finding that under Soliman v. Philip Morris, Inc., 311 F.3d 966 (9th Cir. 2002), plaintiff's claims were barred by the applicable statutes of limitation.  The court entered judgment on August 20, 2004.

Plaintiff filed a notice of appeal on September 9, 2004.  While the appeal was pending in the Ninth Circuit, the parties jointly moved for an order remanding the case for further consideration in light of Grisham v. Philip Morris U.S.A., Inc., 40 Cal. 4th 623 (2007) – a decision issued by the California Supreme Court on February 15, 2007.  In accordance with the parties' request, the Ninth Circuit issued a mandate on September 27, 2007 remanding the case to this court.

On February 6, 2008, defendants moved for summary judgment, arguing that plaintiff's claims were time-barred because, while she was not diagnosed with lung cancer until January 2003, she first discovered that she suffered from physical injury caused by smoking cigarettes in 1989.  On May 27, 2008, the court issued an order granting the motion.  On May 30, 2008, plaintiff filed a notice of appeal.

On April 1, 2009, the Ninth Circuit issued an order certifying questions of state law to the California Supreme Court, regarding the running of the statute of limitations when two separate physical injuries arise out of the same wrongdoing, but at separate times.  On May 5, 2011, the California Supreme Court issued its opinion in Pooshs v. Philip Morris USA., Inc., 51 Cal. 4th 788 (2011), holding that an earlier-discovered disease does not trigger the statute of limitations for a lawsuit based on a later-discovered separate latent disease caused by the same tobacco use.  The Ninth Circuit requested that the parties submit supplemental briefs, and on August 5, 2011, issued a mandate remanding the case to this court.

The court held a case management conference on September 1, 2011, setting a November 29, 2012 pretrial conference date and a January 7, 2013 trial date.  On June 18, 2012, the defendants remaining in the case – Philip Morris USA, Inc. ("Philip Morris"), R.J.

**United States District Court**
For the Northern District of California

1   Reynolds Tobacco Company ("RJR"), and Hill and Knowlton Strategies, LLC ("H&K") – filed

2   a motion for summary judgment on the design-defect claims, the failure to warn claims, the

3   claim for "concert of action," and the fraud and concealment claims.  Among other things,

4   defendants argued that to the extent plaintiff was claiming that additional or different

5   information about health risks should have been disclosed after July 1, 1969, such claims

6   were subject to express preemption under the Federal Cigarette Labeling and Advertising

7   Act of 1965, as amended by the 1969 Public Health Cigarette Smoking Act of 1969

8   ("Labeling Act").  Following completion of the briefing, the court heard the motions on

9   August 8, 2012, and issued an order on October 22, 2012.

10   A.       The Order re Defendants' Motion for Summary Judgment (Doc. 229)

11              In their summary judgment motion, defendants argued that the failure-to-warn and

12   concealment claims were preempted by the Labeling Act to the extent such claims were

13   based on the assertion that new or different information about health risks should have

14   been disclosed after July 1, 1969.  Defendants also asserted that to the extent the first

15   cause of action could be construed as alleging a claim of negligent failure to warn, it was

16   preempted insofar as it was based on any events after 1969, and that the fifth cause of

17   action for fraudulent concealment and the tenth cause of action for "off-label failure to warn"

18   were also preempted to the extent that they related to events after 1969.

19              The Labeling Act has required the placement of warning labels on cigarette

20   advertising and packaging since 1966.  As amended, the Labeling Act contains two

21   express preemption provisions.  Section 5(a) protects cigarette manufacturers from

22   inconsistent state labeling laws by prohibiting any requirement that additional statements

23   relating to smoking and health be placed on cigarette packages.  15 U.S.C. § 1334(a).

24   Section 5(b) provides that "[n]o requirement or prohibition based on smoking and health

25   shall be imposed under State law with respect to the advertising or promotion of any

26   cigarettes the packages of which are labeled in conformity with the provisions of this

27   chapter."  15 U.S.C. § 1334(b).

28              In Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992), the plurality held that § 5(b)

3

United States District Court
For the Northern District of California

preempts both positive enactments and certain state common-law actions that would impose such "requirements or prohibitions" after that date.[1]  See id. at 521-23.  Under the preemption framework set forth by the plurality, determining which state claims are preempted requires a court to consider the "legal duty that is the predicate" of a particular claim, and determine whether it falls within the scope of the preemption provision.  Id. at 523.  Failure-to-warn claims are preempted, "to the extent that they rely on a state-law requirement or prohibition . . . with respect to . . . advertising and promotion."  Id. at 524.

The plurality found that a post-1969 fraud claim that the cigarette manufacturers, through their advertising, intentionally attempted to minimize or "neutralize" the effect of federally mandated warning labels[2] was preempted by § 5(b) because it was based on a "state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking," which was "merely the converse of a state law requirement that warnings be included in advertising and promotional materials."  Id. at 527.  Similarly, the plurality found, a claim alleging that post-1965 advertising was fraudulent because it included imagery associated with "such positive attributes as contentment, glamor, romance, youth, happiness," and suggested that claims based on such allegedly misleading advertising was also preempted.  Id. at 527-28.

However, with regard to claims of fraudulent misrepresentation – "most notably claims based on allegedly false statements of material fact made in advertisements" – the plurality found such claims not preempted because they were predicated "not on a duty 'based on smoking and health' but rather on a more general obligation[,] the duty not to

---

[1]  The plurality – Justice Stevens, joined by Justices Rehnquist, White, and O'Connor – concluded that the Labeling Act preempts some but not all common law claims.  Id. at 505. Justices Thomas and Scalia took the position that the Labeling Act preempts all state common-law claims, id. at 506-07; while it was the view of Justices Blackmun, Kennedy, and Souter that the Labeling Act does not preempt any state common-law claims, id. at 506.

[2]  The term "warning neutralization" refers to the concept of a "relationship between required warnings and advertising that 'negates or disclaims' those warnings."  Cipollone, 505 U.S. at 527-28 (citing 21 C.F.R. § 191.102 (1965)).  The Cipollone plurality found such a theory of fraudulent misrepresentation to be inextricably related to one of the failure-to-warn claims which the Court had already found to be largely preempted by § 5(b).  Id. at 528.

United States District Court

For the Northern District of California

1   deceive.'" Id. at 528-29.  With regard to claims that defendants had concealed material

2   facts, the plurality found the claims not preempted "insofar as those claims rely on a state-

3   law duty to disclose such facts through channels of communication other than advertising

4   and promotion."  Id. at 528.

5       The plaintiffs also alleged that the defendants engaged in a conspiracy to

6   misrepresent or conceal information coming from the scientific and medical community

7   concerning the health hazards of smoking.  Id. at 530 & n.28.  The plurality described the

8   predicate duty underlying this claim as "a duty not to commit fraud," and concluded that it

9   was not preempted for the reasons stated in the analysis of the intentional fraud claim.

10  Id. at 530.

11      In Altria Group, Inc. v. Good, 555 U.S. 70 (2008), the plaintiffs asserted a claim of

12  fraudulent marketing under the Maine Unfair Trade Practices Act ("MUTPA"), which

13  prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

14  See Me. Rev. Stat. Ann. tit. 5, § 207.  This prohibition encompasses various kinds of

15  behavior, including "a material representation, omission, act or practice that is likely to

16  mislead consumers acting reasonably under the circumstances."  Maine v. Weinschenk,

17  868 A.2d 200, 206 (Me. 2005).

18      The plaintiffs alleged that while it was true, as the manufacturers claimed, that the

19  tar and nicotine levels of the "light" cigarettes at issue were lower than those of regular

20  cigarettes, the manufacturers knew that smokers engaged in "compensatory" smoking

21  "behaviors" that negated the beneficial effects of the lower tar and nicotine, and also knew

22  that the increased ventilation that resulted from the cigarettes' unique design features

23  produced smoke that was actually more mutagenic per milligram of tar than that of regular

24  cigarettes.  The plaintiffs alleged that the manufacturers had violated the MUTPA by

25  fraudulently concealing that information and by affirmatively representing through the use of

26  "light" and "lowered tar and nicotine" descriptors that their cigarettes posed fewer health

27  risks.  See Altria, 555 U.S. at 74.

28      The cigarette manufacturers argued that the Labeling Act preempted the plaintiffs'

state-law causes of action.  The Supreme Court concluded, as the plurality had in

Cipollone, that the Labeling Act does not preempt state-law claims that are predicated on

the duty not to deceive – a duty that is not "based on smoking and health" – and that "the

phrase 'based on smoking and health,' fairly but narrowly construed, does not encompass

the more general duty not to make fraudulent statements.'"  Altria, 555 U.S. at 81 (quoting

Cipollone, 505 U.S. at 528-29).

In the present case, plaintiff argued in her opposition to defendants' 2012 motion for

summary judgment that the negligent failure to warn and the off-label failure-to-warn claims

were not preempted by the Labeling Act, to the extent they were based on statements or

actions that were unrelated to advertising and promotion, or on warnings that could have

been given outside of advertising and promotion.

With regard to post-1969 fraud and concealment claims, plaintiff argued that under

Cipollone, fraudulent misrepresentation claims that arise with respect to advertising and

promotions (most notably claims based on allegedly false statements of material fact made

in advertisements) are not preempted by § 5(b) because such claims are not predicated on

a duty "'based on smoking and health,' but rather on a more general obligation the duty not

to deceive."  Similarly, she asserted, the concealment claim was based on defendants'

alleged scheme to conceal their knowledge concerning the health hazards of smoking and

the addictive nature of smoking, and was not preempted because it alleged a violation of

the manufacturers' duty not to deceive – a duty not based on "smoking and health."

In the October 22, 2012, order, the court granted defendants' motion as to second

cause of action for defective design (and to the first cause of action for negligence to the

extent it alleged defective design); as to the third, fourth, sixth, and seventh causes of

action for affirmative misrepresentation (fraud and deceit, including negligent

misrepresentation); and as to the eighth cause of action for concert of action.

The court denied summary judgment as to the fifth cause of action for concealment;

as to the first cause of action to the extent it alleged negligent failure to warn; and as to the

ninth and tenth causes of action for off-label failure to warn and pre-1969 failure to warn.

United States District Court
For the Northern District of California

The court found that triable issues precluded summary judgment as to the concealment and failure-to-warn claims. The court also ruled that the failure-to-warn and concealment claims that were based on events after July 1, 1969, were not preempted by the Labeling Act, to the extent they were not claims of failure to warn or disclose through advertising and promotion. See Oct. 22, 2012 Order, at 22 (citing Cipollone, 505 U.S. at 528).

The court noted further that plaintiff had conceded that claims of post-1969 failure-to-warn through advertising and promotion were preempted, but had asserted that neither the ninth cause of action for pre-1969 failure-to-warn, nor any other cause of action based on facts prior to July 1, 1969, was preempted because the Labeling Act does not preempt pre-1969 claims. The court concluded that "to the extent that plaintiff is asserting pre-1969 failure to warn, or post-1969 failure to warn that is based on a duty to disclose facts other than through advertising and promotion, such claims are not preempted and may proceed." Id. at 22-23. Plaintiff did not seek reconsideration of any part of the order.

B.    Plaintiff's Trial Brief (Doc. 261)

In accordance with the September 6, 2011 Revised Case Management and Pretrial Order (Doc. 157), plaintiff filed pretrial papers, including a trial brief, on November 1, 2012. In the trial brief, plaintiff argued, with regard to the post-1969 off-label failure-to-warn claim, that for the reasons set forth in Cipollone and Altria, her claims were not preempted by the Labeling Act because they were based on "defendants' duty not to deceive and to warn customers, including the [p]laintiff, of the harm that might occur if defendants' products were used as intended, particularly where, as here, defendants breached an owed duty to [plaintiff] through intentional acts of deception, concealment, suppression of facts, and failure to warn." Pltf's Trial Brief at 22-23.

Plaintiff asserted that defendants' "bad acts" imposed legal "duties" on them to warn cigarette users (outside and off the cigarette label) of the health risks of smoking; to disclose to consumers the results of "scientific research known to them" indicating that the use of cigarettes was harmful; and to disclose the ingredients of cigarettes and the presence of additives and alterations to the nicotine levels in cigarette tobacco. Plaintiff

United States District Court

For the Northern District of California

1  contended that defendants had breached each of these duties, none of which was

2  preempted by the Labeling Act.  Id. at 23.

3      Plaintiff argued further that the only claims to which Labeling Act preemption applies

4  are post-1969 failure-to-warn through advertising and promotional activities, and that

5  because she had not alleged any cause of action based on defendants' post-1969 failure to

6  warn through advertising and promotional activities, preemption provided no basis for

7  excluding any evidence at trial.  She reiterated that "Cipollone is the law on preemption in

8  cigarette cases."  Id. at 23-24.

9  C.    Initial Final Pretrial Conference

10     On November 29, 2012, the court presided over what was supposed to be the final

11 pretrial conference.  During this session, which lasted almost three hours, the court ruled

12 on certain of the parties' motions in limine, and deferred ruling on others to allow further

13 briefing and/or additional efforts by the parties to resolve their differences.  The court also

14 issued directives with regard to the trial schedule, and discussed the jury instructions and

15 verdict forms, voir dire and jury questionnaire, and jury selection (including peremptory

16 challenges), as well as plaintiff's exhibit lists, witness lists, deposition designations, written

17 discovery designations, and presentation of evidence regarding damages.  The court

18 ordered the parties to meet and confer regarding the jury questionnaire, jury instructions

19 and verdict form, and objections to evidence, and ordered plaintiff's counsel to revise and

20 resubmit plaintiff's designations of witnesses and evidence.

21     Following this, the court raised the issue of Labeling Act preemption, and the duty to

22 disclose facts other than through promotion and advertising, as set forth in Cipollone, 505

23 U.S. at 521-28.  The court requested that plaintiff's counsel identify the source of the

24 state-law duty to disclose through channels of communication other than advertising and

25 promotions, which plaintiff had asserted applied in this case.  Counsel's response was that

26 the duty was found in California Civil Code § 1714[3] "for starters[,]" adding that

27

28     [3] Civil Code § 1714 is California's general negligence statute.

8

United States District Court
For the Northern District of California

> [t]he duty is to conduct your affairs so as not to conceal and cause injury to others codified in California Civil Code 1714. But that's usually not what the inquiry is all about on this question. It's usually more of a distinction between what is on-label and off-label promotion of the product. So I'm not sure what you're referring to as the pleading that's causing you to have this question.

Nov. 29, 2012 Hearing Tr. (Doc. 287), at 90-92.

Plaintiff's counsel then explained that "if a tobacco executive is on television and says, 'We've conducted research and the conclusion of the research shows that cigarettes do not cause disease, cigarettes do not cause cancer, when they are concealing the same results they are engaging . . . and referencing . . . " Id. at 93. The court interjected, "[A]ll . . . I needed to hear was whether or not you were asserting that there was some duty other than that that arises from the common law which precludes concealment. . . . Is there some duty owed that is . . . based on a failure to disclose through channels of communication other than promotion and advertisement . . ." as in Cipollone, where the Court "found that the state law claims for fraudulent misrepresentation . . . gave rise to that duty." Id.

Counsel could not confirm that the claims of failure to warn and concealment gave rise to such a duty, stating that "this is a murky area in some respects," but adding that "we have – for example, on negligence, the duty of ordinary care to conduct yourself so as to avoid injury to others, a more common, broad-based common law duty of ordinary care." Id. at 94. The court responded, "I'm unaware of any negligence cause of action that's remaining in the case other than with regard to the failure to warn. That's all I found in the summary judgment ruling that was left." The court asked counsel to explain what he meant by "common-law negligence duty." Id.

Counsel responded that the court had not dismissed the first cause of action for "general negligence," other than to the extent that it "was based upon the design, the design issue," and asserted that "it's a general garden-variety 1714 negligence claim." Id. at 95. When asked to define the duty that this "garden-variety" claim entailed, counsel referred only to the "duty of ordinary care." Id. at 96-98. The court asked what defendants had done to breach that duty. Plaintiff's counsel responded,

United States District Court

For the Northern District of California

1    They didn't do anything to – but breach that duty.  They marketed the – the
2    product. They didn't instruct people on how to use the product. They didn't
     educate them about the consequences of using the product. They didn't
3    communicate anything about addiction, nicotine, detrimental health effects
     from the normal intended use of the product. There's a whole panoply of
4    things that a product manufacturer should do given the circumstances of their
     product to discharge a duty of ordinary care.

5    Id. at 98.

6         Plaintiff's counsel did not claim that the first cause of action actually referenced

7    § 1714, but instead argued that, for example, the assertion that the defendants negligently

8    manipulated, manufactured, and marketed cigarettes – thereby breaching the ordinary duty

9    of care – which was a substantial contributing factor to causing injury to the plaintiff,

10   adequately alleged negligence under § 1714.  Id. at 96-100, 103-105.

11        Plaintiff's counsel indicated that "[w]e understood" the October 22, 2012 order to

12   "leave in negligence except to the extent it involved a negligent design claim."  Id. at 104.

13   Nevertheless, it seemed clear that defendants as well as the court had interpreted the first

14   cause of action as largely duplicative of other causes of action asserted in the complaint –

15   in particular the claims of affirmative misrepresentation and defective design – and had

16   concluded that all that remained of the first cause of action after the October 22, 2012 order

17   was a claim of negligent failure to warn of the health risks of smoking.

18        On December 5, 2012, the court issued a Preliminary Final Pretrial Order (Doc. 289)

19   relating to the rulings on the motions in limine and other rulings issued at the November 29,

20   2012 pretrial conference.  Because the entirety of the negligence claim that plaintiff

21   appeared to be asserting had not been tested on summary judgment, the court also

22   directed plaintiff to file a statement clarifying the exact nature of the claim she believed

23   remained in the case, setting forth the legal basis for the duty allegedly owed by the

24   defendants, plus the facts supporting the alleged breach of that duty.  The court added that

25   before allowing the claim to be tried to a jury, the court would require defendants to either

26   move for summary judgment, or state in writing that in their view, moving for summary

27   judgment would be futile because of the existence of disputed material facts.  Dec. 5, 2013

28   Order at 10-13.

United States District Court

For the Northern District of California

With the emphasis on the question of what if anything remained of the negligence cause of action, the questions posed by the court regarding the issue of Labeling Act preemption of plaintiff's failure to warn and concealment claims and the source of the state-law duty to disclose facts other than in advertising and promotions remained unclarified, and the focus temporarily turned to the negligence claim and the allegations of duty to support that claim.

Plaintiff filed the statement regarding the first cause of action for negligence on December 12, 2012 (Doc. 293), arguing that from 1954, when defendants published the document entitled "A Frank Statement to Cigarette Smokers," they knew that use of their products presented serious health problems, and that they nonetheless failed to exercise the prudence and care an ordinary person would have exercised in the same circumstances to avoid harm to their consumers, and in so doing, breached their duty of reasonable care to the plaintiff.

On January 9, 2013, defendants filed a motion for partial summary judgment (Doc. 300), seeking a ruling confirming that plaintiff had no remaining viable negligence claims apart from negligent failure to warn, or, in the alternative, an order granting partial summary judgment as to any remaining negligence claim apart from negligent failure to warn.  In addition, proceeding outside the scope of the court's prior order, defendants sought an order limiting plaintiff's remaining claims to the period prior to July 1, 1969, and dismissing all remaining claims against H&K.

Plaintiff filed an opposition to defendants' motion on January 23, 2013, arguing the complaint adequately stated a claim for negligence, and that her negligence claim was supported by law.  In addition, she asserted that defendants were improperly seeking reconsideration of the court's prior rulings, and that Labeling Act preemption does not apply to concealment claims because concealment claims are based on a duty not to deceive (citing Cipollone, 505 U.S. at 528-29).  She also reiterated that she was not asserting a claim for post-1969 failure-to-warn, but also that Labeling Act preemption does not apply to her claim of off-label failure-to-warn, including post-1969 off-label failure to warn.

United States District Court

For the Northern District of California

1    Following a hearing on February 13, 2013, lasting an hour and forty-five minutes, at

2   which time the court addressed (among other things) the ongoing issues with regard to

3   damages discovery, and with regard to plaintiff's proposed witness list, proposed deposition

4   designations, and proposed exhibit list, and defendants' objections thereto, see Feb. 13,

5   2013 Hearing Tr. (Doc. 311), the court on February 15, 2013, issued a Second Final

6   Pretrial Order (Doc. 310) in which it directed further briefing.  On May 22, 2013, the court

7   issued an order on defendants' motion for partial summary judgment.

8   D.    The May 22, 2013 Order re Defendants' Motion for Partial Summary Judgment

9         (Doc. 319)

10    The court first addressed the first cause of action for negligence, finding that plaintiff

11   had alleged negligent manipulation (design), manufacture, and various other actions

12   (marketing, advertising, distribution, and selling) in the first cause of action for negligence,

13   all of which were subsumed by causes of action that had previously been dismissed, with

14   the exception of one claim.  That finding clarified that the only negligence claim remaining

15   against the manufacturer defendants was the claim of negligent failure to warn.

16    Second, the court addressed the negligence and fraud/deceit claims asserted

17   against H&K, finding that plaintiff had conceded she had no failure-to-warn claim against

18   H&K, and no other negligence claim remained in the case; that to the extent that plaintiff

19   was attempting to allege misrepresentation, all such claims had been dismissed from the

20   case; and that plaintiff could not establish a concealment claim because she had not

21   identified a relationship between herself and H&K in which a duty to disclose could arise.

22    Third, the court addressed the post-1969 claims.  The court noted that the October

23   22, 2012 order re defendants' motion for summary judgment had held that under Cipollone,

24   claims for fraudulent concealment or failure to warn in advertising and promotions after July

25   1969 are preempted unless they rely on a state-law duty to disclose facts through channels

26   of communication other than advertisement or promotion; and that to the extent these

27   claims pre-date 1969, or (if post-1969) are based on a duty to disclose facts other than

28   through advertising and promotion, then such claims are not preempted and may proceed.

1    May 22, 2013 Order, at 15 (citing Oct. 22, 2012, Order at 23)).

2        In their motion, defendants argued that plaintiff could not establish a duty to warn or

3    to disclose facts outside advertising and promotion after July 1, 1969, as she had identified

4    no source for any such duty to warn or disclose.  In the order, the court noted that it had

5    asked plaintiff's counsel at the November 29, 2012 hearing to identify the source of the

6    state-law duty to disclose through channels of communication other than advertising and

7    promotion, and that the only specific source plaintiff's counsel mentioned was Civil Code

8    § 1714 (the general negligence statute), although counsel also made reference to the

9    common law precluding fraudulent concealment.  Id. (citing Nov. 29, 2012 Tr. at 90-94).

10       The court further noted that in her July 9, 2012 opposition to defendants' original

11   motion for summary judgment, plaintiff had agreed that the failure-to-warn claims are

12   limited to the pre-1969 period, but that she also asserted that the Labeling Act preemption

13   does not apply to the off-label failure to warn claims (claims not based on advertising and

14   promotion), which she argued include the failure to warn of the negative health effects of

15   smoking.  The court found, however, that plaintiff had failed to provide the source of any

16   state-law duty to disclose facts other than through advertising and promotion, which would

17   suffice to remove the off-label failure-to-warn claims from the preemptive effect of the

18   Labeling Act. Id. at 15.  For this reason, the court concluded that Labeling Act preemption

19   applied to any portion of the claim of negligent failure-to-warn based on post-1969 actions

20   (as to any other failure-to-warn claim). Id. at 16.

21   E.    The July 19, 2013 Third Final Pretrial Order (Doc. 337)

22       On July 12, 2013, the court conducted a further pretrial conference, lasting almost

23   four hours.  See July 12, 2013 Hearing Tr. (Doc. 341).  On July 19, 2013, the court issued

24   the Third Final Pretrial Order (Doc. 337).  In that order, the court addressed the on-going

25   problems with the plaintiff's deposition designations, and ruled on defendants' categorical

26   objections to the designations; issued rulings with regard to a number of the disputed jury

27   instructions, and ordered the parties to meet and confer regarding others; again ordered

28   the parties to meet and confer regarding the joint verdict form; attempted to impose a

**United States District Court**
For the Northern District of California

1   workable method for reducing the number of exhibits on plaintiff's exhibit list; and issued

2   rulings on remaining deferred motions in limine.

3        In addition, the court summarized the claims remaining in the case – concealment

4   and the two pre-1969 failure-to-warn claims.  The court ruled that under Cipollone, the

5   concealment claim is not subject to wholesale preemption by the Labeling Act because Civil

6   Code § 1710, the state law identified by plaintiffs, does not impose a prohibition "based on

7   smoking and health."  July 19, 2013 Order at 14.

8        The court noted that plaintiff could have pursued a claim of post-1969 failure to

9   warn, to the extent it was not based on the defendant tobacco companies' packaging,

10  advertising, or promotional material, but that plaintiff had failed to cite a source of a state-

11  law duty to disclose facts other than through advertising and promotion.  Id.  Thus, the court

12  concluded, for the period July 1, 1969 to January 1, 1988, the only evidence that will be

13  admissible is evidence to support plaintiff's claim of fraudulent concealment; that no

14  evidence relating to post-1988 (immunity period) conduct will be admissible; and any claim

15  that defendants' post-1969 advertising or promotions should have included additional, or

16  more clearly stated, warnings regarding safety or health is preempted.  Id.

17  F.   March 27, 2014 Further Final Pretrial Conference

18       On March 27, 2014, the court conducted a further final pretrial conference, lasting

19  an hour and a half.  See March 27, 2014 Hearing Tr. (Doc. 378).  At the hearing, the court

20  addressed the ongoing issues with exhibit lists, witness lists, and deposition designations

21  and counter-designations.  See id.  The court also reviewed and ruled on the remaining

22  disputed jury instructions.  The final instruction that was discussed was the concealment

23  instruction.  In that regard, the court stated that "[o]ne of the issue we're going to have to

24  discuss today is the post-1969 evidence that does not relate to advertising or promotion[,]"

25  and asked plaintiff's counsel to identify it.  Id. at 19-20.

26       Plaintiff's counsel responded, "We don't believe the Frank Statement fits into that

27  category.  The court asked, "Was it made after 1969?"  Counsel responded, "No.  But

28  that's the substance.  It's the root source of the concepts where corruption of understanding

14

of cancer, cancer causation, is not product promotion or advertising.  It's a different thing

rooted in the 1954 Frank Statement and the course thereafter that the evidence will

demonstrate." Id. at 20.  The court again asked, "[W]hat is the post-1969 evidence that

does not relate to advertising and promotion?"  Plaintiff's counsel repeated that the Frank

Statement "sets the pattern and practice that transcends '69 where the defendants are

continuing that practice to corrupt understanding about what they knew about the dangers

of smoking." Id.

Again the court asked, "[W]hat's the specific evidence that you're seeking to admit

that's post-1969 that has nothing to do with advertising and promotion?"  Counsel

responded that it "comes in the form of the defendants' representative speaking to the topic

of dangers associated with use of their product, risks of cancer, talking about science,

concepts independent of product promotion or advertising more – more rooted in science."

Id. at 20-21.  The court asked whether counsel could identify the specific items of evidence,

and counsel responded. "It's in the deposition excerpts that have been page lined through

various former executives, Mr. Bible, Dr. Cook, others that we have page lined who speak

to the notion that it is not demonstrated that their products cause injury . . . It has nothing to

do with them endeavoring to promote their product, try and sell more of it." Id. at 21.  He

added, "They're trying to communicate what they believe to be the medicine and the

science, denying that their products create any danger associated with cancer, that it has

not been proven." Id.

Following this exchange, the court directed plaintiff to file an offer of proof with an

identification of the evidence. Id. at 22-23.  The court also issued a Fifth Final Pretrial

Order (Doc. 376) on April 2, 2014, summarizing the rulings at the pretrial conference.

## PLAINTIFF'S OFFER OF PROOF

A.    Offer of Proof

Plaintiff begins by arguing that under Altria, Labeling Act preemption does not apply

to state-law based concealment claims that are predicated on a duty not to deceive, and it

does not "limit or modify the evidentiary basis of such concealment claims," and that

United States District Court

For the Northern District of California

1   preemption is limited to "certain types of failure to warn/neutralization claims."  She

2   contends that because Civil Code §§ 1709 and 1710 are not state law requirements based

3   on "smoking and health," but rather are state laws establishing a duty not to deceive,

4   Labeling Act preemption is not applicable to her post-1969 concealment claim.

5          Plaintiff also asserts that concealment claims can be based on affirmative

6   statements.  She cites § 1710, which provides that concealment occurs when a defendant

7   gives "information of other facts" that are "likely to mislead" and CACI 1901 ("Defendant

8   disclosed some facts to [p]laintiff but intentionally failed to disclose other important facts.")

9   She contends that one cannot give "information of other facts" or "disclose some facts"

10  without making affirmative statements.  She asserts that the difference between an

11  intentional misrepresentation claim and a concealment claim is that misrepresentation

12  involves making affirmative statements knowing them to be false, while concealment

13  involves making affirmative statements that are true but also concealing or intentionally

14  failing to disclose facts that materially qualify those stated.

15         Plaintiff argues that defendants breached their duty not to deceive under California

16  law when they elected to speak to the public, including plaintiff, regarding health claims

17  associated with the use of their products.  She asserts that because defendants made

18  public statements, they were obligated to provide the entire truth, but that they instead

19  disclosed only some selected facts and half-truths, while concealing other facts, thereby

20  creating a "false controversy concerning the adverse health effects of smoking."

21         Plaintiff also contends that defendants had the intention of causing smokers,

22  including herself, to rely on the substance of that misinformation, and that she did

23  reasonably rely on defendants' deception.  She notes that in ruling on defendants' motion

24  for summary judgment, the court found that disputed issues of fact remained "as to

25  whether plaintiff might have made different decisions at various times had she been aware

26  of certain health risks or whether she would have smoked a 'safer' cigarette had

27  [d]efendants manufactured one" (quoting Oct. 22, 2012 Order at 20).  Plaintiff also claims

28  proving a concealment claim in a smoking case under California law does not require

United States District Court

For the Northern District of California

1    establishing that the plaintiff relied on specific individual false statements, where the

2    misrepresentations and false statements are part of an extensive and long-term advertising

3    campaign.

4         Following these arguments, plaintiff discusses the evidence – consisting of 101

5    exhibits – which she cites in support of the concealment claim.  Some of this evidence

6    predates the effective date of the Labeling Act (particularly some of the evidence discussed

7    in the first subsection), but most of it is post-1969 (though some of the deposition or trial

8    testimony relates to events pre-1969).

9              a.     Evidence of defendants' concealment

10        Plaintiff first discusses the history of smoking-related lung cancer, primarily in the

11   U.S. but also in England, beginning with a sharp rise in the number of cases of cancer in

12   the 1930s and 1940s, and a growing recognition among medical doctors in the 1950s and

13   early 1960s of the connection between smoking and lung cancer, followed by the public

14   response of the cigarette manufacturers during the period from the late 1950s through the

15   mid-1980s.

16        The attached evidence includes excerpts of deposition transcripts and transcripts of

17   trial testimony from other cases (primarily in the State of Florida); opinions in expert reports;

18   reports in American and British scientific publications in the 1950s of studies regarding the

19   relationship between smoking and cancer; documents (including excerpts of deposition

20   testimony) relating to the manufacturers' hiring of H&K in 1953, and H&K's subsequent

21   public relations work, including preparation and publication of the "Frank Statement" in

22   January 1954; documents (including deposition excerpts) relating to the formation of

23   industry groups the Tobacco Industry Research Committee (which later became the

24   Council for Tobacco Research) and the Tobacco Institute – and publications issued by both

25   from the mid-1950s to the early 1960s; and U.S. Government reports on smoking and

26   health in the early to mid-1960s.

27        Second, plaintiff discusses the public response of the Tobacco Institute, the

28   American Tobacco Company (now RJR), and Philip Morris in the late 1950s and through

17

United States District Court

For the Northern District of California

1    the 1960s and into the 1970s with regard to the issue of the relationship between smoking

2    and lung cancer; and the efforts made by Philip Morris and the American Tobacco

3    Company (RJR) to increase sales, including use of advertising and efforts to study smoking

4    behavior with a view to getting more people (including youth smokers) to smoke more

5    cigarettes.  The attached evidence regarding the public response of RJR and Philip Morris,

6    and the Tobacco Institute includes deposition testimony, company documents (including

7    press releases), and Federal Trade Commission reports.

8          Third, plaintiff discusses the theory that because of defendants' "open question"

9    approach to the smoking/cancer issue, many smokers in the mid-1970s did not accept that

10   smoking causes cancer.  She also discusses research on smoking and cancer performed

11   by defendants and the Council for Tobacco Research from the late 1960s and through the

12   1970s, which they allegedly "concealed" from consumers.  The attached evidence includes

13   deposition excerpts and company documents.

14         Fourth, plaintiff discusses defendants' public responses (and the responses of the

15   Tobacco Institute) in the 1980s to the question of the connection between smoking and

16   lung cancer – generally that there is no proven causal link between the two.  The attached

17   evidence includes deposition testimony, Congressional hearing testimony, FTC reports,

18   company documents, and Tobacco Institute reports and public releases.

19         Fifth, plaintiff discusses the anticipated proposed testimony of her expert Dr. William

20   Farone (who was employed at Philip Morris from 1976-1984), to the effect that his

21   supervisors at Philip Morris told him smoking was addictive and caused cancer, and that

22   those facts were generally understood at Philip Morris as early as the mid-1970s; and to

23   the effect that Philip Morris intentionally attempted to create doubt in the minds of the public

24   as to whether smoking was addictive and/or caused cancer.  The attached evidence

25   includes excerpts from judicial opinions in other cases describing Dr. Farone's trial

26   testimony in those cases.  It also includes Dr. Farone's November 2011 expert report.

27              b.    Specific evidence relating to Philip Morris

28         This section consists of references to "admissions" by Philip Morris at various times

United States District Court

For the Northern District of California

1  regarding health/cancer/smoking and the addictive effects of nicotine.  The attached

2  evidence consists of excerpts from 2011-2012 deposition testimony by Philip Morris

3  representatives Richard Jupe and Peter J. Lipowicz, and excerpts of March 1998 trial

4  testimony by former Philip Morris CEO Geoffrey Bible (now deceased).

5                    c.    Specific evidence relating to RJR

6        This section consists of references to "admissions" by RJR at various times

7  regarding health/cancer/smoking and the addictive effects of nicotine, as well as

8  "admissions" regarding what it did or did not tell the public about these facts.  The attached

9  evidence consists of excerpts from 2011 deposition testimony by RJR representatives Jeff

10  Gentry, Christopher Cook, and Dr. James Figlar.

11                    d.    Evidence in the form of planned trial testimony

12        In this section, plaintiff discusses her anticipated trial testimony regarding how she

13  came to start smoking; why she couldn't quit smoking and what efforts she made to quit;

14  what she knew or did not know at various times about the relationship between smoking

15  and health; whether and to what extent she relied on defendants' public statements

16  regarding the risks of smoking; and what she believed about low-tar/low-nicotine cigarettes

17  or "light" cigarettes, and whether they were healthier than regular cigarettes.  In support,

18  plaintiff cites to her declaration filed on July 9, 2012 in opposition to defendants' motion for

19  summary judgment, and to excerpts from her deposition testimony from November and

20  December 2006.

21        This section also describes proposed trial testimony of plaintiff's pulmonologist,

22  Barry Horn, M.D., whom plaintiff anticipates will testify that plaintiff's smoking cigarettes

23  was the cause of her lung cancer.  In this section, plaintiff cites to Dr. Horn's declaration

24  filed July 9, 2012, in opposition to defendants' motion for summary judgment.

25  B.    Defendants' Response

26        Defendants argue that plaintiff is improperly seeking reconsideration of the court's

27  prior rulings on preemption by arguing that there is "no legal basis" for those rulings and

28  that "Labeling Act preemption . . . is not applicable at all to state-law-based fraud claims"

United States District Court

For the Northern District of California

1  (quoting Offer of Proof at 1-2).

2       Defendants assert that under the standard articulated in Cipollone, post-1969 fraud

3  claims predicated on a state-law prohibition against statements in advertising and

4  promotional materials that tend to minimize the health hazards associated with smoking are

5  preempted, as are fraud claims based on allegedly "misleading" post-1969 advertising

6  imagery associating smoking with "glamor" or "happiness" or other "positive attributes."  By

7  contrast, they assert, fraud claims premised on allegedly false statements made in

8  advertisements are not preempted, because while they involve advertising or promotion,

9  they are not also predicated on smoking and health, but rather are based on the "duty not

10  to deceive."

11       As for the concealment claim, defendants reiterate that such claims are not

12  preempted insofar as they rely on a state law duty to disclose such facts through channels

13  of communication other than advertising and promotion.  Defendants note that in this case,

14  the court has already ruled that plaintiff's claims regarding post-1969 conduct are

15  preempted by the Labeling Act to the extent they rely on a state-law requirement or

16  prohibition with respect to smoking or health in connection with advertising or promotion of

17  cigarettes.  They assert that to the extent that plaintiff is asserting that defendants

18  concealed material facts about safety and health effects of smoking in the post-1969

19  period, she must provide evidence of such concealment apart from advertising and

20  promotion.

21       Defendants argue, however, that the evidence presented does not establish a post-

22  1969 concealment claim based on a duty to disclose facts through channels of

23  communication other than advertising and promotion.  Defendants contend that plaintiff

24  appears to be asserting that this court should ignore Cipollone as having been superceded

25  by Altria.  Defendants assert, however, that the Court in Altria expressly rejected the

26  contention that the Cipollone  framework should be discarded, and that the Court's opinion

27  shows that it understood the plaintiffs' claims to be based on false statements of fact, not

28  mere concealment.  They note that the Court specifically stated, "As was true of the claim

1  in Cipollone, respondents' claim that the deceptive statements 'light' and 'lowered tar and

2  nicotine' induced them to purchase petitioners' product alleges a breach of the duty not to

3  deceive."  See 555 U.S. at 82-87.

4      Defendants argue that plaintiff has not attempted to explain how she would comply

5  with the limitations this court has placed on her concealment claims post-1969, and argue

6  that the Offer of Proof shows that she cannot.  Defendants note that plaintiff sets forth in

7  her brief the elements of the concealment claim she says she intends to prove, but omits

8  any reference to pre- or post-1969 (citing Offer of Proof at 3 (listing elements of CACI

9  1901)).  They also note that she now appears to be asserting only one of the four

10  alternatives in the first element of CACI 1901, which requires the plaintiff to prove that

11  defendants "disclosed some facts to [p]laintiff but intentionally failed to disclose other

12  important facts, making the disclosure deceptive."

13      Defendants speculate that this might be why plaintiff now is arguing that

14  "concealment claims can be based on affirmative statements."  While defendants agree

15  with this basic premise, they argue that it is true only in the sense that a duty to disclose

16  may arise from a partial disclosure made "to the plaintiff," which deceived the plaintiff into

17  acting in a way she would not have acted if the disclosure had been complete.

18      However, defendants contend, the court has already found that plaintiff has no

19  evidence that she was influenced by any disclosure by either defendant.  In support,

20  defendants cite the ruling in the October 22, 2012 order re defendants' motion for summary

21  judgment, in which the court granted summary judgment on the claims of affirmative

22  misrepresentation, "because plaintiff has provided no evidence that she relied on any

23  particular representation made by the defendants," and "was unable to identify any specific

24  misleading statements relating to smoking and health."  Oct. 22, 2012 Order at 17-18.

25  Defendants claim that the theory plaintiff now proposes to prove would fail for the same

26  reason her claims of affirmative misrepresentation failed.

27      In their second main argument, defendants assert that the evidence proffered by

28  plaintiff does not establish a post-1969 concealment claim based on breach of a duty to

**United States District Court**
For the Northern District of California

1   disclose facts through channels of communication other than advertising and promotion.

2   First, they contend that plaintiff's evidence does not establish a duty arising from any

3   "partial disclosure" – an affirmative statement that was misleading because it did not

4   include all information necessary in order to make it not misleading.  Defendants note that

5   in the October 22, 2012 order re defendants' motions for summary judgment, the court

6   dismissed plaintiff's affirmative-misrepresentation claim based on its finding that plaintiff

7   "did not recall having ever read or heard (much less relied on) any specific statement

8   regarding smoking and health" in advertising or promotion or otherwise.

9          Indeed, defendants assert, plaintiff's Offer of Proof avoids identifying any public

10   communications at all, as she points to only general "communications" without showing

11   when or where they were made, or by whom, and whether they were made to "plaintiff" as

12   defendants assert CACI 1901 requires.  Defendants argue that sweeping statements

13   referring generically to "communications" cannot suffice because they are impossible to

14   attribute to something that reached plaintiff through channels of communication outside

15   advertising and promotion.

16          For example, defendants cite to Offer of Proof ¶ 86 (deposition testimony by RJR

17   representative Figlar that even after the 1979 Surgeon General's report, RJR continued to

18   "assert publicly" that a link between smoking and cancer was not scientifically established;

19   id. ¶ 116 (deposition testimony by Philip Morris representative Jupe that Philip Morris

20   continued to state for decades after Surgeon General's report that mechanism by which

21   cigarette smoking causes cancer had not been proven; and id. ¶ 148 (deposition testimony

22   by RJR representative Cook that RJR continued to publicly deny that smoking causes

23   cancer until late 1990s (after plaintiff had quit smoking).  However, defendants argue,

24   plaintiff offers no proof that these representations were communicated to her other than

25   through advertising and promotion.  They assert that this is not "specific evidence"

26   supporting the post-1969 concealment claim, as the court ordered plaintiff to provide.

27          Defendants also note that plaintiff attributes certain representations to the Tobacco

28

United States District Court

For the Northern District of California

1   Institute (citing id. ¶¶ 37, 39, 84-85, 87, 92[4]), but notes that the court previously held that

2   plaintiff "never heard, saw, read, or relied on statements made by . . . TI" (citing May 22,

3   2013 order re defendants' motion for partial summary judgment (Doc. 319)).  Thus,

4   defendants argue, as to those representations, there can be no evidence that such "partial

5   disclosures" could have caused her to act differently than she otherwise would have, had

6   the disclosure been "complete."

7          Similarly, defendants contend that there is no proffer that plaintiff saw, heard, or read

8   about the testimony of an RJR executive before Congress on March 12, 1982, or that she

9   heard about a report presented by the Tobacco Institute to Congressional committee in

10  1984, or that she watched NBC's "Nightline" on February 2, 1984, where RJR's former

11  Chairman of the Board stated that "science has still failed to establish a causal link"

12  between smoking and cancer (citing Offer of Proof ¶¶ 91, 93, 94).

13         Finally, with regard to the evidence submitted by plaintiff in the form of citations to

14  testimony in her declaration, see id. Exh. 93 (originally filed July 9, 2012 in opposition to

15  defendants' motion for summary judgment), cited in id. ¶¶ 151, 156, 165, 167, 171, 173, or

16  to various excerpts from her deposition testimony, id. Exhs. 95-97, cited in id. ¶¶ 157-164,

17  defendants contend that the court previously considered the same statements from plaintiff

18  and concluded that plaintiff had failed to show she ever encountered any specific statement

19  from defendants about smoking and health.

20         Second, defendants contend that plaintiff's evidence does not otherwise establish

21  any duty to disclose important facts outside advertising and promotion.  Defendants

22  concede that plaintiff has pointed to some information she did not have, but argue that she

23  has not explained how a duty to disclose that information could have arisen in the absence

24  of some representation about it.

25         For example, defendants assert, testimony by company representatives that Philip

26

27          [4]  However, the statements in ¶¶ 37 and 39 are also attributed to "defendants," and the
28  statement in ¶ 92 was allegedly made by the Tobacco Institute as spokesman for "the tobacco
industry, including [RJR]."

**United States District Court**
For the Northern District of California

Morris and RJR kept up with the available medical and scientific literature, id. ¶¶ 120, 145, does not show that defendants had exclusive knowledge that plaintiff could not have obtained.  Nor, defendants argue, does it show "active concealment," and indeed, does not even show anything was actually concealed.

Defendants claim that the same can be said of testimony by RJR representatives Figlar and Gentry that RJR did not conduct studies comparing its cigarettes with those of its competitors, id., ¶ 140; or testimony by Philip Morris representative Jupe that Philip Morris studied whether nicotine was addictive, id. ¶ 107; or testimony by RJR representative Cook that RJR never told its customers to stop buying its product, id. ¶ 147; or testimony by former Philip Morris CEO Bible that Philip Morris viewed customer health and profits equally, id. ¶ 117; or testimony by former Philip Morris CEO Bible that Philip Morris acquired a research facility in Germany in 1970 so it could "conceal research from consumers," id. ¶ 74; or testimony that RJR and Philip Morris "destroyed," "buried," or "tightly controlled" cigarette research, id. ¶¶ 76-82, 88; or testimony by Philip Morris representative Jupe that Philip Morris has never taken a public position on the number of cigarettes per day one should smoke, id. ¶ 111.

Defendants argue that plaintiff fails to explain how any of this evidence shows some important fact that defendants had a duty to disclose after 1969, let alone what form defendants should have used to communicate it.  Defendants contend that this evidence appears to have been selected to suggest that defendants acted reprehensibly, but they argue that that is not the issue that the court asked plaintiff to address, and it has nothing to do with preemption.  Similarly, defendants assert, plaintiff identifies internal reports and memoranda that were not publicly disclosed (citing id. ¶¶ 62, 64, 66, 69-72, 83), but does not explain what important facts they contained that defendants had a duty to disclose, let alone a duty to disclose them outside advertising or promotion.

As for plaintiff's citation to her own testimony about information she supposedly did not know (even after federal warnings containing such facts began appearing) – e.g., id. ¶ 168 (plaintiff didn't know smoking caused cancer until decades after Surgeon General's

United States District Court

For the Northern District of California

1964 report); id. ¶ 171 (plaintiff believes she "may have been able to stop using cigarettes

sooner" than 1991 if she had known smoking caused lung cancer); id. ¶ 73 (describing

consumer survey of beliefs of smokers "like" plaintiff, some of whom allegedly did not know

smoking causes lung cancer) – defendants reiterate that there is no cause of action for lack

of knowledge, or even for a mere failure to disclose, and a concealment cause of action

must be based on breach of a duty to disclose.  Here, defendants argue, the question is

how that duty arose after 1969 despite the federal warnings, and how such a duty could be

discharged after 1969, outside advertising and promotion.

Third, defendants assert that plaintiff has improperly included evidence of post-1969

advertising or promotion.  They contend that it is indisputable that no duty to disclose after

1969 could be premised on post-1969 advertising and promotion, because that is exactly

what is precluded by the Labeling Act.   Moreover, they argue, due to the combined effect

of the California immunity period and plaintiff's stop-smoking date, no evidence will be

admissible in this action relating to defendants' post-1987 knowledge, statements, or public

positions.  Defendants argue that none of the evidence cited here helps plaintiff establish

her proposed post-1969 concealment claim, and that in offering it, plaintiff has violated

more of the court's rulings.

Defendants list the following as examples of such impermissible evidence – id. ¶ 48

(testimony by former Director of Consumer Research that Philip Morris approved its own

advertising); id. ¶ 90 (testimony by former Philip Morris spokesperson Jeanne Bonhomme

relating to FTC report concerning cigarette advertising published between 1964-1981); id.

¶ 101 (describing 1985 RJR "public statement," which plaintiff identifies as an

"advertisement"); id. ¶ 118 (testimony by former Philip Morris CEO Bible re Philip Morris

advertisements during period from 1954 (when plaintiff started smoking) through time she

quit; id. ¶ 141 (testimony by RJR representative Cook that he was not aware of RJR

"voluntarily putting a warning label on any advertisement"); id. ¶¶ 134, 136-138, 150

(testimony by RJR representative Gentry re positions RJR took in 2000 regarding smoking

cigarettes); id. ¶ 132 (testimony by RJR representative Cook that RJR did not publicly

United States District Court

For the Northern District of California

admit that smoking was addictive until late 1990s, after plaintiff quit smoking); id. ¶¶ 126-127 (testimony by Philip Morris representative Lipowicz re positions Philip Morris took in 2000 regarding smoking cigarettes); id. ¶¶ 110-111 (testimony by Philip Morris representative Jupe re position Philip Morris took in 2011 regarding smoking and lung cancer).

Fourth, defendants argue that plaintiff continues to offer cigarette-design evidence in violation of prior court rulings.  Defendants note that the court dismissed the design claim, found cigarette-design evidence inadmissible and irrelevant as to any remaining claim, and precluded Dr. Farone from testifying about it.  Yet, defendants assert, plaintiff now says she plans on asking Dr. Farone to tell the jury that Philip Morris could have replaced  the nicotine in its cigarettes with nicotine analogs "that would produce the same addictive effects but without the adverse cardiovascular effects of nicotine" (quoting id. at ¶ 99).

Defendants contend that this is design evidence, which would also violate another order in the case because it relates to cardiovascular disease, an injury not at issue in this case.  Defendants point to other evidence that appears to violate the same orders, including id. ¶ 103 ((testimony by Philip Morris representative Jupe that cigarette smoking results in brain changes); id. ¶ 108 (testimony of former Philip Morris CEO Bible regarding effects of nicotine addiction); id. ¶ 131 (testimony of RJR scientist Gentry cigarettes are "significantly risky"); id. ¶ 135 (testimony of RJR executive Cook regarding the flavor of low-nicotine cigarettes);  id. ¶ 168 (plaintiff's statement that she would have smoked safer cigarettes had they been available).

**ANALYSIS**

As indicated above, notwithstanding numerous orders issued by the court, plaintiff continues to assert that no part of the concealment claim is preempted, and that she is entitled to put on evidence from any period prior to 1988, relating to concealment in advertising and promotion (or any other vehicle of communication) regarding the health effects of smoking.  Plaintiff's Offer of Proof, which is a jumbled and overblown conglomeration of re-argument of issues already decided by the court and citations to

United States District Court

For the Northern District of California

evidence that in some instances is irrelevant or was previously excluded by the court, is premised on this untenable theory that Labeling Act preemption does not apply in this case.

Any claim that requires a showing that the defendants' post-1969 advertising or promotions "should have included additional, or more clearly stated, warnings" is preempted. Cipollone, 505 U.S. at 524.  Similarly, any claim that defendants made statements or used images in cigarette advertising or promotional materials that "tend[ed] to minimize the health hazards associated with smoking," such as by associating smoking with positive attributes such as "contentment, glamour, romance, youth, [or] happiness" is also preempted. Id. at 527.  Even if not specifically labeled "failure to warn," such claims necessarily contend that the federal warnings are not sufficient to warn, and so are preempted. See id.

On the other hand, claims of breach of express warranty are generally not preempted, nor are claims of fraudulent misrepresentations in advertising and promotion, as a claim based on an allegedly false statement of material fact in an advertisement is not predicated on a duty relating to "smoking and health," but rather on the "more general obligation . . . not to deceive." Id. at 528-29.  A claim of fraudulent concealment is predicated on a state-law duty not to conceal material facts, and a claim that the defendants concealed material facts is thus not preempted insofar as that claim relies "on a state-law duty to disclose such facts through channels of communication other than advertising or promotion," as where a state law obliges manufacturers to disclose material facts about smoking and health to an administrative agency. Id. at 528.

It is generally agreed that the Cipollone plurality's opinion regarding Labeling Act preemption is difficult to apply.  The Supreme Court itself recognized that the Cipollone preemption framework "lack[s] 'theoretical elegance,'" Altria, 555 U.S. at 84 (quoting Cipollone, 505 U.S. at 530 n.27), and numerous courts have agreed.  The California Court of Appeal commented that the difficulty is "due not only to the various concurring and dissenting opinions making up a majority on different parts of the decision

United States District Court

For the Northern District of California

1  [citing Cipollone, 505 U.S. at 553-54 (con. & dis. opn. of Blackmun, J.; id. at 555 (con. &

2  dis. opn. of Scalia, J.], but more fundamentally due to the inherent contradiction at the core

3  of the case." Whitely v. Philip Morris, Inc., 117 Cal. App. 4th 635, 669-70 (2004).

4     In Altria, which followed Cipollone, the Court found that the claim at issue – that

5  statements in advertisements and elsewhere that the cigarettes at issue had less tar and

6  lower nicotine than other cigarettes were deceptive and induced the plaintiffs to purchase

7  the cigarettes – alleged a breach of the duty not to deceive. Id., 555 U.S. at 82. While the

8  court conceded that the presence of the warnings on the packages might bear on the

9  materiality of the allegedly fraudulent statements, the court emphasized that the claim was

10  a claim about deceptive statements, not a claim about warnings about smoking and health.

11  Id. at 82-83. The Court found nothing in the Labeling Act's purpose that otherwise limits the

12  States' authority to prohibit deceptive statements in cigarette advertising. Id. at 79-80.

13     However, the Court confined its analysis to the claim that the manufacturers had

14  made affirmative misrepresentations. The Court found it "clear that our holding in

15  Cipollone that the common-law fraud claim was not pre-empted is directly applicable to the

16  statutory claim at issue in this case," adding, "[a]s was true of the claim in Cipollone,

17  respondents' claim that the deceptive statements 'light' and 'lowered tar and nicotine'

18  induced them to purchase [the manufacturers'] product alleges a breach of the duty not to

19  deceive." Id. at 82.

20     Both Altria and Cipollone analyzed the claims at issue as affirmative

21  misrepresentation claims – not as claims of fraudulent concealment. In the present case,

22  there are no claims of affirmative misrepresentation remaining. Plaintiff's concealment

23  claim appears to be premised on the theory that defendants made public statements

24  regarding smoking and health, and that while the statements may have been true, they

25  were rendered misleading by defendants' failure to include additional statements

26  concerning the negative health effects of smoking. However, because plaintiff has not

27  precisely identified the statements at issue, it is impossible to ascertain the exact basis of

28  the concealment claim. Nevertheless, to the extent that any of these statements were

United States District Court
For the Northern District of California

1    made in advertising or promotions after 1969, when Labeling Act warnings were mandated,

2    such a claim is preempted by the Labeling Act because it is indistinguishable from a claim

3    alleging that defendants failed to include additional warnings regarding smoking and health

4    in advertising and promotions.

5           Turning to defendants' response, the court notes that defendants have attacked

6    plaintiff's Offer of Proof largely as though it were a motion for summary judgment.  An offer

7    of proof is normally made after the court has sustained an evidentiary objection, with the

8    purpose of establishing a record for appeal.  See Wright, Miller & Kane, 21 Federal Practice

9    & Procedure (2d ed. 2014) Evid. § 5040.  The intent is to show the substance of the

10   would-be evidence and the purpose for which a party sought to introduce it.  See Fed. R.

11   Evid. 103; see also Heyne v. Caruso, 69 F.3d 1475, 1481 (9th Cir. 1994); Pau v. Yosemite

12   Park and Curry Co., 928 F.2d 880, 887 (9th Cir. 1991).

13          Federal Rule of Evidence 103 does not define "offer of proof," although the Advisory

14   Committee Notes for 1972 refer to "similar provisions" in the California Evidence Code.

15   Under California Evidence Code § 354, an "offer of proof" is a statement by counsel

16   describing proposed evidence and what he or she intends to prove if such evidence is

17   admitted.  Cal. Evid. Code § 354(a).  In this case, given the general lack of clarity of the

18   claims asserted in plaintiff's complaint, and also given counsel's apparent unwillingness or

19   inability to conform to the court's procedures for pretrial preparation, the court's intent in

20   requiring the Offer of Proof was simply to ascertain whether plaintiff had evidence to

21   support the claim that defendants had concealed material information regarding health and

22   smoking outside of advertising and promotion.  The intent was not, as defendants seem to

23   be suggesting, to determine at this stage whether plaintiff can "prove" concealment.

24          Moreover, defendants' contention that plaintiff has abandoned all except one of the

25   four alternative elements listed under element (1) in CACI 1901 is not persuasive, nor is the

26   argument that because the court previously granted summary judgment as to the

27   affirmative misrepresentation claims, plaintiff is precluded from pursuing a concealment

28   claim based on some affirmative statement.  This is not to say that the court finds that

United States District Court

For the Northern District of California

1   plaintiff has established all the elements necessary to prevail on a claim of concealment.

2   Nevertheless, while the Offer of Proof is far from straightforward, it was not intended to

3   afford defendants another opportunity to seek summary adjudication of the concealment

4   claim.  The concealment claim will be allowed to proceed to trial, but limited as follows.

5          Setting aside the questions whether plaintiff's evidence "establishes a duty" or

6   whether plaintiff has offered "proof" of reliance – issues that remain to be determined –

7   the court finds that evidence relating to post-1969 advertising and promotion must be

8   excluded, because claims of concealment based on statements in advertising and

9   promotion post-1969 are preempted by the Labeling Act.  That is, any post-1969 evidence

10  that comes in must be unrelated to advertising and promotion.  For example, assuming

11  such evidence is otherwise admissible, plaintiff has cited to a number of public statements

12  made by defendants in company documents (including press releases) and in deposition

13  testimony.

14         As for defendants' further objections to evidence, the court previously excluded

15  evidence of post-1987 tortious conduct (Docs. 289, 310) and sustained defendants'

16  objections to deposition designations relating to defendants' post-1987 knowledge,

17  statements, and public positions (Doc. 337), based on operation of statutory immunity

18  under California law for the ten-year period beginning January 1, 1988.  Thus, such

19  evidence cannot be admitted to support an element of the concealment claim.  Finally, to

20  the extent that any of plaintiff's exhibits relate to cigarette design, or to diseases other than

21  lung cancer, such evidence is excluded, in line with the court's prior rulings (Docs. 229,

22  337).

23         Unfortunately, however, the court's attempt to ascertain whether plaintiff has

24  evidence to support the claim that defendants concealed material information regarding

25  smoking and health outside of advertising and promotion has failed.  This exercise has not

26  advanced the case and has largely been a waste of time.  As set forth above in

27  excruciating detail, the court has already ruled in prior orders (Docs. 229 and 319) that

28  under Cipolline, a claim that defendants' post-1969 advertising and promotions should have

included additional warnings is preempted, while a claim that defendants concealed material facts is not preempted insofar as it relies on a state-law duty to disclose such facts through channels of communication other than advertising and promotion.  The findings made in this order change nothing.

**IT IS SO ORDERED.**

Dated:  December 2, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge