**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKKI POOSHS,

        Plaintiff,

      v.

PHILLIP MORRIS USA, INC., et al.,

        Defendants.

_____/

No. C 04-1221 PJH

**ORDER RE DEFENDANTS'
CATEGORICAL OBJECTIONS TO
PLAINTIFF'S EVIDENCE**

    In the April 2, 2014 Fifth Final Pretrial Order, the court ordered the parties to submit "categorical objections" – with representative examples – to the proposed trial evidence. The court stated that it would advise the parties thereafter whether it would hold a half-day hearing on the parties' categorical objections, as plaintiff requested.

    On May 27, 2014, defendants filed categorical objections to plaintiff's proposed witness lists, exhibit lists, written deposition designations, and written discovery designations.  This was not a joint filing, and plaintiff did not file anything separately.  On June 2, 2014, the court issued an order noting that it had requested a joint submission, and that it was anticipating a list of representative examples in categories of type of evidence, but that the submission had been made by defendants only, with an emphasis on "subject" categories.

    The court reiterated that it does not have the time, resources, or inclination to read

United States District Court

For the Northern District of California

every single exhibit, discovery designation, and deposition in this case, and added that it

believed that what was required was a joint submission identifying jointly identified specific

examples of evidence in the categories of exhibits, deposition designations, written

discovery designations, and proposed witness testimony, followed by plaintiff's arguments

as to why the evidence does not violate a prior order and is otherwise admissible, followed

by defendants' arguments as to why the evidence does violate a prior order and is

otherwise inadmissible.

The court requested that the joint filing be submitted by June 30, 2014.  The court

added, however, that should the parties instead prefer a ruling on the categorical objections

made by defendants, in lieu of the above-described procedure, plaintiff should file a

response no later than June 16, 2014.

On June 16, 2014, plaintiff filed a response to defendants' May 27, 2014 categorical

objections.  Plaintiff argues that defendants' objections should all be overruled, or in the

alternative, that the court should "reserve its evidentiary ruling until trial where proper

foundations will be laid for every item of proffered evidence," or, as a second alternative,

that the court should "order the parties to meet and confer in the presence of the [c]ourt on

exhibits."  As for that last alternative, plaintiff proposes that the court "select[ ] some of the

proffered categories," and that the parties could then

> appear and present three examples of evidence that fall into each category
> selected by the [c]ourt.  The parties could then explain through their selected
> examples the relevance or the prejudice they would suffer if these items were
> admitted into evidence.  This type of brief mock presentation would decrease
> the [c]ourts [sic] work load because the burden would be on the parties to
> present the evidence, and may assist the [c]ourt in ruling on objections, by
> giving it a preview of the evidence that will be presented at trial.

Pltf's Response at 27-28.

To date, the court has devoted an undue amount of time and judicial resources to

this case, largely because of plaintiff's recalcitrance and refusal to comply with the court's

settled pretrial procedures.  Plaintiff and her counsel have repeatedly been instructed that

the admissibility of evidence presented in any trial conducted by the undersigned will be

largely determined in advance of trial.  Thus, the court rejects plaintiff's first alternative.  As

1  for plaintiff's second alternative, the court finds that far from decreasing the court's

2  workload, the proposed procedure would be overly time-consuming and would further drag

3  out what has become a nearly intolerable exercise in pretrial preparation.

4      Given the lack of a joint submission, the court finds it unnecessary to hold a hearing

5  on the categorical objections, and hereby rules as follows.

6          1.    Exhibits exceeding 250

7      Defendants request that the court strike all exhibits on plaintiff's exhibit list after the

8  first 250 exhibits.  This is the number of exhibits that plaintiff's counsel previously asserted

9  (at the March 27, 2014 pretrial conference) comprised the list.  Defendants contend that

10 they have repeatedly requested that plaintiff provide the list of 250 exhibits that are

11 supposedly going to be introduced a trial, and that each time, plaintiff has failed to do so.

12     Defendants contend that the Second Supplemental Exhibit List (Doc. 343, filed Sept.

13 3, 2013) contains 401 entries in the "will use" section alone, many of which are "composite

14 exhibits" containing multiple individual documents.  Defendants assert that the 401 entries

15 in the "will use" list actually comprise 13,814 individual exhibits, with a total of 75,636

16 pages.  Defendants contend that there is no way plaintiff will be able to present 401 exhibits

17 to the jury, let alone 13,814 exhibits consisting of more than 75,000 pages.

18     In addition, defendants point to three particular exhibit designations, including one

19 exhibit that consists of more than 12,000 advertisements, and another exhibit of "Expert

20 Reliance Materials" that includes more than 250 sub-exhibits.  They also note an entry on

21 the exhibit list for "PT Cummings," which is described as encompassing "[a]ll current and

22 previous reliance materials and previously introduced exhibits of and through Dr. Michael

23 Cummings," whom defendants claim has testified in 55 smoking-and-health trials over the

24 course of 17 years.

25     In response, plaintiff asserts that defendants are asking the court to strike evidence

26 simply because they don't like the way it is organized.  She does not respond to

27 defendants' assertion that the "will use" list includes more than the agree-upon number of

28 entries.  As for the argument regarding composite records, plaintiff asserts that this is not a

3

**United States District Court**
For the Northern District of California

"category" of evidence that can support a categorical objection, that defendants' exhibit list also includes composite exhibits, and that it is common at trial for "things like medical records, reliance materials, employment records, social security records" to be listed as composite exhibits.  She asserts that once the court has ruled on the Offer of Proof, she will meet and confer with defendants to agree on permissible composite exhibits.

This objection is SUSTAINED in part and OVERRULED in part.  Following the issuance of this order and the order regarding plaintiff's Offer of Proof, plaintiff will be allowed two weeks to narrow the list to 250, and the parties thereafter will be given one week to meet and confer should plaintiff persist in including many thousands of exhibits as "composite exhibits."

Plainly, a composite exhibit that includes 12,000 pages of advertisements is not usable at trial, and thus would not be admissible.  Similarly, a composite exhibit that includes 250 sub-exhibits would not be usable.  Such designations run counter to the court's directive that plaintiff provide a finite list of "will use" exhibits.  As for the designation "PT Cummings," which was accompanied by no actual exhibits, that is incomprehensible.  Nevertheless, the court will take plaintiff's counsel at their word that they plan on meeting and conferring with defendants to narrow down the list and resolve the dispute regarding the composite exhibits once the court has ruled on the Offer of Proof.  Should they fail to do so, the court will exclude the composite exhibits.

2.   Prior testimony designations

Defendants request that the court strike all "prior-testimony designations" on the basis that many of the designations violate prior orders of the court and plaintiff continues to refuse to remove them from the list.  Defendants do not provide any examples of improper designations that remain on the list.

In addition, defendants assert that while plaintiff has withdrawn some of the improper designations, she has also added new designations of prior testimony in the course of revising the designations, and that some of these are also improper.  Defendants provide one example, an excerpt from the Oct. 5, 2011 deposition testimony of Richard Jupe

United States District Court

For the Northern District of California

(Declaration of Conin Schreck ("Schreck Decl.") Exh. 4) (testimony re low-tar and low-nicotine cigarettes), which they contend references cigarette design (and is discussed under the "cigarette design" category below).

Plaintiff does not respond to this objection as such, though there may be some response subsumed within the category of prior-testimony designations. On the other hand, defendants have provided only one example. In theory, the court is amenable to striking any designation that violates one of the prior evidentiary rulings. However, the court is unable to provide a more specific ruling in the absence of additional examples. Should plaintiff attempt to introduce any evidence at trial in a category that has previously been ruled inadmissible by the court – e.g. cigarette design evidence – defendants will have to object at that point, and the court will sustain the objection without argument.

3.   Post-1987 evidence

Defendants assert that plaintiff has included some post-1987 evidence that continues to violate the court's prior orders. Defendants list news articles from 1997 and 1998 (discussing contemporaneous trial testimony by Philip Morris executives), statements made on Philip Morris' website in 2000, a May 1998 press release, and statements made in 2000 on Philip Morris' website (Schreck Decl. Exh. 5). Defendants also list excerpts from depositions of Peter Lipowicz, Sir Richard Doll, Christopher Cook, and James Figlar, and trial testimony excerpts from Geoffrey Bible and Walker Merryman (id. Exhs. 6-11) referencing events that occurred post 1987.

Defendants note that plaintiff has argued that such designations should be admissible because they may provide information about the period before 1988, but argue that even if that is true, plaintiff has ignored the overwhelming and unnecessary prejudice that such designations would cause because of the likelihood that jurors will hold defendants liable for conduct during periods when they are immune.

Defendants note that the court previously sustained defendants' post-1987 objections in their entirety (although it did not comment on particular testimony). Defendants assert that they previously objected to all trial testimony of Philip Morris' former

5

United States District Court

For the Northern District of California

CEO, Geoffrey Bible, on the basis that he testified in 1998 that his personal knowledge of his employer's operations did not extent to the period before 1987, and also the testimony that he was familiar with U.S. operations only for the prior 10 years, because before that he was working overseas in international operations until that time.  See Docs. 330, 359; see also Schreck Decl. Exh. 7.

In response, plaintiff agrees that evidence pertaining to alleged tortious conduct by defendants after December 31, 1987 has been excluded by the court, but argues that defendants are attempting to "broaden this category to ridiculous results" by attempting to have all post-1987 evidence excluded.  Plaintiffs contend that this position is too extreme because it would exclude evidence of her cancer diagnosis and treatment.

In addition, plaintiff argues that defendants are trying to exclude documents dated after 1987 even though they may be relevant, such as medical and science articles, or post-1987 documents that discuss defendants' pre-1987 conduct.  Plaintiff contends that defendants are going as far as objecting to the depositions of their own corporate representatives that were taken after 1987, and are objecting to designations on the ground that they contain un-designated portions that relate to time periods after 1987.  She asserts that to the extent any of these excerpts might be prejudicial, the court can solve that problem by issuing a limiting instruction telling the jury not to consider any evidence of events or conduct after 1987.

Plaintiff does not respond to defendants' argument that the Bible trial testimony should be excluded in its entirety because Mr. Bible's involvement with and responsibility for Philip Morris' domestic (U.S.) tobacco activities began in April 1993 (during California's immunity period); and because Mr. Bible testified that he had not studied or been informed about the history of Philip Morris' or the tobacco industry's conduct before 1993.

As for the specific examples provided by defendants, plaintiff comments as to three of those.  First, with regard to the excerpt from the March 2, 1998 trial testimony of Geoffrey Bible (Schreck Decl., Exh. 7), Mr. Bible was asked whether it was true that from 1954 up to today, Philip Morris had never said smoking causes lung cancer, and he

United States District Court
For the Northern District of California

1   responded, "I think that's a fair, accurate description.  We have made our position very

2   clear on it."  Defendants object because this testimony covers a period that post-dates

3   1987.  They renew their prior objection (Docs. 330, 359) to all designations from prior

4   testimony by Mr. Bible, on the ground that he was testifying in those transcripts as a fact

5   witness, and he clearly indicated that his personal knowledge of Philip Morris' conduct in

6   the United States was limited to the period after 1987.

7         Plaintiff argues that this excerpt from the Bible testimony is admissible because it

8   shows Philip Morris' public position on smoking and lung cancer during the relevant period

9   when plaintiff started smoking cigarettes.  She asserts that it would be unfair and

10  prejudicial to exclude this testimony simply because it was provided during the "immunity

11  period."  She also contends that it is relevant to the failure-to-warn and concealment

12  claims.  She does not address Bible's testimony that he lacked personal knowledge of the

13  pre-1987 period.

14        The objection is OVERRULED, but the evidence will nonetheless be EXCLUDED

15  because Mr. Bible testified that he had no personal knowledge of the period preceding

16  1987, as he did not work for Philip Morris in the U.S. prior to that time.  In addition, the

17  court agrees with defendants that the entirety of the Bible trial testimony should be

18  EXCLUDED for the same reason – that Mr. Bible testified that his responsibility for Philip

19  Morris' U.S. tobacco activities began in April 1993, after the commencement of California's

20  immunity period.

21        Second, with regard to the excerpt from the May 31, 2002 trial testimony of Sir

22  Richard Doll (an epidemiologist working in the field since the 1960s) (Schreck Decl., Exh.

23  8), he was asked in the cited excerpt whether it was true that in England by the 1960s the

24  tobacco industry no longer denied that smoking cigarettes caused lung cancer, and

25  whether it was true that at the same time in the U.S. the tobacco industry was still denying

26  that there was any causal connection.  He responded "Yes" to both, adding that it was his

27  "understanding" that in the U.S. the tobacco industry continued to deny it well into the

28  1990s.  Defendants object to this testimony on the basis that it covers the period after

United States District Court

For the Northern District of California

1987.

Plaintiff argues that this excerpt is admissible because it relates to defendants' knowledge and conduct in the 1960s, and that it should not be excluded simply because his comment extends into the period after 1987. She contends that this testimony is relevant to the failure-to-warn and concealment claims.

This objection is OVERRULED, but the evidence will nonetheless be EXCLUDED as stated below, because it pertains to "the tobacco industry," which is not a defendant in this case.

Third, with regard to the excerpt from the July 21, 2011 deposition testimony of RJR representative Dr. Christopher Cook (Schreck Decl. Exh. 9), he was asked when RJR first admitted publicly that smoking cigarettes was a cause of lung cancer, and he responded, "2000." Defendants object to this testimony because it was given post-1987 and relates to a period after 1987. Plaintiff argues that it is admissible because it establishes that RJR never admitted publicly prior to 1987, when plaintiff was still smoking cigarettes, that smoking causes lung cancer. She asserts that it would be unfair to exclude this testimony simply because it relates to a period that extends past 1987, and that it is relevant to the failure-to-warn and concealment claims.

The objection is SUSTAINED. This 2011 testimony relates to the period 2000, and thus is outside the pre-1987 period. Moreover, at most, all that it establishes is that in Dr. Cook's view, RJR first admitted in 2000 that smoking causes cancer, but it does not, as plaintiff claims, establish that RJR "never admitted publicly" prior to 1987 that smoking causes cancer.

4.    Aggregate harm evidence

Defendants contend that plaintiff's most recent designations include approximately 141 pages of prior testimony regarding "aggregate harm evidence" – evidence against the entirety of the cigarette industry, or against cigarette manufacturers other than Philip Morris and RJR – which the court previously ruled is not admissible.

As examples, defendants list two excerpts of deposition testimony from Philip Morris

United States District Court

For the Northern District of California

1  representative Peter Lipowicz (referencing "the tobacco industry" and "tobacco

2  manufacturers and their spokesmen") (Schreck Decl. Exhs. 6, 13); two excerpts of

3  deposition testimony from Philip Morris representative Jeanne Bonhomme (referencing "the

4  tobacco industry") (id. Exh. 14); one excerpt of deposition testimony from Sir Richard Doll

5  (referencing "the tobacco industry") (id. Exh. 8), and one document reciting statistics

6  attributed to the tobacco industry as a whole (id. Exh. 15).

7      In response, plaintiff agrees that the court previously excluded evidence of

8  aggregate harm, although she claims not to understand which evidence falls into this

9  category, and asserts that defendants' definition appears to have "no limit."  She also

10  complains that the designations and exhibits defendants have identified are taken out of

11  context.

12      Plaintiff addresses only one of defendants' examples – an excerpt of deposition

13  testimony from Peter Lipowicz (Schreck Decl. Exh. 6).  However, the two Lipowicz

14  examples cited by defendants are one excerpt from the Oct, 12, 2011 deposition (106:9-

15  18), and a second excerpt from a May 17, 2012 deposition.

16      In the first excerpt (106:9-18), it appears that counsel is asking Mr. Lipowicz a

17  question, in the form of reading a passage from a document.  It is impossible to tell what

18  the document is, who wrote it, or even what the question is.  In her response, plaintiff

19  quotes part of the statement/question, which is "And then it goes on to say: 'In the face of

20  this evidence, the response of the tobacco manufacturers and their spokesman has been

21  deplorable" but then plaintiff adds a response, "That is not correct" which does not appear

22  in the excerpt.  In any event, plaintiff disputes that the cited excerpt applies to the tobacco

23  industry as a whole, and claims that it applies directly to Philip Morris.  However, she does

24  not identify any reference to Philip Morris in the excerpt.

25      Plaintiff cites a second excerpt (Lipowicz Depo. 106:19-107:11), which appears in

26  the transcript following the excerpt cited above, but which is not one of the examples

27  provided by defendants.  In this excerpt, Mr. Lipowicz was asked whether he would have

28  expected Phillip Morris to have been aware of a particular article in the New England

9

**United States District Court**
For the Northern District of California

Journal of Medicine in 1960 regarding "tobacco manufacturers," and he answered, "Yes." However, defendants have not objected to this excerpt, so it is not clear what point plaintiff is hoping to make.

At the end of this section, plaintiff requests that the court "define what it meant when it granted [d]efendants [sic] motion in limine on 'aggregate harm.'"  She says she understood the term to mean harms other than lung cancer – i.e., that it would be prejudicial to introduce evidence that millions of people die each year from COPD.  She complains that defendants' definition is "all inclusive," and that they have even suggested that lung cancer statistics relied upon by experts to demonstrate a causal link between plaintiff's lung cancer and her smoking are inadmissible under the court's ruling.

Defendants' objections are SUSTAINED in part and OVERRULED in part.  Plaintiff's arguments about the second Lipowicz excerpt are non-responsive, as defendants posed no objection to that excerpt in this section of the argument.  (They do object to it in another part of the argument because it is evidence relating to "cigarette manufacturers.")  With regard to the first Lipowicz excerpt, the portion cited by defendants is a question ("I did read that correctly, did I not?"), and the only response ("Yes, you read that correctly.") cannot be considered "testimony."  Thus the basis for the objection is unclear.

Further, the court does not understand how plaintiff can claim to be confused regarding defendants' use of "aggregate harm" in their objections to the designations.  In the Preliminary Final Pretrial Order (Doc. 289), the court granted Philip Morris' motion in limine to exclude evidence of the "aggregate harm" allegedly caused by smoking, noting that it was unclear what evidence defendant was seeking to preclude, but stating that it would "not allow the introduction of evidence against the entirety of the cigarette industry, or against cigarette manufacturers other than the defendants that remain in the case." Later, in the Third Final Pretrial Order (Doc. 337), the court sustained defendants' objections to deposition designations relating to evidence of harm purportedly caused by cigarette smoking on entire populations, which defendants had also referred to in their objections as "aggregate harm."

United States District Court

For the Northern District of California

1   Regardless of the label, plaintiff's claim to be confused by the meaning of those two

2   prior evidentiary rulings is a bit disingenuous, particularly in light of her suggestion that

3   what the court really intended to exclude was evidence of harms other than lung cancer

4   (the subject of a separate in-limine ruling).  To the extent that plaintiff is genuinely confused

5   as to the nature of the evidence that has been excluded by the relevant portions of those

6   two orders, the court anticipates that the following will resolve the problem:  In line with the

7   court's prior orders, evidence against the entirety of the cigarette industry or against

8   cigarette manufacturers other than Philip Morris or RJR is EXCLUDED; evidence relating to

9   harm purportedly caused by cigarette smoking on entire populations is EXCLUDED; and

10  evidence of plaintiff's injuries other than lung cancer is EXCLUDED.

11          5.      Cigarette-design evidence

12  Defendants assert that plaintiff has included "cigarette-design evidence" that violates

13  prior orders.  In support, they cite to two excerpts from the deposition testimony of Peter

14  Lipowicz (Schreck Decl. Exhs. 6, 13); an excerpt from the deposition testimony of Richard

15  Jupe (id., Exh. 4); two excerpts from the deposition testimony of Jeanne Bonhomme (id.

16  Exhs. 14, 16); two excerpts from the trial testimony of Geoffrey Bible (id., Exhs. 7, 17); and

17  an excerpt from the deposition testimony of Jeff Gentry (id., Exh. 18).  In addition,

18  defendants assert that plaintiff has improperly included at least 20 documents on her

19  exhibit list that relate to cigarette design, and they cite to five of them (Schreck Decl. Exh.

20  19).

21          In response, plaintiff argues that in order to prove her failure-to-warn and

22  concealment claims, she must present evidence regarding defendants' cigarettes and the

23  fact that the use of those cigarettes causes cancer.  She complains that defendants are

24  arguing that any testimony or evidence that is even tangentially related to cigarettes is

25  "design" testimony.  For example, she claims that defendants object to any description

26  saying, e.g., "cigarettes are made out of tobacco" and/or mentioning that some cigarettes

27  have filters.  Plaintiff finds it impossible to conceive how defendants might be prejudiced by

28  such statements.

United States District Court
For the Northern District of California

1    As a general proposition, defendants' objection to cigarette-design evidence is

2  SUSTAINED, based on the court's prior rulings.  The difficulty lies in determining which of

3  the challenged designations and exhibits actually constitute evidence of cigarette design.

4  Some of defendants' objections are meritorious, but others are not.

5    Plaintiff cites to only three of the examples provided by defendants – one excerpt

6  from the Bible trial testimony, the excerpt from the Jupe deposition testimony, and one of

7  the proposed exhibits.  First, with regard to the excerpt from the March 8, 1998 Bible trial

8  testimony (Exh. 17) 5921-5924 (discussing carcinogenicity in relation to nitosamines and

9  other compounds), plaintiff cites a portion of that testimony at 5921-5922, where Mr. Bible

10  is asked whether the notion that hundreds of compounds in smoke may be carcinogenic is

11  "consistent with previous documents we saw of Philip Morris which identified many

12  carcinogens in smoke," to which Mr. Bible responded, "Yes," and then agreed that Philip

13  Morris "had knowledge of that for a number of years prior to 1963."

14    Plaintiff argues that Mr. Bible's testimony is not being offered for cigarette "design"

15  but rather to show defendants' knowledge and concealment of the hazards of smoking.

16  Plaintiff asserts that defendants publicly denied for decades that smoking cigarettes caused

17  cancer, and that this evidence shows that defendants were aware from the early 1960s that

18  cigarette smoking contained many carcinogenic compounds.  Plaintiff contends that this

19  evidence is relevant to the failure-to-warn and concealment claims.

20    The court finds that this discussion of carcinogens in cigarette smoke is not related

21  to cigarette design, but rather to the question whether Philip Morris was aware of the

22  existence of those carcinogenic compounds.

23    Second, with regard to the excerpt of Oct. 5, 2011 deposition testimony of Philip

24  Morris corporate representative Philip Jupe (Exh. 4) (asking Mr. Jupe whether his company

25  hoped that people who were worried about their health would buy low-tar/low-nicotine

26  cigarettes in the belief that they were safer), plaintiff cites to that testimony at 290:19-

27  292:7, including Mr. Jupe's response, which is "We developed low-tar and low-nicotine

28  cigarettes because we did believe we were reducing the risk of cigarette smoking.  Did we

United States District Court
For the Northern District of California

1   market these cigarettes as low tar? Yes we did.  Were they communicated to the

2   consumers as being safer? Not necessarily."  However, the only portion of that testimony

3   that defendants cite is the question itself (not actually Mr. Jupe's response), which is at

4   291:19-22.

5        In any event, plaintiff's argument is that defendants have mis-characterized this

6   testimony as "design" testimony, and that in actuality it relates to Philip Morris' knowledge

7   regarding low-tar/low-nicotine cigarettes.  She asserts that other evidence will show that

8   Philip Morris knew that low-tar/low-nicotine cigarettes were <u>not</u> safer.  She claims that

9   Philip Morris concealed that fact from her, and that Mr. Jupe's testimony demonstrates that

10  defendants allowed plaintiff to believe that low-tar/low-nicotine cigarettes were safer.  She

11  asserts that this evidence is relevant to the failure-to-warn and concealment claims.

12       The question whether particular cigarettes were "low tar" or "low nicotine" certainly

13  implicates cigarette design.  In the case of this particular deposition excerpt, however, the

14  issue is whether Philip Morris hoped that its customers would buy particular cigarettes

15  (designated "low-tar, low-nicotine") in the belief that they were safer.

16       Third, with regard to the September 18, 1963 letter from Brown & Williamson (part of

17  Exh. 19), discussing at some length the impact of nicotine and sugar on quality, and how

18  to vary the levels of each "to win consumer preference for our brand," and which states that

19  nicotine in cigarettes "positively correlated with smoker response," plaintiff argues that she

20  intends to use this letter to show defendants' knowledge regarding why users of cigarettes

21  continue to smoke.

22       According to plaintiff, defendants intend to argue that she could have quit smoking at

23  any time, and that the only reason she didn't is that she wanted to continue to smoke.  She

24  claims that if she had been able to quit sooner she might not have developed lung cancer,

25  and she intends to argue that "smokers response" is part of the reason she did not quit

26  earlier.  She asserts that defendants knew as early as 1963 that smoking was addictive,

27  and that it would be hard to quit.  She argues that this evidence is relevant to the failure-to-

28  warn and concealment claims.

United States District Court
For the Northern District of California

1    This document clearly appears to involve issues of cigarette design, as it talks (in a

2  round-about way) about what combination of sugar and nicotine would cause smokers to

3  prefer "our brand" over others.  Thus, it will be EXCLUDED on that basis.  (Moreover, what

4  plaintiff refers to as "smokers response" appears to be another term for "addiction" – which

5  cannot be claimed as an injury in this case.)

6         6.    Evidence regarding non-lung cancer conditions

7    Defendants claim that plaintiff has included some evidence regarding non-lung

8  cancer conditions, in violation of prior orders.  This, according to defendants, includes

9  evidence regarding diseases other than lung cancer, and evidence regarding addiction.

10  Defendants argue that any evidence that cigarettes cause any injury other than lung

11  cancer should be excluded consistent with the court's ruling on the motion in limine (Doc.

12  337).

13    As examples of this type of evidence, defendants cite one excerpt from deposition

14  testimony of Peter Lipowicz (Schreck Decl. Exh. 6); three excerpts from deposition

15  testimony of Sir Richard Doll (id. Exh. 8); one excerpt from deposition testimony of

16  Christopher Cook (id. Exh. 20); one excerpt from deposition testimony of Walker Merryman

17  (id. Exh. 21); and one excerpt from deposition testimony of James Figlar (id. Exh. 22).  In

18  addition, defendants cite excerpts of their responses to written discovery stating that

19  smoking causes diseases other than cancer, excerpts of testimony of plaintiff and her

20  family members regarding her addiction to cigarettes, and an RJR advertisement

21  discussing heart disease.

22    As examples of evidence relating to addiction, defendants cite plaintiff's designations

23  of written discovery, excerpts from deposition testimony of Richard Jupe, Jeff Gentry, and

24  Jeanne Bonhomme (Schreck Decl. Exhs. 4, 16, 18), plus one document discussing the

25  physical effect of nicotine (id. Exh. 23), as well as statements by plaintiff's counsel at the

26  July 12, 2013 hearing to the effect that "our causation claim" is that "Nikki Pooshs was

27  addicted to cigarettes."

28    As a general proposition, the court will SUSTAIN objections to evidence of injuries

United States District Court

For the Northern District of California

1   other than lung cancer allegedly caused by smoking cigarettes, based on prior rulings.  As

2   with the objections to evidence of cigarette design discussed above, the difficulty lies in

3   determining which of the challenged designations and exhibits actually constitute evidence

4   of injuries other than lung cancer.  Here, some of defendants' specific objections are

5   meritorious, but others are not.

6       In her response, plaintiff addresses only the issue of "non-lung cancer conditions,"

7   not the issue of addiction.  As for defendants' examples of improper evidence regarding

8   "non-lung cancer conditions," plaintiff addresses only four (three deposition excerpts and

9   one document), and in two instances, refers to deposition excerpts that are not included in

10  defendants' objections.

11      First, with regard to the excerpt from the Oct. 12, 2011 deposition testimony of Peter

12  Lipowicz (Exh. 6), defendants cite 118:19-119:6 and 119:9-12 (asking with regard to the

13  Surgeon General's report whether it reported that cigarette smoking is one of the most

14  common causes of chronic bronchitis or COPD, to which Mr. Lipowicz answered "Yes;" and

15  asking whether there wasn't also a connection between smoking and other types of cancer

16  (but not specifically mentioning lung cancer), to which Mr. Lipowicz responded that "there

17  were studies that showed that – yes" but that "they hadn't concluded it yet as being enough

18  evidence").

19      Plaintiff cites the deposition at 118:19-120:6-10, which goes well beyond the portion

20  cited by defendants in their objections, and includes (at 120) a question as to whether "your

21  executives over the years continued to issue statements saying that there was no proof or

22  that the proof was insufficient that cigarette smoking caused lung cancer or any other

23  disease."  (Oddly, plaintiff does not cite Mr. Jupe's response, just the question.)  Plaintiff

24  claims that her designation does not focus on non-lung cancer conditions, but rather

25  demonstrates how defendants concealed information from her, and thus is relevant to her

26  failure-to-warn and concealment claims.

27      Plaintiff's comments are partially non-responsive, as she is including a portion of the

28  testimony that is not in the excerpt cited by defendants.  With regard to the portion that

United States District Court

For the Northern District of California

1    defendants do cite, there is no mention of lung cancer, but there is mention of other

2    diseases including other types of cancer.  On balance, the court finds that it should be

3    EXCLUDED.

4         Second, with regard to the excerpt from the July 15, 1997 deposition testimony of

5    Walker Merrryman (Exh. 21), defendants cite 147:1-148:6 (inquiring as to whether the

6    Tobacco Institute has ever sponsored research on cigarettes and cancer or on cigarettes

7    and heart disease, arterial sclerosis, stroke, emphysema, or COPD).  However, in her

8    response, plaintiff cites a wholly different excerpt – 148:7-15, 149:8-24 (asking more

9    general questions re whether the Tobacco Institute has ever sponsored research on the

10   "health risks" of smoking cigarettes or ever issued publications on "smoking and health" at

11   any time from the 1960s to the mid-1980s).

12        Plaintiff asserts that "other evidence" shows that the Tobacco Institute was

13   defendants' "agent," and that this testimony (referring to above cited deposition excerpts)

14   demonstrates that despite their numerous public assurances, defendants never funded or

15   sponsored any studies designed to determine whether or not smoking caused lung cancer.

16   She claims that defendants concealed the fact that any studies they funded were designed

17   to disprove the causal link between smoking and lung cancer, which she asserts is relevant

18   to the failure-to-warn and concealment claims.  Given that plaintiff is referring to a portion of

19   the Merryman testimony to which defendants appear not to have objected, these

20   comments are non-responsive.  However, the fact that the testimony refers to diseases

21   other than lung cancer does not mean that it must be excluded, as it also refers to cancer.

22        Third, with regard to the excerpt from the August 17, 2011 deposition testimony of

23   RJR representative Christopher Cook (Exh. 20) (757:7-17) (inquiring whether Brown &

24   Williamson admitted prior to 1999-2000 that cigarette smoking was a cause of lung cancer,

25   emphysema, heart disease and other diseases, and asking whether or not it was true that

26   prior to that time, defendants denied there was sufficient evidence that cigarette smoking

27   was a cause of lung cancer, emphysema, heart disease, and other diseases), plaintiff

28   contends that in this testimony, defendants are attempting to justify their concealment of

United States District Court

For the Northern District of California

facts, by claiming that their public statements were technically correct, because there was no causal link between smoking and lung cancer, in that science demonstrated association and risks but not causation.  Plaintiff contends that this is the heart of her claim that defendants disclosed some facts while at the same time failing to disclose other important facts.

This testimony does refer to lung cancer, among other diseases.  The court finds that it cannot be excluded simply on the basis that it also mentions other diseases.

Fourth, with regard to the pre-1987 RJR publication "Of Cigarettes and Science" (provided as Exh. D to the Declaration of Jason Rose, filed by plaintiff), defendants describe this as an "advertisement," and plaintiff describes it as a "publication."  It discusses only the question whether science has demonstrated a causal connection between smoking cigarettes and heart disease.

Plaintiff argues that this publication is another example of defendants' "active concealment of the causal link between cancer and smoking."  She acknowledges that this publication "also addresses an association between smoking and heart disease," but states that she "does intend" to use the advertisement for the purpose of presenting non-lung cancer conditions, and intends to use it to show what defendants knew about smoking and lung cancer.  She claims this document is relevant to her failure-to-warn and concealment claims.

The proposed exhibit does not reference lung cancer, only coronary heart disease.  Thus, it will be EXCLUDED.

7.   Candy cigarettes

Defendants contend that plaintiff has improperly included evidence of "candy cigarettes."  As examples, defendants cite two documents from 1953 that are on plaintiff's "will use" exhibit list – one that mentions chocolate cigarettes made for children and one that mentions candy cigarettes for children (Schreck Decl. Exh. 24).  Both documents are primarily concerned with the subject of marketing Philip Morris cigarettes by appearances

17

United States District Court

For the Northern District of California

1   by "Johnny Jr." at department stores.[1]

2       In response, plaintiff argues that she understands the court's ruling and does not

3   plan on introducing underline evidence of candy cigarettes.  However, she believes that defendants

4   are attempting to "inflame" the court by representing evidence as candy cigarette evidence

5   when it is not.  She claims that these two exhibits are not candy cigarette evidence, but

6   rather are "youth marketing" evidence.  Plaintiff started smoking when she was 13, and she

7   notes that the court denied defendants' motion to exclude "youth marketing" evidence.

8       Plaintiff is willing to redact the reference to chocolate cigarettes and candy

9   cigarettes, and claims that defendants have agreed.  Thus, plaintiff argues, there is no

10  dispute here.  Moreover, she asserts, the documents are relevant to "youth marketing."

11      If it is true that defendants have no objection to these documents assuming the

12  chocolate cigarettes and candy cigarettes references are redacted, then defendants'

13  objection is moot.

14          8.    BATCo documents

15      Defendants argue that plaintiff has improperly included BATCo documents in her

16  exhibit list.  They assert that because the court granted defendants' motion in limine to

17  exclude a 1984 BATCo document (Doc. 289), additional documents generated by BATCo

18  should also be excluded on the same basis.  Defendants cite two examples (Schreck Decl.

19  Exhs. 50-51).

20      In response, plaintiff argues that defendants have misrepresented the scope of the

21  prior ruling, and have made no attempt to discuss the two exhibits at issue.  Moreover, they

22  assert, one of the documents (Exh. 51) was not even authored by BATCo.

23      The objection to these two documents is OVERRULED.  Exhibit 50 is not legible, so

24  it could not be presented to a jury in any event.  As for Exh. 51, the court has no idea what

25  it is, and defendants provide no explanation other than that it is a BATCo document.

26  Plaintiff claims that it was not even authored by BATCo.

27  _____

28      [1]  In a prior filing, plaintiff stated that Johnny Jr. was less than four feet tall, and acted
    as a "spokesperson" for Philip Morris for 40+ years, starting in the 1930s.

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9.      Prior testimony of Robert K. Heimann

Defendants assert that plaintiff has included prior testimony of Robert K. Heimann, in violation of prior orders (citing Doc. 337).  The only example defendants have provided is plaintiff's designation of excerpts of videotapes of Mr. Heimann's testimony.  In response, plaintiff withdraws the designation.  Defendants' objection is SUSTAINED.

10.      Untimely designated additional evidence

Defendants contend that plaintiff has "untimely designated additional evidence" in violation of court orders.  Defendants' position is that because the original deadline for plaintiff to identify proposed trial evidence was November 1, 2012 (per Doc. 157), plaintiffs' subsequent new designations, submitted on June 19, 2013, September 3, 2013, November 1, 2013, and May 21, 2014, should be stricken as untimely.

Defendants contend that plaintiff's untimely designation of new material has stymied their efforts to resolve disputes and prepare for trial.  The only examples they cite are an excerpt from the October 5, 2011 deposition transcript of Richard Jupe, which they claim violates the order barring post-1987 evidence, and three new "composite exhibits" added on May 22, 2014.

In response, plaintiff argues that the new designations were not untimely, because the status of the case has changed since November 2012.  The court granted additional summary judgment motions and issued rulings on the scope of plaintiff's claims.  In addition, she asserts, there is currently pending an Offer of Proof on the concealment claims, the ruling on which will likely further change the case.

Moreover, plaintiff asserts, the deposition excerpt cited by defendants was in the original designation, and at least one of the composite exhibits was simply labeled differently when it was previously submitted.  (She says nothing about the other two.)

As an initial matter, the May 21, 2014 designations have already been stricken, so to the extent that anything new was added there, it is no longer present.  Second, the submissions on the other dates were authorized by the court, although plaintiff was certainly not given leave to add new designations.  The objection as posed is

19

United States District Court
For the Northern District of California

1  OVERRULED.

2      11.    Evidence re advertising and promotion after July 1, 1969

3      Defendants acknowledge that when they sought to have excluded all affirmative

4  statements and advertisements, based on the court's having dismissed plaintiff's affirmative

5  misrepresentation claim, the court overruled that categorical objection, noting that the prior

6  ruling did not preclude the admissibility of affirmative statements or advertisements that

7  predate the immunity period, assuming some relevance to the concealment claim (Doc.

8  337).

9      Now, however, defendants argue that plaintiff has improperly included "evidence

10  regarding advertising and promotion after July 1, 1969."  This is a somewhat different

11  issue, as it relates to Labeling Act preemption.  Defendants cite as examples two excerpts

12  of deposition testimony by Jeanne Bonhomme, and three exhibits (out of what they claim

13  are "thousands" of exhibits that are either advertisements or documents that relate to

14  marketing and promotional activities).

15      In response, plaintiff asserts that preemption does not apply to the state law

16  concealment claim.  She argues that part of the reason she started smoking and continued

17  to smoke was because of advertising and promotion.  She contends that even if post-1969

18  advertisements and promotions are not admissible to prove concealment, they "could be"

19  admissible – "assuming a proper foundation is laid" – to prove "why plaintiff continued to

20  smoke."  She claims that this evidence is relevant to her failure-to-warn and concealment

21  claims based on a duty not to deceive, and that Labeling Act preemption does not apply to

22  a state law concealment claim based on duty not to deceive (as the court previously ruled

23  in the Third Final Pretrial Order (Doc. 337)).

24      The objections are SUSTAINED in part and OVERRULED in part.  Contrary to

25  plaintiff's ongoing argument, it is not true that preemption does not apply to any aspect of

26  her concealment claim.  See, e.g., Order re Plaintiff's Offer of Proof.  Thus, plaintiff may not

27  present evidence in the form of post-1969 advertisements and promotions to support her

28  claim that defendants concealed the health risks of smoking, because such a claim is

preempted by the Labeling Act.  There is nothing that precludes plaintiff from arguing generally that she started smoking and/or continued to smoke because she was persuaded to do so by defendants' advertising, but she cannot argue that those advertisements or promotions were fraudulent because they concealed the health risks of smoking.

12.   Evidence re brands plaintiff never smoked and brands made by non-party manufacturers

Defendants argue that plaintiff has improperly included "evidence regarding brands [p]laintiff never smoked and brands made by non-party manufacturers," including hundreds of advertisements for brands produced by non-parties, as well deposition testimony by plaintiff regarding cigarettes she smoked at one time but later stopped smoking because she found them too strong.  As examples, in addition to the advertisements (Schreck Decl. Exhs. 52, 26) defendants cite an excerpt from the deposition testimony of Jeanne Bonhomme (Schreck Decl. Exh. 14).

In response, plaintiff claims that evidence regarding brands she did not smoke and brands manufactured by non-parties is relevant, but she does not clearly explain why.  She asserts that her entire smoking history is at issue, and it is likely that she used some cigarettes manufactured by non-defendants (an understatement, given that there were originally 22 defendants, most of which were cigarette manufacturers).  She also argues that because she must show that defendants' product had risks that were known or knowable, defendants' research regarding brands other than their own is relevant to her failure-to-warn and concealment claims.

Defendants' objections are SUSTAINED.  The court has previously ruled that plaintiff may not introduce evidence of cigarettes manufactured by tobacco companies that are not defendants in this case.

13.   Evidence of advertising and statements plaintiff could not have seen

Defendants contend that plaintiff has improperly included "evidence of advertising and statements [p]laintiff could not have seen."  This includes thousands of advertisements published years before plaintiff was born in 1941, advertisements that give

21

United States District Court

For the Northern District of California

1  no indication when or where they were published, and press releases that were not

2  available to the general public, including plaintiff.  As examples, defendants cite numerous

3  advertisements (Schreck Decl. Exhs. 30-37), plus press releases from Hill & Knowlton, the

4  Tobacco Institute, and the Tobacco Industry Research Committee (Schreck Decl. Exhs. 27-

5  29), claiming there is no evidence that plaintiff ever saw any of them.

6      In response, plaintiff argues that the court has already overruled defendants' motion

7  in limine to exclude reference to defendants advertising and marketing, including alleged

8  youth marketing (Doc. 289).  She asserts that advertisements and public statements have

9  "independent relevance" regardless of whether plaintiff saw them.  For example, one of the

10  H&K press releases cited by defendants (PTO2446) presented the position of the tobacco

11  companies (including Philip Morris and RJR) in March 1965 regarding the Labeling Act, and

12  asserted that it was unproven that smoking caused lung cancer.  Plaintiff claims that while

13  she may not remember the specific document, she does remember defendants "conduct."

14  She asserts that this document "demonstrates" that conduct.

15      The second document that plaintiff addresses is PTO 2556 – the "Frank Statement,"

16  a press release that was sent out on January 4, 1954.  The court previously denied

17  defendants' motion in limine to exclude the Frank Statement, finding that it was arguably

18  relevant to the concealment claim.  Doc. 289.  Plaintiff complains that defendants are once

19  again asking the court to reconsider its prior rulings.

20      Finally, plaintiff argues that it would be unfair to exclude advertisements and other

21  documents just because she never saw them, because defendants' exhibit list is loaded

22  with documents she never read or saw.

23      The objection is SUSTAINED in part and OVERRULED in part.  Certainly

24  advertisements that predate 1941 cannot be used to support a concealment or failure-to-

25  warn claim brought by someone who was born in 1941.  However, the court is not

26  persuaded that all the advertisements should be excluded for the primary reason argued by

27  defendants – simply because plaintiff did not see them.  As for the press releases, to the

28  extent they were issued post-1941 and plaintiff can show that they reflect the public

22

United States District Court

For the Northern District of California

1    position of defendants, they are arguably relevant.

2         14.    "Youth marketing" evidence

3         Defendants assert that certain examples of "'youth marketing' evidence" should be

4    excluded.  They acknowledge that the court previously denied their motion in limine to

5    exclude advertising including "youth marketing" advertising, but argue that certain

6    deposition testimony and exhibits are inadmissible because they relate to a period of time

7    after plaintiff was no longer a minor, and thus not available as target for "youth marketing."

8    As examples, defendants cite numerous excerpts of deposition testimony of Jeanne

9    Bonhomme (Schreck Decl. Exhs. 14, 38), as well as excerpts of deposition testimony of

10   Walker Merryman (id. Exh. 39), and James Figlar (id. Exh. 40), along with four documents

11   that are dated after the time when plaintiff was a minor (Schreck Decl. Exhs. 53, 41-43).

12        In opposition, plaintiff notes that the court already denied this motion when it was

13   made as a motion in limine.  She also contends that this new argument – that some of the

14   advertisements that targeted youth were published in the years after she reached her

15   majority – is overbroad, because in her view, it is relevant to show that defendants likely

16   practiced that same behavior when she was a youth.  She does not address any of the

17   cited deposition excerpts, but does note that at least one of the documents cited by

18   defendants (PTO1233 – Exh. 53), while dated in the 1970's, discusses youth marketing

19   plans or projects back in the 1950s.

20        The objection is OVERRULED.  The court has already ruled that evidence relating to

21   youth marketing will not be excluded.  (Doc. 289).  Defendants previously made a similar

22   argument – that most of the youth marketing evidence was created after plaintiff had

23   reached the age of majority – and the court will not revisit the issue at this point.

24        15.    Advertisements purportedly showing cigarettes as "attractive or glamorous"

25        Defendants contend that plaintiff's counsel state they intend to show "one or two

26   ads" from a "composite exhibit" that includes more than 350 separate advertisements, all of

27   which plaintiff claims show smoking cigarettes as "attractive or glamorous."  Defendants

28   argue that most of these advertisements should be excluded based on the above

United States District Court

For the Northern District of California

1  objections, but also complain that plaintiff has stated she might use "one or two" of the

2  advertisements in a composite exhibit, but has not indicated which ones those might be.

3      In response, plaintiff notes that the court previously denied defendants' motion in

4  limine to exclude advertisements.  She also argues that defendants have provided no legal

5  basis to exclude this category of advertisements, and have not attempted to show how they

6  will be prejudiced if this evidence is presented to the jury.  She contends that

7  advertisements are essential to show why she started smoking and continued to smoke.

8      The objection is OVERRULED.  Defendants have not met their burden of showing

9  that an entire category of exhibits should be excluded.  In addition, however, the court

10  notes that it is unable to rule on the admissibility of a category of exhibits without viewing

11  some representative examples.  Here, defendants have included four advertisements for

12  "Kensitas" cigarettes (Schreck Decl. Exh. 44) – a brand with which the court is unfamiliar.

13  The advertisements do not include any indication that the cigarettes were manufactured by

14  Philip Morris or RJR.  The court has already ruled that plaintiff may not introduce evidence

15  relating to cigarettes manufactured by tobacco companies other than Philip Morris or RJR.

16      16.  <u>Objections to witness list</u>

17      Defendants claim that in a recent submission, plaintiff asserts that Dr. Farone will

18  testify regarding his "awareness" of Philip Morris' knowledge and the motivations behind

19  Philip Morris' conduct, and also states that he will testify regarding RJR's "knowledge" and

20  motivation.

21      Defendants object to this designation, noting that the court previously ruled that no

22  witness may testify as to the "intent" of the tobacco companies unless the witness wrote the

23  document at issue and is testifying about his/her intent at the time the document was

24  written.  (Doc. 289).  In addition, they note, the court found that while Dr. Farone could

25  testify regarding what he witnessed while employed by Philip Morris, he was not qualified to

26  testify about what Philip Morris "understood" about cigarette design at any time, and was

27  not qualified to testify about RJR because he never worked there.  (Doc. 229).

28      Defendants also object to plaintiff's description of the proposed testimony of Dr.

United States District Court

For the Northern District of California

1   Smith and Dr. Horn, on the basis that the court has already excluded some of the proposed

2   testimony.

3       In response, plaintiff asserts that defendants' objections to plaintiff's witness list is "a

4   waste of . . . time."  Plaintiff does not respond to defendants' argument about the Farone

5   designation.  Instead, she focuses on her description of Dr. Horn's proposed testimony re

6   his diagnosis of plaintiff's "lung cancer and related diseases," asserting that defendants

7   want the designation changed to read simply "lung cancer."

8       This type of nonsensical dispute is barely worthy of comment.  Certainly the

9   defendants' objection does not relate to a "category" of evidence.  The court will say only

10  that it has already ruled as to what Dr. Farone may and may not testify to (Docs. 229, 289),

11  has already ruled that Dr. Smith may not opine that smoking caused plaintiff's lung cancer

12  (Doc. 288), and has already ruled that plaintiff may not present evidence of injuries other

13  than lung cancer (Doc. 337).

14          17.     Objections to exhibit list

15      In addition to the above objections, defendants argue that plaintiff's exhibit list

16  contains improper composite exhibits, and that plaintiff has included "history books"

17  regarding smoking, which they contend should be excluded as prejudicial.  The arguments

18  regarding the composite exhibits are set forth above, at 3.

19      With regard to the "history books," defendants assert that these books were written

20  by anti-tobacco advocates and are purportedly based on "tobacco industry" documents.

21  Defendants list four of these exhibits and object to them on the basis that they contain

22  multiple hearsay without exception, are prejudicial, and advocate a total ban on tobacco, a

23  position that is at odds with established Congressional policy.

24      In response, plaintiff contends that she does not plan on introducing entire books

25  into evidence, but rather intends to use excerpts from the books to question experts and

26  defendants' corporate witnesses.  She says she requested exhibit numbers for ease of

27  "working with the book" at trial, and also to give defendants some "advance notice" of the

28  materials she plans on using at cross-examination.  She reiterates that no evidence will be

25

1   introduced at trial without a stipulation by the parties or the laying of a proper foundation.

2       If plaintiff does not intend to seek to have these books admitted into evidence, they

3   do not belong on the exhibit list.

5   **IT IS SO ORDERED.**

6   Dated:  December 2, 2014

_____

PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California