UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKKI POOSHS,<br><br>    Plaintiff,<br><br>    v.<br><br>PHILIP MORRIS USA, INC., et al.,<br><br>    Defendants. | Case No. 04-cv-1221-PJH<br><br>**ORDER OVERRULING PLAINTIFFS' OBJECTIONS TO CERTAIN TESTIMONY OF DEFENDANTS' EXPERT DR. CHIRIEAC** |

On February 2, 2016, Day 10 of the trial of this action, shortly before plaintiff rested her case, plaintiff's counsel advised the court that plaintiff objected to certain testimony that defendants planned to offer through one of their expert witnesses – Lucian Radu Chirieac, M.D., a pulmonary oncologic pathologist who is affiliated with Brigham and Women's Hospital in Boston. Dr. Chirieac issued his original expert report on January 5, 2012, and issued a supplemental report on August 24, 2012.

Plaintiff's counsel has asserted objections "to new opinions that are not limited to [Dr. Chirieac's] Rule 26 report." Counsel stated that the court had "excluded, for example, Dr. Hammar, at the defendants' urging, from referencing any new opinions based on any subsequent work and review of documents" and asserted that "we now want to make sure that that applies in fairness to their experts as well." Transcript of Proceedings, Feb. 2, 2016, at 1933. Counsel added that "the problem" is "the supplemental report where [Dr. Chirieac] changes and offers new opinions." Id. at 1934.

1  Counsel claimed that "[w]e were advised last night by [defendants' counsel] Mr.
2  Geise that he intends to offer those new opinions that are not in original Rule 26 report."
3  Id. He also claimed that he did not know that Dr. Chirieac was going to testify as to his
4  original opinion supplemented by the August 24th report until he heard defendants'
5  counsel refer in his January 19, 2016, opening statement to the opinions presented in the
6  August 24th report. Id. at 1934-35. Counsel asserted that "[w]e have no objection to him
7  testifying as to anything in his original report, but he changes and offers new opinions in
8  the supplemental report that are not anywhere in the original report." Id. at 1935.
9  Counsel added that "[he] can testify, Dr. Chirieac, that there was subsequent pathology
10 testing and that he's reviewed it . . . but he can't change his opinions in the supplemental
11 report." Id. at 1935-36.

12 The plaintiff's objections are OVERRULED, for the following reasons. First, the
13 order granting RJR's motion in limine to exclude testimony and opinions of Dr. Hammar
14 regarding the supplemental pathology testing does not apply to the supplemental
15 opinions of Dr. Chirieac. In January 2008, the parties entered into a written stipulation
16 regarding release, testing, and sharing of pathology (Doc. 257-2). In March 2008, the
17 parties entered into an written addendum to the pathology stipulation (Doc. 257-3), in
18 which they agreed (among other things) that "[n]o pathology testing shall be conducted
19 by the side proffering the pathology expert after that expert's deposition without the
20 express agreement of the parties or leave of court["] and that "[a]ny testing in violation of
21 this paragraph, or testimony about such testing, will be excluded from evidence."

22 Plaintiff's only disclosed pathology expert is Dr. Hammar, who issued his expert
23 report in this case on November 14, 2011, and an addendum report on April 9, 2012.
24 Defendants deposed Dr. Hammar on May 2, 2012. On July 19, 2012, Dr. Hammar
25 issued a "supplemental" report, in which he referred to additional pathology testing
26 ordered by plaintiff's counsel, which had been conducted on May 9, 2012. In its Motion in
27 Limine No. 1, RJR moved, pursuant to the parties' stipulation, to preclude the introduction
28 of evidence stemming from testing conducted by plaintiff after her pathology expert was

2

1  deposed.

2  At the November 29, 2012 hearing, the court stated, "[C]learly . . . there would be
3  a violation [of the stipulation] if Hammar were to testify, but I won't preclude other
4  witnesses on that subject."  Transcript of Proceedings, Nov. 29, 2012 (Doc. 287) at 29.
5  In the follow-up written order, the court ruled that "[d]efendant R.J. Reynolds Tobacco
6  Company's first motion in limine to exclude evidence precluded by the pre-trial stipulation
7  is GRANTED.  Dr. Hammar will not be permitted to testify regarding the supplemental
8  pathology testing, but other witnesses who were deposed after the supplemental testing
9  may testify on this subject."  Preliminary Final Pretrial Order (Doc. 289) at 5.

10  In his initial Rule 26 expert report, Dr. Chirieac opined that plaintiff "developed a
11  lung cancer induced by an activating mechanism in the epidermal growth factor receptor
12  (EGFR) gene . . . that is unrelated to smoking."  He provided several reasons to support
13  his opinion that plaintiff has an EGFR-mutated cancer – e.g., good response to Tarceva
14  (therapy most useful for EGFR-mutated cancers); very long survival since diagnosis;
15  pathology showing "minimally invasive" adenocarcenoma with predominantly lepidic
16  (BAC) and papillary features (typical of EGFR-mutated cancers); family history of cancer;
17  and long period between cessation of smoking and cancer diagnosis.  He also stated that
18  "[a]dditional pathology may become available" – including tissue samples of the right
19  adrenal gland – and that he "reserve[d] the right to review those slides and supplement
20  this report."

21  As set forth by plaintiff in the opposition to RJR's Motion in Limine No. 1 (Doc.
22  280), plaintiff's counsel ordered further pathology testing in May 2012.  The report
23  indicated that the testing had detected no EGFR mutation, was negative for a
24  rearrangement involving the ALK gene by FISH, and no KRAS mutations.  On May 30,
25  2012, Dr. Barry Horn, plaintiff's disclosed pulmonology expert, submitted a supplemental
26  report in which he discussed the results of the May 2012 testing, and noted that Dr.
27  Hammar had indicated he disagreed with Dr. Chirieac's opinion.  Plaintiff's counsel
28  forwarded the supplemental Horn report to defendants' counsel, and stated that they

intended to take Dr. Chirieac's deposition.  Defendants' counsel advised plaintiff's counsel that Dr. Chirieac would be submitting a supplemental report.  As of August 20, 2012, plaintiff had not deposed Dr. Chirieac but counsel indicated that they would do so after they received the supplemental report.

On August 24, 2012, Dr. Chirieac filed the supplemental report.  He stated that he had reviewed additional materials, including additional right adrenal gland pathology slides; the depositions of plaintiffs' experts Drs. Horn and Hammar; the results of additional tests ordered by plaintiff's counsel; EGFR gene sequencing test results; IHC stains for HER2 protein; and numerous additional medical records.  He stated that the review of the right adrenal gland slides "demonstrated a carcinoma with similar morphological pattern as in the left adrenal gland" – a "metastatic papillary adenocarcinoma" and that an immunostain for TTF-1 was performed and was "positive on the tumor cells."

Dr. Chirieac stated that after he had reviewed the tests ordered by plaintiff's counsel, which tests reported no detected activating mutation in the EGFR gene, no mutations in the KRAS gene, and no ALK arrangements, he ordered a more comprehensive test for detecting EGFR mutations by Sanger gene sequencing, and stated that those tests were also negative.  He opined that "[i]n light of these test results, Mrs. Pooshs most likely does not have a known activating EGFR mutation."  He stated further that he had reviewed the fluorescence in situ hybridization (FISH) test results for ALK abnormalities, indicating that plaintiff did not have ALK rearrangements, as well as the PCR test results reporting the absence of any KRAS mutations.  He noted that KRAS genes are the most common driver mutations inducing lung carcinoma, and that while EGFR mutations are most commonly found in persons who have never smoked cigarettes, KRAS mutations are almost entirely limited to lung cancers in smokers.

Dr. Chirieac concluded that while he had not been able to elucidate the specific genotype of plaintiff's tumor, he was able to provide an opinion regarding the phenotype of her cancer.  He claimed that plaintiff's lung cancer progression pathway is "most likely

4

characteristic of non-smoking induced lung cancers," which theory he stated is supported by various studies, as well as by plaintiff's social and family history.

On February 2, 2016, defendants' counsel stated that plaintiff's counsel "had an opportunity to depose Dr. Chirieac" and that "a deposition was scheduled, and then plaintiff's counsel canceled the deposition." Feb. 2, 2016 Tr. at 1936-37. "[T]hey did not depose him, nor did they ever come back to us and say, 'We want to depose him' or anything else." Id. at 1937. Plaintiff's counsel conceded that plaintiff had not deposed Dr. Chirieac. Id. at 1945. The ruling as to Dr. Hammar was based on the parties' stipulation, which clearly does not apply to Dr. Chirieac, as Dr. Chirieac was never deposed.

A second basis for overruling plaintiff's objections is that they are entirely untimely. Plaintiff's counsel's claim that he was unaware until the night before he posed the objections that defendants planned on having Dr. Chirieac testify as to the opinions in both his original and supplemental reports flies in the face of evidence and logic. On Friday, January 29, 2016, Day 8 of the trial, the court discussed scheduling with the parties at the conclusion of the day's testimony. Plaintiff's counsel advised the court that "I've alerted defense counsel already that we may get to their case-in-chief . . . Tuesday or perhaps even late Monday." Transcript of Proceedings, Jan. 29, 2016, at 1567. Defendants' counsel responded, "Based on where we left the Court yesterday, our understanding is we wouldn't get to our case until Tuesday at the earliest." Id. Counsel then added that defendants would "work to make sure he's here on standby on Monday[,]" and noted that "[h]e's coming from Boston" and is "going to need to get on a plane Sunday if he needs to be here Monday. Id. at 1568.

Moreover, during the long and winding pretrial process, defendants filed no fewer than five witness lists prior to the commencement of trial. In their first witness list, filed on November 1, 2012 (Doc. 249), defendants described Dr. Chirieac's proposed testimony, and while they did not specifically reference the supplemental report, it is clear from the description that the proposed testimony is based at least in part on the opinions in the

1  supplemental report.  This trial witness list was followed by at least four subsequent lists.

2  On October 17, 2013, defendants filed an "Amended Joint Witness List" (Doc.
3  349).  In this list, defendants set forth Dr. Chirieac's qualifications and provided a
4  relatively lengthy description of the substance of his proposed testimony, which includes
5  the opinions he expressed in the supplemental expert report dated August 24, 2012.  On
6  January 15, 2015, defendants filed an "Identification of Operative Joint List of Trial
7  Witnesses" (Doc. 400) which again lists Dr. Chirieac, with a description of his
8  qualifications and the substance of his proposed testimony, similar to the description in
9  the October 17, 2013 list.  On April 1, 2015, defendants filed a "Final Joint List of Trial
10 Witnesses" (Doc. 417), again providing a description of his qualifications and the
11 substance of his proposed testimony.  In this list, defendants also stated that they "expect
12 Dr. Chirieac to testify consistent with his opinions stated in his January 5, 2012, expert
13 report pursuant to Fed. R. Civ. P. 26, as supplemented by his August 23, 2012 expert
14 report."  Finally, on April 17, 2015, at the court's request, defendants filed a list of
15 proposed witnesses (Doc. 423), which consisted of only the names of the witnesses.

16 Thus, plaintiff has been on notice since at least the time of the initial pretrial
17 conference in November 2012 that defendants planned on presenting testimony by Dr.
18 Chirieac based on both his original and his supplemental report.[1]  Nevertheless, plaintiff
19 never posed any objections to the proposed testimony, never sought to have any of the
20 proposed testimony excluded, and never deposed Dr. Chirieac, despite having had an
21 opportunity to do so.  Indeed, in the Sixth Pretrial Order (Doc. 406), which was filed on
22 March 4, 2015, the court summarized the parties' objections to the trial exhibits, witness
23 lists, designations of written discovery, and page/line designations of deposition
24 testimony, and, in ruling on the objections, noted that plaintiff had not objected to

---

[1] Indeed, in the opposition to RJR's Motion in Limine No. 1, filed November 15, 2012, plaintiff asserted that "[e]ven if RJR's interpretation of the stipulation were correct, [p]laintiff should still be able to inquire about the [supplemental] testing during . . . the cross-examination of [d]efendant's pathologist, who reviewed and relied upon the test results in his expert report."  Plaintiff's Oppositions to R.J. Reynolds Tobacco Company's Motions in Limine Nos. 1-8 (Doc. 280) at 5-6.

1 defendants' witness lists.

2     A third basis for overruling plaintiff's objections is that plaintiff's counsel's assertion
3 that Dr. Chirieac can testify that "there was subsequent pathology testing and that he's
4 reviewed it," is inconsistent with the argument that Dr. Chirieac should be precluded from
5 testifying as to the opinions in his supplemental report. In the court's view, it would be
6 impossible for Dr. Chirieac to testify regarding the supplemental testing without also
7 referring to his supplemental opinions.

**IT IS SO ORDERED.**

Dated: February 3, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge