1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9   NIKKI POOSHS,
                                              Case No.  04-cv-1221-PJH
10               Plaintiff,

11         v.                                 **ORDER IMPOSING SANCTIONS ON
                                              PLAINTIFF'S COUNSEL FOR
12   PHILIP MORRIS USA, INC., et al.,         MISCONDUCT DURING TRIAL**

13               Defendants.

14

15

16         The court hereby finds, in the exercise of its inherent power, that imposition of

17   monetary sanctions on plaintiff's counsel Gilbert L. Purcell is warranted because of

18   repeated, willful, and bad faith violation of court orders.

19                                   **BACKGROUND**

20         This case was originally filed in the Superior Court of California, County of San

21   Francisco, on January 13, 2004, and was removed to this court on March 26, 2004.

22   Following two judgments of dismissal, and two reversals and remands by the Ninth

23   Circuit Court of Appeals (both involving resolution of questions of state law, certified to

24   the California Supreme Court), the parties appeared for a case management conference

25   ("CMC") on September 1, 2011.

26         On September 6, 2011, the court issued a revised case management and pretrial

27   order (Doc. 157), setting a four-week trial to commence on January 7, 2013, with a final

28   pretrial conference to be held on November 29, 2012.  The order imposed other pretrial

deadlines, and directed that, no later than 28 days prior to the pretrial conference, the parties file the following:  a joint pretrial statement; trial briefs; motions in limine; deposition excerpts for witnesses who would not be testifying in person (specifying the witness, page, and line references); a list of all witnesses to be called at trial, in person or by deposition, other than solely for impeachment or rebuttal, with a brief statement describing the substance of the testimony to be given; and a numerical list of exhibits to be offered in each party's case in chief in support of a claim or defense, with a brief statement describing the substance and purpose of each exhibit and the name of the sponsoring witness.  Doc. 157 at 3.

On November 1, 2012, the parties filed motions in limine, proposed jury instructions, and lists purporting to identify the witnesses they intended to call and the evidence they intended to use at trial.  In her first pretrial filing, plaintiff designated over 10,000 pages of deposition and trial testimony from 24 witnesses (and for one-third of the witnesses, designated entire volumes of prior testimony); listed 95 responses to requests for admissions from the three defendants remaining in the case at that time; provided an exhibit list including 5,266 entries consisting of 18,751 separate documents; and identified 12 fact witnesses, 7 experts, and 156 "other non-retained witnesses" as trial witnesses.  See Docs. 254, 261-1, 261-3 through 261-7.

On November 29, 2012, at what had originally been scheduled to be the final pretrial conference, the court noted numerous problems with the proposed jury instructions, and also with the number of exhibits on plaintiff's exhibit list, the number of witnesses, and the number of pages of deposition designations for witnesses who would not be testifying at trial in person.  The court rejected plaintiff's witness list and deposition designations as unusable, and ordered plaintiff to revise and resubmit them within a week.  See Doc. 287 at 70-81.  In the December 5, 2012, preliminary final pretrial order, the court stated that it was clear that the previously scheduled January 22, 2013 trial date would have to be vacated and that further pretrial submissions and briefing would be required.  Doc. 289 at 9-14.

United States District Court
Northern District of California

In the revised submissions, plaintiff designated more than 3,000 pages of deposition testimony by 19 witnesses.  In addition, the revised submissions included evidence the court had already excluded as inadmissible in ruling on defendants' motions in limine.  Defendants filed a motion for evidentiary sanctions, and at the February 13, 2013, hearing, the court granted the motion in part and denied it in part.

The court acknowledged that plaintiff had made some effort to reduce the number of witnesses and the pages of designations of testimony, but found more "troubling" the fact that plaintiff had failed to remove deposition designations relating to evidence that the court had previously ruled was inadmissible.  The court ruled that the witness lists were for the most part acceptable, and that while it was clear that plaintiff would not be able to present in excess of 50 hours of deposition testimony at trial, the main problem was plaintiff's inclusion of material that was plainly inadmissible (per the court's prior rulings).  Thus, the court ordered plaintiff to re-do the deposition designations.  Doc. 311 at 11-15.

During approximately the next year and a half, plaintiff made numerous revisions to her pretrial submissions, sometimes pursuant to court order, and sometimes without leave of court, each including excessive amounts of evidence that could not be presented to a jury in the time allotted and that ignored the court's orders limiting plaintiff's evidence and claims.  See Docs. 326, 327, 328-2, 333, 334, 342-344, 346-2, and 361.  In response, defendants filed counter-designations, motions, and objections.  See, e.g., Docs. 295, 330, 332, 347, 357-359.

Between the time she filed the initial papers setting forth the evidence designated for use at trial, and the end of May 2014, plaintiff filed seven different versions of prior-testimony designations, four versions of written-discovery designations, five versions of her witness list, and three versions of her exhibit list.  The court agreed with defendants that plaintiff's proposed evidence was excessive and violated its prior orders, but in the continuing hope that plaintiff's counsel could be made to understand what is required in this court as part of the process of pretrying the case, the court provided

1   plaintiff with numerous opportunities to conform her proposed evidence to the court's

2   rulings.  See e.g.,  Docs. 310, 321, 337, 376.

3          For example, at the pretrial conference held on March 27, 2014, the court once

4   again attempted to convince plaintiff's counsel of the necessity of complying with the

5   rulings and procedures of the court.  See Doc. 378 at 24-27.  In addition, in an attempt to

6   impose some organization on the generalized chaos of the pretrial proceedings, the court

7   directed the parties to prepare a joint list of all the prior rulings, and also to submit

8   categorical objections (with representative examples) to the witness lists, exhibit lists,

9   written deposition designations, and written discovery designations, after which time the

10  court would determine whether to hold a half-day hearing on those objections.  See Doc.

11  378 at 32-39; Doc. 376 at 2.

12         On May 21, 2014, plaintiff filed a seventh version of her prior-testimony

13  designations (over 1,350 pages from nine witnesses), a fourth version of her written-

14  discovery designations, and a fifth version of her witness list.  Docs. 379, 380, 381.  The

15  court had not given plaintiff leave to file any of these documents.  Moreover, the third final

16  pretrial order (Doc. 337) had set a deadline of September 3, 2013, to file revised

17  submissions of evidence.  On May 22, 2014, plaintiff filed a fourth version of her "working

18  'will-use'" exhibit list, which included substantially more than the 250 exhibits plaintiff's

19  counsel had represented were on the list at the March 27, 2014 pretrial conference.

20  Moreover, the "will use" and "may use" versions together comprised more than 19,000

21  exhibits.

22         On May 27, 2014, as ordered by the court, defendants filed their categorical

23  objections.  See Doc. 384.  On June 2, 2014, the court issued an order striking the

24  plaintiff's revised prior-testimony designations, written-discovery designations, and

25  witness lists.  Doc. 387 at 2.  The court also suggested that plaintiff contribute to the

26  categorical objections, but plaintiff declined to do so, although she did respond to

27  defendants' objections by arguing generally that they should all be "overruled."  See Doc.

28  389.  The court ruled on defendants' categorical objections in an order issued on

United States District Court
Northern District of California

1    December 2, 2014.  <u>See</u> Doc. 392.  On January 15, 2015, both sides submitted witness

2    lists, exhibit lists, deposition designations, written discovery designations, and argument

3    regarding proposed jury instructions.  Docs. 396, 397, 398, 399, 400, 401, 402.   On

4    January 30, 2015, both sides filed objections to the submissions.  Docs. 403, 404, 405.

5           On March 4, 2015, the court set the trial for June 1, 2015.  Defendants requested

6    a continuance due to unavailability of counsel.  On April 1, 2015, the parties submitted

7    "final" witness lists, exhibit lists, deposition designations, written discovery designations,

8    and  jury questionnaire, jury instructions, and verdict form.  Docs. 412, 413, 414, 415,

9    416, 417, 418.  The court held a telephone scheduling conference, and set the trial date

10   for September 14, 2015.  Following issuance of the seventh final pretrial order on April 6,

11   2015 (Doc. 421), the parties submitted further revised "final" witness lists, exhibit lists,

12   deposition designations, written discovery designations, and  jury questionnaire, jury

13   instructions, and verdict form.  Docs. 422, 423, 424, 425, 426, 427, 428.  The trial was

14   subsequently continued to January 19, 2016, with jury selection on January 11, 2016.

15          Plaintiff began the trial with a list of 6941 exhibits.  Of those, plaintiff identified 173

16   during the three-week trial, and only 125 were admitted into evidence.

17                    **PRETRIAL RULINGS AND COUNSEL'S BEHAVIOR AT TRIAL**

18          Beginning with the December 5, 2012 preliminary final pretrial order (Doc. 289),

19   and continuing through the March 7, 2015 sixth final pretrial order (Doc. 406), the court

20   repeatedly ruled that certain evidence that plaintiff's counsel sought to introduce was

21   inadmissible, including, <u>e.g.</u>, evidence regarding cigarette design (Docs. 229, 337, 391,

22   392, 406); evidence against the entire tobacco industry or cigarette manufacturers other

23   than Philip Morris and R.J. Reynolds ("RJR"), or evidence regarding effect of smoking on

24   entire populations (Docs. 289, 337, 406); evidence regarding cigarette brands plaintiff

25   never smoked or brands not manufactured and sold by Philip Morris and RJR (Docs. 289,

26   337, 392, 406); evidence concerning plaintiff's smoking-related injuries other than lung

27   cancer (Docs. 337, 392, 406); evidence regarding defendants' post-1987 knowledge,

28   statements, and public positions (Docs. 289, 310, 391, 391, 406); and post-1969

evidence relating to failure to warn, including post-1969 advertising and promotion (Docs. 319, 337, 391).  The court summarized these and other evidentiary rulings in the eighth final pretrial order, issued January 4, 2016 (Doc. 447), which included as an appendix a chart listing all the rulings.

The fact that the court was compelled to issue the same pretrial rulings over and over again was unprecedented in the undersigned's many years of experience on the bench.  More disturbing, however, was the continued effort of plaintiff's counsel Gilbert L. Purcell throughout the trial to seek to elicit testimony or to introduce evidence that clearly violated those rulings.  Initially, as with Mr. Purcell's references in his opening statement to evidence relating to cigarette design, see Tr. at 242-43, 264, or his questions to plaintiff's expert Dr. William Farone relating to evidence of nicotine pharmacology, design features, and causation (subjects about which the court had previously ruled Dr. Farone was not qualified to testify), see Tr. at 453-56, 463-68, 471, 485-86, 501-03, 521-23, 540, 543-44, the court was hopeful that sustaining the defendants' objections and admonishing Mr. Purcell would be sufficient to persuade him to abide by the prior rulings.

Day 1 of the trial, Monday, January 11, 2016, began with jury selection.  Also on Day 1, the court discussed deposition designations and exhibits.  The court expressed astonishment that there had been no stipulations as to the admissibility of a single document.  Trial Transcript ("Tr.") at 203-04.  The court then outlined a procedure for submitting disputed deposition designations and objections to the court the day before they were to be used in the trial.  Tr. at 205; see also Tr. at 613-17, 822-24.

On Day 4 of the trial, Mr. Purcell asked plaintiff's pulmonary expert, Dr. Barry Horn, if he was familiar with chronic obstructive pulmonary disease (COPD) and emphysema, and Dr. Horn responded that he was.  Defendants objected on the basis of the pretrial rulings excluding evidence of plaintiff's smoking-related injuries other than lung cancer.  In response, Mr. Purcell stated that the question was to "address the defendants' objections on the statutes . . . of limitations."  The court allowed that question, but sustained defendants' objection to the follow-up question, which was

6

1    whether COPD/emphysema is "an entirely separate disease response associated with

2    cigarettes than lung cancer."  Mr. Purcell then asked, "Does COPD or emphysema

3    become lung cancer?"  The court also sustained defendants' objection to that question.

4    Tr. at 679-80.

5         Outside the presence of the jury, the court stated, "[T]here's been a very clear

6    ruling that diseases other than lung cancer were excluded from this trial."  Mr. Purcell

7    responded that he needed "evidence in the record that in fact specific to [plaintiff] her

8    COPD and emphysema are entirely separate and distinct diseases from the lung cancer

9    that is now involved in our trial."  He added that if defendants would stipulate, he "need

10   not ask the question any longer."  The court stated that the issue had been resolved in

11   the pretrial rulings, and that  "there is no longer a statute of limitations affirmative

12   defense," and defendants agreed with that characterization.  Tr. at 698-700.

13        On Day 8 of the trial, after the jury was excused for the day, the court took up the

14   matter of defendants' objections to certain exhibits that plaintiff was seeking to have

15   admitted, copies of which had been provided to the court that morning.  Defendants

16   objected to a series of exhibits, one of which (plaintiff's Exhibit 6D04) was a video of an

17   ad for a brand of cigarettes plaintiff never smoked.  Mr. Purcell argued that the exhibit

18   should be admitted because plaintiff recalled having seen it as a teenager, and

19   remembered that it caused her to think it was important to learn how to smoke, how to

20   hold a cigarette, how to do the "French inhale" – in short, that it persuaded her to emulate

21   what she saw in the ad, to become skilled in the "ritual of smoking."  Mr. Purcell asserted

22   that this ad was "particularly unique because it is the springboard into her and her friends'

23   interest in learning how to smoke."  Tr. at 1560-61.

24        Defendants objected because the ad depicted a brand of cigarettes plaintiff had

25   never smoked.  In response, the court noted that "[t]his is not a trial against the entirety of

26   the tobacco industry . . . .  This is a trial against these two defendants, and . . . if they are

27   found liable at all, it can only be for cigarettes that they produced that [plaintiff] actually

28   smoked."  However, Mr. Purcell argued that "there are notions that we have the burden of

7

proving that transcend the defendant brands, concepts of reasonable reliance, concepts of what an ordinary consumer would know, and that ordinary consumer would be a function of other brands, not limited to just the defendants."  The court stated, "I'll give some thought to your argument[,]" but added, "I'm a little concerned about opening the door to the introduction of brands and manufacturers that are not in the case, brands that she didn't smoke."  Tr. at 1562-66.

On Day 9 of the trial, before the jury was seated, the court ruled that Exhibit 6D4 was not admissible, because "the reason proffered by plaintiff's counsel for the use of the exhibit isn't . . . sufficiently compelling to warrant an entire reversal of the pretrial order that has already been entered in the case[;]" and because "the cigarette ads are, in and of themselves, cumulative at this point."  Tr. at 1575-76.  In addition, the court found that permitting the use of such exhibits would amount to "rewarding plaintiff's counsel for what is frankly sanctionable conduct."  Tr. at 1576-77.  The court added, "[I]n reviewing the deposition designations and the exhibits, I've tried to give plaintiff's counsel the benefit of the doubt."  However, the court found, for that particular exhibit, "there is no doubt, there are no fuzzy lines.  The ruling No. 75 says cigarette brands not smoked by the plaintiff, cigarette manufacturers of brands that are not defendants' in this lawsuit are not to be admitted.."  Tr. at 1577-78.

Mr. Purcell asserted that "6D4 is something the plaintiff saw, relied on.  It formed her understanding and interest in using cigarettes."  He added, "I don't agree that there are discrete aspects of this case that lend themselves to rigid adherence to rulings.  We are making a good-faith effort to do all we can to reduce down the amount of exhibits that are necessary to show the witness."  As for Exhibit 6D4, he continued, "[W]e think it would be instructive for the jury to see that video as an appropriate part of our evidence."  Tr. at 1578-79.

The court responded that the fact that Mr. Purcell did not agree with the ruling did not give him "the right to continue to burden [the court] with exhibits that violate the rulings that the [c]ourt has already entered.  Irrespective of whether you agree with them

United States District Court
Northern District of California

or not, you are required to live with them."  The court cautioned Mr. Purcell that "[y]ou may not use exhibits that have been ruled upon previously, period[,]" and that "if you violate that ruling . . . during the course of your client's testimony, there will be sanctions. And I feel compelled to warn you of that because it's very clear to me that you have no interest in complying with orders that I've imposed previously.  This is one that will result in sanctions if you violate it."  Tr. at 1580.

On Day 11 of the trial, during the cross-examination of defendants' pathology expert Dr. Lucian Chirieac, Mr. Purcell attempted to question the witness about a supplemental report prepared by Dr. Sam Hammar, plaintiff's pathology expert (not called at trial as a testifying witness).  Defendants objected on the ground that the court had previously ruled that the supplemental report was not admissible because it was prepared after Dr. Hammar had been deposed, which violated a stipulation among the parties.  Tr. at 2085-86.  Mr. Purcell then turned to questioning Dr. Chirieac about his own expert report.  Specifically, Mr. Purcell asked about Dr. Chirieac's conclusion that plaintiff's lung cancer was not caused by smoking, and about three scientific articles he had cited in his report in connection with that conclusion.

In asking about one of the articles ("Yano"), and a statement in the article that the etiology of lung cancer remains indefinite, although many risk factors have been identified, Mr. Purcell asked Dr. Chirieac whether COPD or emphysema was a risk-factor for smoking-induced lung cancer.  Dr. Chirieac responded, "I don't know about it," although he also agreed that it "co-presents quite often in people."  Mr. Purcell then asked, "And in fact, [plaintiff] has it, correct?"  Defendants' counsel objected, based on the pretrial ruling preluding admission of evidence relating to diseases other than lung cancer caused by smoking.  Tr. at 2124-25.

In response, Mr. Purcell stated that the question did not violate the pretrial order; the court responded that it did violate the pretrial order; Mr. Purcell insisted, "No, it does not;" and the court stated, "Yes, it does."  The court then excused the jury, Tr. at 2125, and Mr. Purcell continued with his argument, asserting that the court's ruling had been

United States District Court
Northern District of California

1   that the evidence was inadmissible only if the plaintiff was seeking damages for diseases

2   other than lung cancer, which he asserted was not the case here.  Tr. at 2125-26.

3           The court asked Mr. Purcell which ruling he was referencing, and noted that (as

4   indicated in the eighth final pretrial order, Doc. 447), the court had previously excluded

5   such evidence in the third final pretrial order, see Doc. 337 (granting RJR's motion in

6   limine No. 2 to exclude evidence of plaintiff's injuries other than lung cancer); in the order

7   re defendants' categorical objections to plaintiff's proposed trial evidence, see Doc. 392

8   (granting request to exclude evidence of plaintiff's injuries other than lung cancer); and in

9   the sixth final pretrial order, see Doc. 406 (sustaining defendants' objection to evidence of

10  injury caused by smoking resulting in diseases other than lung cancer).  See Tr. at 2126-

11  27.  Mr. Purcell was unable to identify the ruling he claimed supported his position.  See

12  Tr. at 2127 ("I would have to have some time to do that").

13          In her opposition to RJR's motion in limine No. 2, plaintiff argued that evidence of

14  COPD and periodontal disease was "necessary and relevant because defendants refuse,

15  as yet, to concede that COPD, periodontal disease, lung cancer are 'separate and

16  distinct' diseases."  Doc. 280 at 7-8.  Plaintiff asserted, "Absent a stipulation . . . that lung

17  cancer is an entirely separate and distinct disease from periodontal disease and COPD,

18  which it is, it is necessary to present this issue and all evidence relevant to its resolution

19  here at trial . . . in order to assure that defendants may not yet again argue that her cause

20  of action for lung cancer is somehow time-barred."  Doc. 280 at 8.

21          On November 29, 2012, at the initial "final" pretrial conference, the court

22  expressed some confusion as to why this was an issue, because the complaint and the

23  briefing up to that point had suggested that the only injury for which plaintiff was seeking

24  compensation was lung cancer.  Doc. 287 at 30.  Defense counsel responded that there

25  appeared to be agreement that any claims of injury based on COPD or periodontal

26  disease were time-barred, but also asserted that defendants did not want plaintiff's

27  counsel to put on evidence of any dismissed or barred claims of injuries other than lung

28  cancer, because it would confuse the jury to hear testimony regarding other injuries.

1  Doc. 287 at 30-31.

2      In  response, Mr. Purcell stated, "If we can agree and stipulate that they are

3  separate and distinct as [defense counsel] just articulated, then plaintiffs have no

4  intention [sic] to need to introduce evidence about that."  Doc. 287 at 33.  The court then

5  directed the parties to enter into a stipulation that the prior conditions were separate and

6  distinct from lung cancer.  "[O]therwise," the court stated, I'm going to deny [the] motion

7  and allow plaintiff to put on evidence."  Defendants' counsel indicated that they would be

8  willing to enter into a stipulation.  Doc. 287 at 33-35.  In the December 5, 2012,

9  preliminary final pretrial order, the court reiterated that in the absence of a written

10  stipulation that COPD and periodontal disease are separate and distinct from lung

11  cancer, the motion would be denied, and plaintiff would be allowed to put on evidence as

12  to other diseases caused by smoking.  Doc. 289 at 6.

13      In a subsequent status statement, filed June 19, 2013, the parties stated that they

14  had attempted to arrive at a stipulation that COPD and periodontal disease are separate

15  and distinct from lung cancer, but were unable to reach an agreement.  Defendants

16  asserted that they remained willing to sign a stipulation, but that plaintiff refused to sign it

17  unless RJR withdrew the motion in limine.  Doc. 323 at 11-12.

18      Plaintiff argued that "[t]he concurrent diagnosis of separate clinical disease

19  responses, such as COPD and periodontal disease, or not, in a smoker, according to

20  some defense experts, is pertinent to implicating smoking causally in lung cancer;" and

21  that "the absence of COPD and periodontal disease could suggest the negation of

22  smoking as a causal contributor to plaintiff's lung cancer."  Plaintiff added that her

23  medical history, "including her COPD and periodontal disease, are relevant in the

24  determination of the cause of her lung cancer."  Doc. 323 at 12.

25      The court set a further pretrial conference for July 12, 2013.  At that hearing, the

26  court addressed numerous issues, including the parties' arguments regarding diseases

27  other than lung cancer, and again asked why they were still arguing about this issue if

28  plaintiff was not claiming damages for any injury other than lung cancer.  Plaintiff's

United States District Court
Northern District of California

11

United States District Court
Northern District of California

counsel Jason Rose responded that defendants' motion in limine was "aimed at taking addiction out of the case," and that while plaintiff was not seeking damages for addiction, it was "part of the causation of plaintiff's injury."  Doc. 341 at 126; see also Doc. 342 at 128-29.

In addition, Mr. Rose asserted, "defendants' medical defense in this case is that it was something other than a smoking-caused lung cancer . . . ."  He argued that "other diseases which are caused by smoking can and are, according to our experts and their experts, sometimes markers for whether or not this is – even though they are separate and distinct disease, whether this is a smoking caused lung cancer.  So the fact that she has COPD is something an expert would consider when making the determination if her lung cancer was caused by smoking."  Thus, he asserted, plaintiff wanted to put in evidence of plaintiff's other smoking-related diseases – "for a limited purpose" – because "[t]he fact that she has COPD and periodontal disease are things that her treating doctor and our experts would look at and consider when determining the cause of her lung cancer."  Doc. 341 at 127-31.

In response, defendants' counsel argued that because plaintiff was not seeking damages for injuries caused by diseases other than lung cancer, allowing evidence of other diseases in the case would confuse the jury.  Doc. 341 at 128.  In addition, counsel asserted, plaintiff had provided no testimony from any expert that COPD and periodontal disease were relevant in determining the cause of a lung cancer, and that theory "certainly was not presented in the opposition to the motions in limine."  Doc. 341 at 131, 137-38.  Furthermore, "if these diseases are markers for the disease at  issue, then we are not dealing with separate and independent diseases. . . . You can't have it both ways."  Doc. 341 at 131.  Counsel argued that it would be unfair to present evidence of other diseases to the jury, and that "in fact, there's no relationship between them, so it's a relevance issue as well."  Doc. 341 at 138.

In the July 19, 2013 third pretrial order, which followed the July 12, 2013 further pretrial conference, the court noted that while plaintiff had refused to sign the stipulation,

"[d]efendants are willing to stipulate that lung cancer is separate and distinct from other tobacco-related diseases, and that they would not argue that plaintiff's lung cancer claim was in any way barred by the statute of limitations." Doc. 337 at 11.  The court granted the motion to exclude evidence of plaintiff's injuries other than lung cancer, as plaintiff had taken the position that lung cancer is separate and distinct from COPD and periodontal disease, which she was required to do in order to avoid another motion for summary judgment.  The court concluded that for the reasons argued by defendants – that evidence of other injuries would be irrelevant and unfairly prejudicial as it would serve no purpose other than to elicit sympathy from the jury and would confuse the jury as to the proper basis of liability and damages – the evidence would be more prejudicial than probative.  Doc. 337 at 11-12.

In two subsequent orders – the December 2, 2014 order re defendants' categorical objections to plaintiff's evidence (Doc. 392), and the sixth final pretrial order (Doc. 406) – the court ruled that certain exhibits and designations of proposed deposition and trial testimony proffered by plaintiff were in violation of the prior ruling that excluded evidence of smoking-related diseases other than lung cancer.  Doc. 392 at 14-17; Doc. 406 at 5. The court added in the sixth pretrial order that this ruling also applied to evidence of addiction as a separate injury, but that plaintiff would not be precluded from putting on evidence relating to the addictive properties of nicotine.  Doc. 406 at 5.

In other words, by the time of the trial in February 2016, not only had the court ruled on numerous occasions that evidence of plaintiff's smoking-related injuries other than lung cancer was not admissible, but Mr. Purcell had previously made the same arguments against excluding the evidence, and the court had specifically considered those arguments and rejected them.  Moreover, plaintiff did not seek reconsideration of the order excluding evidence of smoking-related diseases other than lung cancer, and indeed, rather than face another motion for summary judgment, conceded that lung cancer was separate and distinct from periodontal disease and COPD, and opted not to pursue any claim of injury relating to those diseases.

United States District Court
Northern District of California

1   Nevertheless, Mr. Purcell continued to argue that he should be permitted to

2   question defendants' pathology expert Dr. Chirieac about whether plaintiff's medical

3   records established that she suffered from COPD.  At that point, defendants' counsel

4   moved for a mistrial, and the court stated, "Let me think about that. . . .  I think this is

5   definitely a serious violation.  Mr. Purcell, you have violated my orders repeatedly

6   throughout the course of litigating this case.  But you've really crossed the line."  Tr. at

7   2127-28.

8   Following a break, before the jury was brought back into the courtroom, the court

9   denied the motion for a mistrial, but stated, "I will advise you, Mr. Purcell, that after the

10   trial has concluded, there will be sanctions. You've continually violated this court's orders

11   repeatedly.  And I am now persuaded that all of the violations you've committed over the

12   last few weeks have been intentional, deliberate, and you will be sanctioned monetarily,

13   and I'm going to refer you to the State Bar."  Tr. at 2128-29.

14   When questioning resumed, Mr. Purcell obtained Dr. Chirieac's agreement that

15   smoking is the predominant risk factor for lung cancer, but then went on to ask Dr.

16   Chirieac to read a section of the "Yano" article, which Mr. Purcell characterized as

17   involving a discussion of "lung disease."[1]  Defendants objected to questions about "lung

18   disease," and the objection was sustained.  Mr. Purcell then attempted to ask questions

19   about the previously excluded expert report of plaintiff's expert Dr. Hammar.  Defendants'

20   objected, and the objection was sustained.  Tr. 2131-34.

21   At the conclusion of the testimony, Mr. Purcell requested to be heard on certain

22   issues, including "the communication that's been difficult specifically regarding other

23   diseases."  He asserted that the fact that plaintiff has COPD and emphysema "is a risk

24   factor for her having a smoking-related lung cancer[,]" and argued that he should be

25   _____

26   [1]   Mr. Purcell later indicated (outside the presence of the jury) that the section of the
   "Yano" article he directed to Dr. Chirieac's attention stated, "Inflammation is well known to
27   be carcinogenic.  A multi-center study among never smokers in the United States by Wu,
   et al., demonstrated that lung cancer risk is increased with a history of any previous lung
28   disease including asthma, chronic bronchitis, emphysema, pleurisy, pneumonia and
   tuberculosis."  Tr. at 2196.

14

United States District Court
Northern District of California

1    permitted to ask about that "because it's in the material that [defendants'] witnesses have

2    reviewed and considered and they rely on.  And it is an important risk factor that [plaintiff]

3    presents with. . . .  And the concern that the jury deal with non-lung cancer as a damages

4    topic . . . could be handled by an admonition."  Tr. at 2196-97.  He added that because

5    defendants' witnesses had testified that they reviewed all plaintiff's medical records, he

6    should not be limited in asking about anything in those records, including any reference

7    to a smoking-caused disease, and that to preclude him from asking about smoking-

8    related injuries other than lung cancer or about any opinions they expressed in their Rule

9    26 reports would be prejudicial to plaintiff's case.  Tr. at 2197-99.

10        In response, defendants' counsel Steven N. Geise noted that many of the Rule 26

11   reports had been prepared before the parties filed their motions in limine, and that with

12   particular regard to the motion to exclude evidence of smoking-related diseases other

13   than lung cancer, the motion had been briefed and argued extensively.  In addition, Mr.

14   Geise noted that the portion of the "Yano" article that Mr. Purcell had attempted to

15   question Dr. Chirieac about included a mention of "pneumonia" as a lung cancer risk, a

16   subject about which defendants would have liked to have questioned Dr. Horn, but were

17   unable to because of the court's rulings that evidence of smoking-related diseases other

18   than lung cancer would not be admissible.  Tr. at 2199.  Defendants' counsel Pamela

19   Yates added that defendants were conceding that "the biggest risk factor that [plaintiff]

20   had for lung cancer was her entire history of smoking.  Tr. at 2200.

21        The court noted that defendants had been held to the same standard as had

22   plaintiff, and that there had been three rulings that applied to the issue, none of which

23   included a carve-out for what plaintiff's counsel was seeking.  The court added that had

24   plaintiff requested reconsideration or a carve-out of some exception prior to the trial, the

25   result might have been different.  However, the court concluded, "because you have sort

26   of gone ahead with every violation of my order that you chose to do without seeking leave

27   for me to reverse it in advance, I'm not reversing it."  The court added, "The defendants

28   have complied with the limitations [and] you're going to have to comply with the

United States District Court
Northern District of California

1   limitations.  Your request remains overruled."  Tr. at 2201.

2       On Day 12 of the trial, Mr. Purcell again attempted to elicit testimony relating to

3   emphysema and COPD when he cross-examined Dr. Eric Schroeder, defendants' expert

4   in pulmonary medicine and internal medicine.  After posing a question referencing "lung

5   diseases," Mr. Purcell asked the witness whether he was familiar with the term "jellylike

6   lung tissue," and the witness responded that he had not heard that term.

7       Mr. Purcell then asked the witness how he would describe "emphysematous

8   changes," and when the court sustained defendants' objections, Mr. Purcell asked the

9   witness to define "blebs."  After the court sustained defendants' objections to that

10  question, Mr. Purcell asked the witness to agree that there are "things that can happen to

11  the structure of the lung having nothing to do with cancer that can co-present where the

12  structure of the lung is being made less solid uniformly."  Defendants again objected, and

13  the court sustained the objection.  Mr. Purcell continued to pursue the subject, referring to

14  "whatever [plaintiff] has as a co-presentation."  Defendants objected, and the court

15  ordered Mr. Purcell to "move off the subject."  Tr. at 2239-40.

16                                  **DISCUSSION**

17  A.    Legal Standard

18      Federal courts have inherent power to impose sanctions against attorneys and/or

19  litigants for "bad faith" conduct of litigation or for "willful disobedience" of a court order.

20  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991); Roadway Express, Inc. v. Piper, 447

21  U.S. 752, 764-66 (1980); see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.,

22  134 S. Ct. 1749, 1758 (2014).  The court's inherent powers "are governed not by rule or

23  statute but by the control necessarily vested in courts to manage their own affairs so as

24  to achieve the orderly and expeditious disposition of cases."  Chambers, 501 U.S. at 43.

25  Sanctions under the court's inherent power may be imposed either on motion of a party

26  or by the court sua sponte.  Roadway Express, 447 U.S. at 765; In re Intel Sec. Litig., 791

27  F.2d 672, 675 (9th Cir. 1986).

28      Nevertheless, these powers "must be exercised with restraint and discretion."

1    Chambers, 501 U.S. at 44; Roadway Express, 447 U.S. at 764.  "Before awarding

2    sanctions pursuant to its inherent power, the court must make an express finding that the

3    sanctioned party's behavior constituted or was tantamount to bad faith."  Haeger v.

4    Goodyear Tire & Rubber Co., 2016 WL 625099 at *8 (9th Cir. Feb. 16, 2016), amending

5    and superceding 793 F.3d 1122 (9th Cir. 2015).

6         Bad faith may be found "in a variety of conduct stemming from 'a full range of

7    litigation abuses.'"  Id. (quoting Chambers, 501 U.S. at 47).  The bad-faith requirement

8    sets a "high threshold," see Mendez v. County of San Bernardino, 540 F.3d 1109, 1131-

9    32 (9th Cir. 2008), which may be met by willful misconduct, or recklessness that is

10   coupled with an improper purpose.  See Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir.

11   2001).

12        Once a district court makes a finding of bad faith, it has the discretion to "fashion

13   an appropriate sanction for conduct which abuses the judicial system."  Haeger, 2016 WL

14   625099 at *10 (citing Chambers, 501 U.S. at 44-45).  "To protect against abuse and to

15   ensure parties receive due process, individuals subject to sanction are afforded

16   procedural protections, the nature of which varies depending upon the violation, and the

17   type and magnitude of the sanction."  F.J. Hanshaw Enters., Inc. v. Emerald River Dev.,

18   Inc., 244 F.3d 1128, 1137 (9th Cir. 2001).  "[F]or the court to sanction an attorney,

19   procedural due process requires notice and an opportunity to be heard."  Cole v. United

20   States Dist. Court, 366 F.3d 813, 821 (9th Cir. 2004).

21        B.    Analysis

22        As detailed above, Mr. Purcell engaged in a practice of refusing to abide by the

23   orders of the court throughout the course of this litigation.  As a result, the court was

24   compelled to conduct numerous pretrial conferences, and to issue an unprecedented

25   eight pretrial orders.  For some time following the initial pretrial submissions in November

26   2012, the court assumed that the failure to comply with the court's orders and rules was a

27   product of inattention or confusion on the part of plaintiff's counsel.  The court began to

28   question that assumption as it became clearer that Mr. Purcell was simply unwilling to

United States District Court
Northern District of California

17

1    cooperate with the court's pretrial procedures.  With the commencement of the trial, it

2    became apparent to the court that Mr. Purcell was intentionally flouting the prior orders

3    regarding what could and could not be admitted into evidence.

4         The court issued the eighth final pretrial order on January 4, 2016, intending it as a

5    summary and a guide for the parties so that there would be no question as to what

6    evidence had been excluded by the numerous prior orders.  As well, in an effort to

7    streamline the objections, the court instructed the parties to object to evidence at trial by

8    referring to the rulings listed in the appendix to the order.  See Doc. 447.

9         The eighth final pretrial order indicated that evidence of plaintiff's smoking-related

10   injuries other than lung cancer was not admissible.  See Doc. 447-1 (citing Docs. 337,

11   392, 406).  The court had provided plaintiff with a full opportunity during the course of the

12   litigation to oppose defendants' motion to exclude this evidence.  The ruling was

13   straightforward, the exclusion of evidence was unambiguous, and the order was clear.

14   Nevertheless, in direct violation of the order, Mr. Purcell insisted on attempting to

15   question Dr. Horn, Dr. Chirieac, and Dr. Schroeder about the purported connection

16   between COPD/emphysema and plaintiff's lung cancer.

## CONCLUSION

18        For the reasons stated above, the court hereby imposes sanctions on plaintiff's

19   counsel Gilbert L. Purcell, in the amount of $1,500, for his bad-faith violation of this

20   court's orders during the trial of the above-entitled action.  This sanction shall be paid

21   from Mr. Purcell's personal funds, to the Clerk of the Court, no later than March 23, 2016.

23   **IT IS SO ORDERED.**

24   Dated:  March 7, 2016

     _____
     PHYLLIS J. HAMILTON
     United States District Judge